IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

HERMAN CRUZ,

                    Plaintiff,                    Civil Action No.
          v.                                      9:13-CV-1287 (TJM/DEP)

DARLENE ZWART, *et al.*,

                    Defendants.

_____

APPEARANCES:

FOR PLAINTIFF:

HERMAN CRUZ, *Pro se*
86-C-0468
Green Haven Correctional Facility
Stormville, NY 12582

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          GREGORY J. RODRIGUEZ, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Herman Cruz, a New York State prison inmate, has commenced this action against several state corrections employees pursuant to 42 U.S.C. § 1983 alleging the deprivation of his civil rights.[1] Accompanying plaintiff's complaint was a request for leave to proceed *in forma pauperis* ("IFP"). In an order issued by Senior District Judge Thomas J. McAvoy, plaintiff's IFP application was granted, and Judge McAvoy specifically found, based upon a review of publicly available records, that plaintiff had not commenced three or more actions, prior to initiating this one, that were dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted within the meaning of the "three strikes" provision of 28 U.S.C. § 1915(g).

Currently pending before the court is a motion to revoke plaintiff's IFP status pursuant to section 1915(g), or, in the alternative, dismiss plaintiff's complaint based on Rule 11 of the Federal Rules of Civil Procedure in light of his material misstatements to the court concerning his prior litigation history. For the reasons set forth below, I recommend that plaintiff's IFP status be revoked.

---

[1]    Although plaintiff's complaint names seven defendants, Dkt. No. 1 at 1-3, three of them were dismissed, *sua sponte*, based on the assigned district judge's initial review that pleading pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11.

I.    BACKGROUND

Plaintiff commenced this action on October 17, 2013, by the filing of a complaint and an accompanying motion for leave to proceed in the action IFP.   Dkt. Nos. 1-3.   At the time of filing, plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").   Dkt. No. 1 at 6.   Although he is now confined elsewhere, at the times relevant to the allegations in the complaint, plaintiff was incarcerated at the Shawangunk Correctional facility located in Wallkill, New York.   *Id.*   Generally, plaintiff's complaint alleges that he was assaulted by corrections officers, denied adequate medical treatment, and retaliated against by officers for having filed grievances and letters against them.   *See generally* Dkt. No. 1.

After reviewing the complaint for legal sufficiency, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A), Judge McAvoy issued an order on December 12, 2013, granting plaintiff's IFP application and permitting the action to proceed with regard to plaintiff's excessive force, conditions of confinement, and First Amendment retaliation claims against certain of the defendants.   Dkt. No. 11.   On February 14, 2014, defendants filed a motion seeking revocation of plaintiff's IFP status pursuant to 28 U.S.C. § 1915(g), or, alternatively, dismissal of his complaint pursuant to Rule 11 of

the Federal Rules of Civil Procedure.  Dkt. No. 31.  Plaintiff responded in opposition to that motion, generally arguing that he had not yet accumulated three strikes at the time he commenced this action.  Dkt. No. 41. Defendants' motion is now before me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

II.     DISCUSSION

        A.      Revocation of IFP Status Based on Three Strikes Provision

        When a civil action is commenced in a federal district court, the statutory filing fee, set at $400 at the time this suit was commenced, must ordinarily be paid.  28 U.S.C. §§ 1915(a).  Although a court is authorized to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee, section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or
> appeal a judgment in a civil action or proceeding
> under this section if the prisoner has, on 3 or more
> prior occasions, while incarcerated or detained in
> any facility, brought an action or appeal in a court of
> the United States that was dismissed on the grounds
> that it is frivolous, malicious, or fails to state a claim
> upon which relief may be granted, unless the
> prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g).  The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil

rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997)); *accord*, *Gill v. Pidlychak*, No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J., *adopting report and recommendation by* Treece, M.J.).[2] The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has accumulated three strikes to apply the same cost-benefit analysis before filing suit as other civil litigants engage in – that is, the provision forces an inmate to assess whether the result sought to be achieved justifies paying the entire filing fee in advance, rather than in small increments from his inmate account. *Tafari*, 473 F.3d at 443.

The Second Circuit has defined a frivolous claim as one that "lacks an arguable basis either in law or in fact." *Tafari*, 473 F.3d at 442 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). *Id.* To determine whether a dismissal satisfies the failure-to-state-a-claim prong of section 1915, courts have looked to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance. *Tafari*, 473 F.3d at 442. The question of whether the dismissal of a prior action constitutes a strike for purposes of section

---

[2]    All unreported decisions cited in this report have been appended for the convenience of the *pro se* plaintiff.

1915(g) is a matter of statutory interpretation, and as such a question for the court. *Id.*

In support of their motion, defendants argue that plaintiff Cruz accrued his first strike on January 31, 2001, when Senior District Judge John T. Curtin, of the Western District of New York, dismissed plaintiff's complaint in *Cruz v. Wead*, No. 97-CV-0846 (W.D.N.Y. filed Oct. 23, 1997). In that case, however, Judge Curtin did not issue an order dismissing plaintiff's complaint after finding it frivolous, malicious, or failing to state a claim. *Wead*, No. 97-CV-0846, [Dkt. No. 16](#)5. Instead, the action was dismissed through the entry of summary judgment based on a finding that (1) no reasonable factfinder could conclude that the defendants retaliated against Cruz, and (2) the defendants were entitled to qualified immunity. *Id.* Courts in this circuit have routinely held that a dismissal at the summary judgment stage generally does not count as strike for purposes of section 1915(g). *See Martin v. Wallis*, No. 07-CV-0175, 2008 WL 3471864, at *4 (D. Vt. Aug. 12, 2008) ("[C]ourts have also held that a case decided at summary judgment generally does not qualify for a strike under [section] 1915."); *Lewis v. Healy*, No. 08-CV-0148, 2008 WL 5157194, at *5 n.6 (N.D.N.Y. Dec. 8, 2008) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.) (finding that one of the plaintiff's previous dismissals "likely

does not qualify as a strike since [his] claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted"); *Ramsey v. Goord*, No. 05-CV-0047, 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("Moreover, a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim.").   Indeed, in granting the defendant's motion for summary judgment in *Wead*, Judge Curtin relied on evidence outside the pleadings, which eliminates any doubt that the dismissal could be construed as one for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and expressly provided for in section 1915(g).   *Wead*, No. 97-CV-0846, Dkt. No. 165.

Despite Judge Curtin's certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from his decision in *Wead* dismissing plaintiff's complaint would not be taken in good faith, plaintiff nevertheless filed an appeal with the Second Circuit.   *Wead*, 97-CV-0846, Dkt. No. 167.   His request for leave to proceed IFP before that court was rejected on July 29, 2002, and his appeal was dismissed "because it lacks an arguable basis in law or fact."   *Wead*, No. 97-CV-0846, Dkt. No. 168.   As defendant's argue, that dismissal does qualify as a strike under section 1915(g).   *Chavis v.*

*Chappius*, 618 F.3d 162, 165 (2d Cir. 2010).

Plaintiff incurred a second strike when his complaint in *Cruz v. Traynor*, No. 12-CV-1454 (N.D.N.Y. filed Sept. 12, 2012), was dismissed on January 8, 2013. In his decision and order following a *sua sponte* initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A, District Judge Glenn T. Suddaby dismissed all of plaintiff's claims, some with prejudice and others without, affording Cruz thirty days from the date of the decision to file an amended complaint, if desired, curing the defects. *Traynor*, No. 12-CV-1454, Dkt. No. 16. Judgment was subsequently entered on March 12, 2013, dismissing the action in accordance with that decision after plaintiff failed to avail himself of the opportunity to submit an amended complaint.[3] *Traynor*, No. 12-CV-1454, Dkt. No. 19. Accordingly, the dismissal in that case constitutes plaintiff's second strike.

Aside from *Wead* and *Traynor*, the court has not found, nor have defendants cited, any other decision entered prior to commencement of this action that would constitute a strike. Accordingly, consistent with Judge McAvoy's decision after an initial review of plaintiff's complaint, because I find that plaintiff had not yet accumulated three strikes at the time this action

---

[3] It is worth noting that, instead of filing an amended complaint, plaintiff submitted a letter addressed to Judge Suddaby accusing him of dismissing the action because, *inter alia*, he "support[s] anyone with [d]emonical values, like the defendants." *Traynor*, No. 12-CV-1454, Dkt. No. 18.

was filed, I recommend defendants' request to revoke plaintiff's IFP status on this basis be denied.

B.    Revocation of IFP Status Based on Material Misrepresentation

The finding that plaintiff is not precluded under section 1915(g) from proceeding in this case IFP does not end the inquiry.   The ability to litigate IFP is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses.   *See In re Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IPF is a privilege provided for the benefit of indigent persons." (quotation marks omitted)).   The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]"   28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183 (1989).   For this reason, courts are regarded as possessing discretionary

authority to deny, and thus logically to revoke, IFP status to prisoners who have abused the privilege, even when the prisoner is otherwise not subject to revocation pursuant to the three-strikes provision of section 1915(g). *See Hurt v. Social Sec. Admin.*, 544 F.3d 308, 309-310 (D.C. Cir. 2008) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]" (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007) (citations, alteration omitted)).

In this case, as highlighted by defendants in their motion, plaintiff has materially misrepresented his litigation history to the court. [Dkt. No. 31-1 at 6-7](). Specifically, plaintiff failed to disclose the full scope of his litigation history when asked in his complaint to list any previous lawsuits he had filed relating to his imprisonment. [Dkt. No. 1 at 4](). While plaintiff (accurately) listed one of his previously filed lawsuits, a review of his litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") reveals that he had filed at least eight other civil rights lawsuits and one petition seeking a writ of habeas corpus prior to commencing this action. *See Cruz v. Grosso*, No. 13-CV-0030 (N.D.N.Y. filed Jan. 9, 2013) (pending); *Cruz v. Traynor*, No. 12-CV-1454 (N.D.N.Y. filed Sept. 21, 2012)

(dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915(A)(b)); *Cruz v. Tichenor*, No. 08-CV-0591 (N.D.N.Y. filed June 5, 2008) (dismissed for failure to prosecute); *Cruz v. Lashway*, No. 06-CV-0867 (N.D.N.Y. filed July 17, 2006) (dismissed on summary judgment); *Cruz v. Church*, No. 05-1067 (N.D.N.Y. filed Aug. 25, 2005) (no-cause jury verdict); *Cruz v. Thompson*, No. 04-CV-1497 (N.D.N.Y. filed Dec. 29, 2004) (voluntarily dismissed); *Cruz v. Hillman*, No. 01-CV-4169 (S.D.N.Y. filed May 17, 2001) (settled); *Cruz v. Wead*, No. 97-CV-0846 (W.D.N.Y. filed Oct. 23, 1997) (dismissed on summary judgment); *Cruz v. Senkowski*, No. 90-CV-0289 (W.D.N.Y. filed unknown) (petition for writ of habeas corpus dismissed for failure to prosecute).   Significantly, plaintiff signed his complaint under penalty of perjury.   Dkt. No. 1 at 19.

In failing to disclose his prior litigation history, plaintiff provided misinformation to the court regarding a material issue.   Regarding the significance of an inmate-plaintiff's prior litigation history, one of my former colleagues has noted that

> information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purpose of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this

> action, earned 'three strikes' for purposes of 28
> U.S.C. § 1915(g); (3) whether the plaintiff had a
> record of frivolous litigation sufficient to warrant
> either (a) what is known as a 'bar order' (i.e., an order
> barring him from litigating further in that court without
> meeting certain preconditions) pursuant to 28 U.S.C.
> § 1651(a), or (b) an order declaring plaintiff to be a
> 'vexatious' litigator pursuant to 28 U.S.C. § 1927; and
> (4) whether the plaintiff's litigation experience was so
> extraordinary that it effectively dispenses with the
> need to afford him special solicitude.

*Chavis v. Curlee*, No. 06-CV-0049, 2008 WL 508694, at *10 (N.D.N.Y. Feb. 21, 2008) (Kahn, J., *adopting report and recommendation by* Lowe, M.J.). In light of plaintiff's history, each of these four rationales is relevant and requires consideration in this action.

Despite receiving notice of defendants' request to dismiss this action based on the misrepresentation to the court, plaintiff failed to explain his conduct or otherwise address the issue in his response. *See generally* Dkt. No. 41. In addition, plaintiff has made this particular misrepresentation to the court in two previous actions. Specifically, plaintiff disclosed only one prior lawsuit in his verified complaint in (1) *Grosso*, No. 13-CV-0030, Dkt. No. 1 at 3-4 (N.D.N.Y. filed Jan. 9, 2013); and (2) *Traynor*, No. 12-CV-1454, Dkt. No. 1 at 5-6 (N.D.N.Y. filed Sept. 21, 2012). In three other previously filed actions, plaintiff answered "no" to the question in his verified complaint that asked whether he had filed any previous lawsuits. *Church*, No.

05-CV-1067, Dkt. No. 1 at 4-5 (N.D.N.Y. filed Aug. 25, 2010); *Tichenor*, No. 08-CV-0591, Dkt. No. 1 at 4-5 (N.D.N.Y. filed June 5, 2008); *Thompson*, No. 04-CV-1497, Dkt. No. 1 at 4, 6 (N.D.N.Y. filed Dec. 29, 2004). At the time he commenced each of those actions, plaintiff had filed at least one previous lawsuit. His failure to truthfully answer questions regarding his litigation history in those previous lawsuits demonstrates further fraud upon the court. In my view, in the absence of any explanation for his conduct, and given his lengthy litigation history within the circuit, plaintiff's unabashed misstatement to this court concerning his prior litigation history in this and other actions was made in bad faith and warrants revocation of IFP status.[4]

---

[4] Although, in their motion, defendants have specifically requested dismissal of the plaintiff's complaint due to the misrepresentation in his verified complaint, pursuant to Rule 11 of the Federal Rules of Civil Procedure, I decline to make that recommendation at this time largely in light of the Second Circuit's oft-repeated admonishment to extend special solicitude to *pro se* litigants. Two additional points are worthy of mention. First, given plaintiff's litigation history, which includes lawsuits disposed of following a jury trial and by way of settlement, another, less cautious court may be inclined to dispense with the aforementioned special solicitude required by the Second Circuit. Second, dismissal pursuant to Rule 11 due to plaintiff's misrepresentations to the court would find support in this circuit. Although defendants in this case failed to provide plaintiff with the twenty-one day safe-harbor period called for in Rule 11(c)(2), the court is permitted to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order a[] . . . party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). To impose sanctions *sua sponte*, courts must first find subjective bad-faith on the party to be sanctioned. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). Because I have concluded above that plaintiff's failure to disclose the full scope of his litigation history was in bad faith, dismissal on this ground would be justified. *See Dolberry v. Jakob*, No. 11-CV-1018, 2014 WL 1292225, at *5 (N.D.N.Y. Mar. 28, 2014) (Hurd, J., *adopting report and recommendation by* Peebles, M.J.) (dismissing the plaintiff's complaint based on Rule 11, where the plaintiff had failed to disclose any of his prior litigation history to the court); *Elijah Bell v. Lasaceli*, No.

*See Harris v. City of N.Y.*, 607 F.3d 18, 23 (2d Cir. 2010) ("As an initial matter, we note Harris's 'Prisoner Complaint' forms misrepresented how many strike suits he had filed prior to bringing the instant action. Harris should not benefit from his own misleading statement[.]"); *Jackson v. Goord*, No. 06-CV-6172, 2014 WL 458018, at *3 (W.D.N.Y. Feb. 4, 2014) (finding revocation of the plaintiff's IFP status and dismissal of the action warranted where the plaintiff "misrepresented his prior litigation history to the Court, hampering the Court's ability to evaluate his IFP application"); *Gssime v. Burge*, No. 08-CV-6404, 2013 WL 443852, at *2 (W.D.N.Y. Feb. 5, 2013) (revoking the plaintiff's IFP status as a sanction for the plaintiff

---

08-CV-0278, 2009 WL 1032857, at *4 (W.D.N.Y. Apr. 15, 2009) ("Because Plaintiff has repeatedly misrepresented his litigation history to the Court . . ., the Court finds that he has violated Fed. R. Civ. P. 11 and therefore, this action will dismissed, in the alternative, on that basis."); *Chavis*, 2008 WL 508694, at *11 (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint); *see also Muniz v. Goord*, No. 04-CV-0479, 2007 WL 2027912, at *6 n.32 (N.D.N.Y. July 11, 2007) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint (collecting cases)); *see also Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (affirming district court's dismissal of the appellant's case as a sanction for failing to accurately disclose his litigation history); *Greer v. Schriro,* No. 06-15537, 2007 WL 4163413 (9th Cir. 2007) ("The district court did not abuse its discretion in dismissing Greer's action, because she failed to adequately explain misrepresentations, made under penalty of perjury, about her previous litigation history."); *Mathis v. Smith*, 181 F. App'x 808, 810 (11th Cir. 2006) (finding no abuse of discretion by the district court where it dismissed the plaintiff's case in light of his dishonesty); *Joiner v. Delo*, 905 F.2d 206, 208 (8th Cir. 1990) (affirming district court's rule 11 dismissal of plaintiff's claims in light of the plaintiff's "blatant misrepresentation of the circumstances of his medical treatment").

misrepresenting his prior litigation history to the court); *Water v. Camacho*, No. 11-CV-3263, 2012 WL 1117172, at *1 (S.D.N.Y. Apr. 2, 2012) (revoking the plaintiff's IFP status, but expressly declining to dismiss the action, based on the plaintiff's misrepresentation to the court regarding his finances); *but see Toliver v. Fischer*, No. 12-CV-0077, 2014 WL 411569, at *8 (N.D.N.Y. Feb. 3, 2014) (D'Agostino, J., *adopting report and recommendation by* Baxter, M.J.) (declining to impose sanctions, including revocation of the plaintiff's IFP status, where the plaintiff failed to fully disclose his litigation history).

III.    SUMMARY AND RECOMMENDATION

At the time this action was commenced, plaintiff had not yet accumulated three strikes within the meaning of 28 U.S.C. § 1915(g), and thus the revocation of his IFP status on the basis urged by the defendants is not warranted.   Plaintiff has, however, by his material misrepresentation to the court regarding his litigation history in his verified complaint, plainly demonstrated that he is undeserving of the privilege of proceeding in this case IFP.[5]   Accordingly, it is hereby respectfully

---

[5]      In addition to the misrepresentations discussed in this report, plaintiff has a history of demonstrating a lack of respect for the court, which only reinforces my conclusion that plaintiff is not entitled to the privilege of proceeding IFP.   *See, e.g., Tichenor*, No. 08-CV-0591, Dkt. Nos. 31, 32, 42, 44 (N.D.N.Y. filed June 5, 2008) (using obscenities, insulting Magistrate Judge Treece with racial epithets, and baselessly accusing the court of frivolity and biases).

RECOMMENDED that plaintiff's IFP status be revoked, and that this action be DISMISSED without further order of the court, unless, within thirty days of the issuance of an order approving this recommendation, plaintiff pays the full $400 filing fee.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    July 9, 2014
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.
No. 902-CV-1460 (FJS/RFT).

Dec. 19, 2006.

Anthony G. Gill, of counsel, Comstock, NY, Plaintiff, Pro Se.

Hon. Eliot Spitzer, Attorney General of the State of New York, Douglas Goglia, Esq., Asst. Attorney General, of counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge Randolph F. Treece filed November 20, 2006 and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, it is hereby

**ORDERED,** that the Report-Recommendation of Magistrate Judge Randolph F. Treece filed November 20, 2006 is **ACCEPTED** in its entirety, for the reasons stated therein; and it is further

**ORDERED,** that the Order granting Gill's IFP status is **VACATED;** and it is further

**ORDERED,** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) is **GRANTED** unless Gill pays the filing fee of $150.00 within thirty days of this final order.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, United States Magistrate Judge.

### REPORT-RECOMMENDATION and ORDER
### I. INTRODUCTION

Pro se Plaintiff Anthony Gill brings this civil action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his civil rights while he was incarcerated at the Auburn Correctional Facility. Dkt. No. 1, Compl. FN1 Specifically, Gills alleges Defendants Pidlypchak and Dygert filed false misbehavior reports against him and harassed him in retaliation for the filing of numerous institutional grievances against them and a civil lawsuit against Pidlychak for smoking violations. Compl., Pl.'s Statement of Facts.

FN1. On December 23, 2002, Defendants filed a Motion to Dismiss Gill's Complaint pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 6, Mot. to Dismiss. By Order of the Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky sitting by designation, Defendants' Motion was granted dismissing Gill's complaint with prejudice. Dkt. No. 17, Decision & Order, dated July 28, 2003. Judgment was entered on August 1, 2003 and Gill appealed. Dkt. Nos. 18 & 19, Notice of Appeal, dated Aug. 4, 2003. The Second Circuit affirmed the District Court's dismissal of Gill's Eighth Amendment claim, but vacated the Judgment of the District Court dismissing Gill's First Amendment claim and remanded the action back to the District Court. Gill v. Pidlypchak, 389 F.3d 379 (2d Cir.2004).

Presently before the Court is Defendants' Letter-Motion requesting an order revoking Gill's *in forma pauperis* (IFP) status and conditionally dismissing this action pursuant to 28 U.S.C. § 1915(g) pending Gill's prompt payment of the statutory filing fee of $150.00.FN2 Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1. Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp.,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION

### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis.* 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2).

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (**PLRA**) of 1996, which renders several restrictions on a **prisoner's** ability to exploit the justice system. One such mechanism is the so-called "three **strikes** rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been **dismissed** as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the **PLRA** amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to **filing lawsuits**. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to **file** actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to **file** suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases **count** towards the three **strikes** rule, a court may look to **dismissals** which predated the enactment of the **PLRA.** *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the **prisoner's** case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has **commenced** at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has **filed** at least thirty-nine (39) different **lawsuits** in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

> FN3. *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accetulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

> FN4. In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

**C. Application of *Snider v. Melindez* and *DeLeon v. Doe***

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g) ] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these **strikes** one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as **strikes** under the terms of § 1915(g)." [FN6] *Id* .

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
> The designation of **strikes** has no practical consequences until a defendant in a **prisoner's lawsuit** raises the contention that the **prisoner's** suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three **strikes**. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three **strikes**. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

page 5

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

*DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).

The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accetulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accetulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accetulli* and *Kross* cases "were **dismissed** due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the **dismissals** of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "**strikes**" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were **dismissed** by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[FN7] By his own admission, Gill concedes that these two cases were **dismissed** pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders **dismissing** these actions, we find that a Rule 11 **dismissal** is a **dismissal** on the merits. Therefore, these two cases would also each qualify as "**strikes**" against the Plaintiff.

FN7. A history of failure to prosecute is akin to the **filing** of a frivolous claim.

From the discussion and analysis above, it is clear that these types of **dismissals** are precisely what Congress had in mind when it enacted the **PLRA**, hoping to discourage and limit the amount of *frivolous* **lawsuits** brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "**strikes**" at the time he **commenced** the present action.

**D. Exception to the "Three Strikes Rule"**

**\*5** Notwithstanding prior **dismissals**, an inmate can overcome the "three **strikes** rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

**E. Revoking Gill's IFP Status**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)

(Cite as: 2006 WL 3751340 (N.D.N.Y.))

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.[FN8] Pl.'s Lt.-Resp. at p. 4.

> **FN8.** Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting Gill's IFP status (Dkt. No. 4) be VACATED; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**\*6 ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.

Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony G. Gill, Plaintiff,
v.
Chris PIDLYPCHAK, Correction Officer and T.G.
Dygert, Correction Officer, Defendants.

No. 902-CV-1460 (FJS/RFT).
Dec. 19, 2006.

Anthony G. Gill, of counsel, Comstock, NY,
Plaintiff, Pro Se.

Hon. Eliot Spitzer, Attorney General of the State of
New York, Douglas Goglia, Esq., Asst. Attorney
General, of counsel, Albany, NY, for Defendants.

### DECISION AND ORDER
FREDERICK J. SCULLIN, JR., S.J.

**\*1** The above-captioned matter having been
presented to me by the Report-Recommendation of
Magistrate Judge Randolph F. Treece filed Novem-
ber 20, 2006 and the Court having reviewed the Re-
port-Recommendation and the entire file in this
matter, and no objections to said Report-
Recommendation having been filed, it is hereby

ORDERED, that the Report-Recommendation
of Magistrate Judge Randolph F. Treece filed
November 20, 2006 is **ACCEPTED** in its entirety,
for the reasons stated therein; and it is further

ORDERED, that the Order granting Gill's IFP
status is **VACATED;** and it is further

ORDERED, that Defendants' Letter-Motion
seeking dismissal of Gill's Complaint pursuant to
28 U.S.C. § 1915(g) is **GRANTED** unless Gill pays
the filing fee of $150.00 within thirty days of this
final order.

IT IS SO ORDERED.

RANDOLPH F. TREECE, United States Magistrate
Judge.
### *REPORT-RECOMMENDATION and ORDER*
### I. INTRODUCTION
Pro se Plaintiff Anthony Gill brings this civil
action pursuant to 42 U.S.C. § 1983, alleging De-
fendants violated his civil rights while he was in-
carcerated at the Auburn Correctional Facility. Dkt.
No. 1, Compl. [FN1] Specifically, Gills alleges De-
fendants Pidlypchak and Dygert filed false misbe-
havior reports against him and harassed him in re-
taliation for the filing of numerous institutional
grievances against them and a civil lawsuit against
Pidlypchak for smoking violations. Compl., Pl.'s
Statement of Facts.

> FN1. On December 23, 2002, Defendants
> filed a Motion to Dismiss Gill's Complaint
> pursuant to FED.R.CIV.P. 12(b)(6) for
> failure to state a claim upon which relief
> can be granted. Dkt. No. 6, Mot. to Dis-
> miss. By Order of the Honorable Joseph
> M. Hood, United States District Judge for
> the Eastern District of Kentucky sitting by
> designation, Defendants' Motion was gran-
> ted dismissing Gill's complaint with preju-
> dice. Dkt. No. 17, Decision & Order, dated
> July 28, 2003. Judgment was entered on
> August 1, 2003 and Gill appealed. Dkt.
> Nos. 18 & 19, Notice of Appeal, dated
> Aug. 4, 2003. The Second Circuit affirmed
> the District Court's dismissal of Gill's
> Eighth Amendment claim, but vacated the
> Judgment of the District Court dismissing
> Gill's First Amendment claim and re-
> manded the action back to the District
> Court. *Gill v. Pidlypchak,* 389 F.3d 379
> (2d Cir.2004).

Presently before the Court is Defendants' Let-
ter-Motion requesting an order revoking Gill's *in
forma pauperis* (IFP) status and conditionally dis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

missing this action pursuant to 28 U.S.C. § 1915(g) pending Gill's prompt payment of the statutory filing fee of $150.00.FN2 Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1. Gill opposes the motion. Dkt. No. 38, Pl.'s Lt.-Resp., dated July 21, 2006. For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

> FN2. Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight." Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

## II. DISCUSSION
### A. 28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma pauperis.* 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id.* at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2) .

**\*2** Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (PLRA) of 1996, which

renders several restrictions on a prisoner's ability to exploit the justice system. One such mechanism is the so-called "three strikes rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been dismissed as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.*

In recognizing the legitimate government interests fostered by the PLRA amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates indiscriminately to file suit at taxpayers' expense. *See Anderson v. Coughlin,* 700 F.2d 37, 42 (2d Cir.1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973).

> *Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir.1997).

In calculating which cases count towards the three strikes rule, a court may look to dismissals which predated the enactment of the PLRA. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000). The Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the prisoner's case, but rather prevents the inmate from continuing suit without the payment of fees. *Id.*

### B. Gill's "Three Strikes"

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**

As noted by the Second Circuit, Gill "is no stranger ... to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). He "has commenced at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta,* 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n. 2 (N.D.N.Y.); has filed at least thirty-nine (39) different lawsuits in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[FN3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not entitled to "the special solicitude afforded [to] *pro se* litigants [.]" *Gill v. Riddick,* 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

> FN3. *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) *(habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

When Gill commenced this action on November 20, 2002, he had already acquired at least three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accettulli,* 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center,* 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre,* 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11); and *Gill v. Padilla,* 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED.R.CIV.P. 11).[FN4] Defs.' Lt.-Mot. at p. 2.

> FN4. In their Letter-Motion, Defendants assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n. 4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, *"Gill v. Anderson* and *Gill v. Pflueger* [,] ... were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

## C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

**\*3** Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the Second Circuit in *Snider v. Melindez,* 199 F.3d 108 (2d Cir.1999) and clarified in *DeLeon v. Doe,* 361 F.3d 93 (2d Cir.2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w [h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider.*" Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez,* the Second Circuit held that the "three strikes rule" was intended to apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez,* 199 F.3d at 111.[FN5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily

render a determination on the merits as, for example, a dismissal for frivolousness would. *See id.* at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)).

> FN5. In *Snider,* the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

In *DeLeon v. Doe,* the Second Circuit, in upholding its ruling in *Snider,* reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).' " *Id.*

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits, the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second

Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

**\*4** Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g)] is properly considered *at the time an action is dismissed.*" *Id.* (citing *Snider v. Melindez,* 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these strikes one by one, in their orders of judgment, as they dispose of suits that may ultimately-upon determination at a proper time-qualify as strikes under the terms of § 1915(g)." [FN6] *Id .*

> FN6. The Second Circuit in *DeLeon* based its holding on its rationale in *Snider,* which reads:
>
>> The designation of strikes has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three strikes. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.
>
> *DeLeon v. Doe,* 361 F.3d at 95 (quoting *Snider v. Melindez,* 199 F.3d at 115).
>
> The Second Circuit also stated that "[c]ontemporaneous classification of dismissals as strikes or non-strikes at a time

when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id.* (quoting *Snider v. Melindez,* 199 F.3d at 115, n. 4).

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli,* 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y .) (citing *Neitzke v. Williams,* 490 U.S. at 325); *Gill v. Anna M. Kross Center,* 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p 2 (S.D.N.Y.) (citing *Neitzke v. Williams,* 490 U.S. at 325). Additionally, in *Kross,* the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were dismissed due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the dismissals of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "strikes" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were dismissed by the Northern District for failure to prosecute pursuant

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

to Rule 11 of the Federal Rules of Civil Procedure. FN7 By his own admission, Gill concedes that these two cases were dismissed pursuant to FED.R.CIV.P. 11. Irrespective of specific language used in the District's Decisions and Orders dismissing these actions, we find that a Rule 11 dismissal is a dismissal on the merits. Therefore, these two cases would also each qualify as "strikes" against the Plaintiff.

> FN7. A history of failure to prosecute is akin to the filing of a frivolous claim.

From the discussion and analysis above, it is clear that these types of dismissals are precisely what Congress had in mind when it enacted the PLRA, hoping to discourage and limit the amount of *frivolous* lawsuits brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "strikes" at the time he commenced the present action.

### D. Exception to the "Three Strikes Rule"

**\*5** Notwithstanding prior dismissals, an inmate can overcome the "three strikes rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir.2002) ( "[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner

to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

### E. Revoking Gill's IFP Status

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006. FN8 Pl.'s Lt.-Resp. at p. 4.

> FN8. Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge,* 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *Mc-*

Not Reported in F.Supp.2d, 2006 WL 3751340 (N.D.N.Y.)
**(Cite as: 2006 WL 3751340 (N.D.N.Y.))**

*Fadden v. Parpan,* 16 F.Supp.2d 246, 247
(E.D.N.Y.1998)).

In light of the foregoing, it is recommended
that the Order granting IFP status to Gill be **va-
cated** and that Gill's Complaint be dismissed unless
Gill pays the filing fee of $150.00 **within thirty
days (30) days** of the entry of the final order by the
District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Order granting
Gill's IFP status (Dkt. No. 4) be VACATED; and it
is further

**RECOMMENDED** that Defendants' Letter-
Motion seeking dismissal of Gill's Complaint pur-
suant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be
**GRANTED** unless Gill pays the filing fee of
$150.00 **within thirty days (30) days** of the entry
of the final order by the District Court; and it is fur-
ther

***6 ORDERED,** that the Clerk of the Court
serve a copy of this Report-Recommendation and
Order upon the parties to this action by regular
mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties
have ten (10) days within which to file written ob-
jections to the foregoing report. Such objections
shall be filed with the Clerk of the Court. ***FAIL-
URE TO OBJECT TO THIS REPORT WITHIN
TEN (10) DAYS WILL PRECLUDE APPELLATE
REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d
Cir.1993) (citing *Small v. Sec'y of Health and Hu-
man Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28
U.S.C. § 636(b)(1); FED.R.CIV.P. 72, 6(a) & 6(e).

N.D.N.Y.,2006.
Gill v. Pidlypchak
Not Reported in F.Supp.2d, 2006 WL 3751340
(N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

C

Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Byron MARTIN, Plaintiff
v.
R. Tasha WALLIS, John Doe # 1, John Doe # 2,
Steven Collier, Daniel Akers, Randy Stovall, Laura
Kash, Mr. Napier, Mike Bowling, Danny Lane,
Mitchell Brandenburg, Melissa Brunelle, Frank
Kincaid, Donna Stivers, Kathy Childers, John Does
1–5, Sean Selby, Larry Smith, Tom Roberts and
Kevin Charboneau, Defendants.

No. 1:07–cv–175.
Aug. 12, 2008.

Byron Martin, Barton, VT, pro se.

Toni H. Clithero, Esq., Vermont Office of the
Attorney General, Montpelier, VT, for Defendants.

### *ORDER*

J. GARVAN MURTHA, District Judge.

**\*1** The Magistrate Judge's Report and
Recommendation was filed July 17, 2008. (Paper
53.) After *de novo* review and absent objection, the
Report and Recommendation is AFFIRMED,
APPROVED and ADOPTED. *See* 28 U.S.C. §
636(b)(1).

The defendants' motions to dismiss (Papers 45
and 49) are hereby GRANTED to the extent that
they seek dismissal based upon 28 U.S.C. § 1915(g)
. The *in forma pauperis* order in this case (Paper 2)
is vacated and this case shall be DISMISSED
unless plaintiff pays the filing fee within 30 days of
this Order. Failure to pay the fee in a timely manner
will result in dismissal.

If the fee is paid in accordance with the Court's
instructions, the Court will consider the remaining
arguments for dismissal set forth by defendants

Selby, Smith, Roberts, Charboneau and Wallis.
(Paper 49.)

Plaintiff's motion for default judgment (Paper
8) is DENIED.

SO ORDERED.

*MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION* (Papers 8, 45 and 49)

JEROME J. NIEDERMEIER, United States
Magistrate Judge.

This case, brought by *pro se* plaintiff Byron
Martin, pertains to injuries Martin allegedly
suffered while in prison. The complaint initially
named over 30 defendants. Some defendants have
been dismissed pursuant to a stipulation, but several
remain. Currently pending before the Court are
motions to dismiss filed by two separate groups of
defendants (Papers 45 and 49), and Martin's motion
for a default judgment (Paper 8).

In their motions to dismiss, both sets of
defendants contend that Martin has violated the
Prison Litigation Reform Act's ("PLRA") "three
strikes" rule by filing multiple frivolous actions.
This violation, they argue, bars Martin from
proceeding *in forma pauperis*. For reasons set forth
below, the Court agrees. Accordingly, I recommend
that the *in forma pauperis* order in this case be
vacated and the case be DISMISSED unless Martin
pays the filing fee in a timely manner.

Failure to pay the fee should result in
dismissal. If the fee is paid in accordance with the
Court's instructions, the Court will consider the
remaining arguments set forth by defendants Selby,
Smith, Roberts, Charboneau and Wallis (Paper 49).
Finally, I recommend that Martin's motion for
default judgment (Paper 8) be DENIED.

### *Factual Background*

Martin's 34–page complaint alleges a wide
range of misconduct occurring between 2002 and
2007, during which time he was in the custody of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

the Vermont Department of Corrections. The complaint lists nine "issues," with over 30 individuals and several John Does named as defendants. On April 30, 2008, Martin and counsel for 17 defendants, all of whom were employed by the State of Vermont, filed a stipulation of dismissal. Some of the issued raised in the complaint pertained only to defendants who have now been dismissed. Allegations against the remaining defendants include complaints of cold temperatures in Martin's cell; retaliation for accessing the courts; "extortion of copies and postage"; and wrongful conviction due to the misconduct of various State Troopers.

**\*2** Specifically, Martin first alleges that between June 2002 and June 2003, temperatures in his cell ranged from over 100 degrees in the summer to below zero in the winter. From June 2002 to December 2002, his bedding consisted of a mattress on the floor of the cell. As a result of these conditions, Martin allegedly suffered heat flashes, migraines, colds, asthma and bug bites.

The only remaining defendant connected with these claims is R. Tasha Wallis. Martin asserts that Wallis was the Commissioner of the Vermont Department of Buildings and General Services at the time, and refers to her as the "owner" of the prison. The complaint alleges that Wallis "knew that the boiler was broken yet did nothing to insure that the building was heated, and knew there was no air conditioning in the building."

The next set of allegations pertain to Martin's time spent in a privately-operated prison in Beattyville, Kentucky. Vermont sends some of its prisoners out of state pursuant to its contract with Corrections Corporation of America ("CCA"), the owner of the Kentucky facility. The first such allegation is that Martin was placed in punitive segregation in retaliation for exercising his right to access the courts. The defendants in this claim are primarily employees of CCA.[FN1] Also named as a defendant is their attorney, Steven Collier, Esq. Collier is accused of conspiring with prison

employees to wrongfully accuse Martin of violating a prison rule. Martin's second claim is that prison employees charged him for copying and postage while he was indigent. He contends that such charges were in violation of prison rules, and that the defendants' conduct amounted to extortion.

> FN1. These defendants have not yet been served. Counsel for the defendants has informed the Court that, if the motion to dismiss on the "three strikes" issue is denied, he will return waivers accepting service on their behalf in their official capacities.

Martin's final claim is brought against defendants Selby, Smith, Roberts and Charboneau, each of whom are Vermont State Troopers. Martin claims that these defendants lied and withheld information in a concerted effort to see him convicted in state court. Although he argues that he will be able to prove his innocence on the criminal charge, he states that "[t]his is a civil action not a habeas corpus because I am alleging an injury to my reputation...."

Currently pending before the Court are two motions to dismiss. The first, filed by Attorney Collier *pro se,*[FN2] argues that Martin should not be allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915 because at least three of his previous cases were dismissed as frivolous or for failure to state a claim. *See* 28 U.S.C. § 1915(g). The second is submitted by defendant Wallis and the four State Troopers. In addition to the "three strikes" argument, these defendants claim official capacity immunity under the Eleventh Amendment, lack of personal involvement on the part of defendant Wallis, and protection under *Heck v. Humphrey,* 512 U.S. 477 (1994) from any civil claim that would invalidate Martin's criminal conviction.

> FN2. The motion was also brought in the name of two other defendants, both of whom have since been dismissed.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

*Discussion*

I. *The PLRA's "Three Strikes" Rule*

**\*3** Under 28 U.S.C. § 1915, a court may allow an inmate to file suit without prepayment of fees so long as the inmate provides an affidavit demonstrating his inability to pay. 28 U.S.C. § 1915(a)(1). When Martin filed this action in March 2007, the Court granted his motion to proceed *in forma pauperis* and ordered the Marshals to effect service upon the defendants. The movants now argue that the Court should rescind its order because Martin has run afoul of the PLRA's "three strikes" rule, codified at 28 U.S.C. § 1915(g).

Section 1915(g) states:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In enacting the PLRA, Congress's principal intent was to deter frivolous litigation by prisoners. *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007). The PLRA's three-strikes provision furthers this goal by limiting courts' discretion to grant *in forma pauperis* status to prisoners with a record of frivolous litigation. *Id.; see Thompson v. D.E.A.,* 492 F.3d 428, 431 (D.C.Cir.2007).

Since Congress passed § 1915(g), courts have worked to define the terms therein. The Second Circuit has defined a "frivolous" claim as one that "lacks an arguable basis in law or fact." *Tafari,* 473 F.3d at 442 (quoting *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). With respect to a complaint that "fails to state a claim upon which relief may be granted," the Supreme Court has noted the similarity with the language in Fed.R.Civ.P. 12(b)(6), but has determined that dismissal under

Rule 12(b)(6) does not necessarily mean that the case "failed to state a claim" as the phrase was intended in § 1915(g). *Neitzke,* 490 U.S. at 326. "That frivolousness in the [ § 1915(g) ] context refers to a more limited set of claims than does Rule 12(b)(6) accords ... with the understanding articulated in other areas of law that not all unsuccessful claims are frivolous." *Id.* at 329 (citations omitted).

Martin has several cases that arguably qualify as strikes under § 1915(g). Proceeding in chronological order, the movants first offer the case of *Martin v. Gold,* File No. 1:03–CV–240. That case, much like this one, pertained to the conditions of Martin's confinement. The defendants moved for summary judgment, and Judge Murtha adopted my recommendation that the case be dismissed. Judge Murtha also certified that "any appeal taken *in forma pauperis* from this Order would not be taken in good faith because such an appeal would be frivolous." (Paper 78). Notwithstanding this certification, Martin appealed the judgment. The appeal was dismissed by the Second Circuit, which found that "the appeal lacks an arguable basis in fact or law." (Paper 83) (citing *Neitzke,* 490 U.S. at 325 and 28 U.S.C. § 1915(e)).

**\*4** When a district judge certifies that an appeal "would not be taken in good faith," courts have held that this constitutes a finding of frivolousness. *See, e.g., Chavis v. Curlee,* 2008 WL 508694, at \*2 (N.D.N.Y. Feb. 21, 2008) (certification by district judge that appeal would not be taken in good faith is a finding of frivolousness for purpose of § 1915(g)); *cf. S.E.C. v. Broadwell Securities, Inc.,* 1981 WL 1655, at \*1 (S.D.N.Y. July 8, 1981) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous."). However, courts have also held that a case decided at summary judgment generally does not qualify for a strike under § 1915. *See Angelle v. Gibson,* 253

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

F.3d 704, 704 (5th Cir.2001) ("Because the district court's dismissal for failure to state a claim acted as a grant of summary judgment, the district court's judgment does not count as a 'strike.' "); *Ramsey v. Goord,* 2007 WL 1199573, at *2 (W.D.N.Y. Apr. 19, 2007) ("a dismissal on summary judgment is generally not considered within the parameters of the three-strikes rule's requirement that the actions be dismissed as frivolous, malicious, or for failure to state a claim").

In *Martin v. Gold,* I issued a 27–page Report and Recommendation on the summary judgment motion, analyzing, among other things, the extent of personal involvement by certain defendants. In my view, that issue presented at least one close question of fact and law. *See, e.g., Martin v. Gold,* File No. 1:03–CV–240 (Paper 66 at 14) ("The question of notice to defendant Girrell presents a close issue."). Because the case appears to have required a developed record and close scrutiny of the legal issues, the Court should not find that it was frivolous as filed.

Martin's appeal, however, was deemed frivolous by the Second Circuit. I therefore recommend that, although the underlying case was not frivolous, the subsequent appeal be counted as a "strike" for purposes of § 1915(g). *See Chavis,* 2008 WL 508694, at *3 n. 5 (collecting cases for proposition that district court action and subsequent appeal can both qualify as strikes under § 1915(g)).

The defendants have offered several additional cases as potential frivolous filings. One such case is *Butts v. ConAgra Foods, Inc.,* File No. 2:06–CV–l, in which a group of inmates claim that they ate chicken containing intestines and excrement. Martin included himself as a *pro se* plaintiff in the complaint due to the fact that he witnessed his fellow inmates eating the chicken. The defendant moved to dismiss Martin as a party. The Court granted the motion, finding that Martin had failed to assert an injury and had no standing to bring a claim. *Butts,* File No. 2:06–CV–1 (Paper 51 at 3–5).

Martin's entry into the *Butts* case was clearly frivolous. In response to the defendant's motion to dismiss, Martin argued that he was helping Butts handle evidence and prepare legal filings. These arguments added nothing to the fact that he was merely a witness to the alleged events, and that he had no grounds upon which to join as a party in the lawsuit. *See, e.g., Rice v. Nat'l Security Council,* 244 F.Supp.2d 594, 597–987 (D.S.C.2001) (counting case as strike where inmates "failed to allege with particularity how the actions of the Defendants directly effected them"). The Court should therefore consider Martin's dismissal from the *Butts* case as a strike under § 1915(g).

**\*5** Martin engaged in similar frivolous conduct in a subsequent case, *Shaimas v. Catholic Diocese of Burlington,* File No. 1:07–CV–26. In *Shaimas,* plaintiff Christopher Shaimas alleged that he was sexually abused as a child. Martin included himself as a *pro se* plaintiff, claiming that since spending time with Shaimas in prison, he had lived through Shaimas's experience "vicariously." Martin also alleged that he had provided Shaimas with legal assistance, and had helped "Mr. Shaimas['] psychological and physical dilemma by listening."

The Court dismissed Martin from the case *sua sponte* under 28 U.S.C. § 1915(e)(2), which requires dismissal if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. As in *Butts,* the Court found that Martin had failed to allege an injury, had no standing to enter the case, and that his claims must therefore be dismissed. *Shaimas,* File No. 1:07–CV–26 (Paper 3 at 2–3). Given that the dismissal was conducted under § 1915(e)(2) based on frivolousness and/or failure to state a claim, and because Martin's entry into the case was plainly frivolous, the *Shaimas* case should count as a strike under § 1915(g) as well.

The final candidate is a case Martin filed in the Eastern District of Virginia entitled *Martin v. Elam,* File No. 1:03–CV–1223. (Paper 45–21). The court

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

dismissed the case at the outset for failure to exhaust administrative remedies. Martin moved for reconsideration. The court granted the motion for reconsideration, reopened the case, and dismissed it "as frivolous and malicious pursuant to 28 U.S.C.1915(b)." *Id.* at 2. The court further ordered that "this dismissal may affect plaintiff's ability to proceed in forma pauperis in future civil actions pursuant to 28 U.S.C.1915(g) ...." *Id.* Martin's second motion for reconsideration was denied. In light of the court's clear determination that Martin's repeated filings amounted to frivolous and malicious conduct, that case should count as a fourth strike under the PLRA.

The next question is whether Martin falls within the scope of the exception to the three-strikes rule. That exception permits an *in forma pauperis* filing, notwithstanding three previous strikes, if the plaintiff "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Martin's claims all arise out of his previous incarceration in Vermont and Kentucky. He has since been released from prison, and none of the allegations indicate that he is in any danger while outside prison walls. The "imminent danger" exception is, therefore, inapplicable.

The defendants argue that Martin's release from prison does not affect the PLRA three-strikes analysis. Specifically, they contend that because Martin was incarcerated when he filed his *in forma pauperis* application, his three strikes require rescission of the order waiving initial payment of the filing fee, regardless of his current status. The PLRA requires that a case counting as a strike must have been filed while the litigant was "incarcerated or detained in any facility." 28 U.S.C. § 1915(g). There can be no dispute that this case meets that definition. Consequently, the Court agrees that Martin's subsequent release from prison has no effect on the PLRA analysis.

**\*6** In sum, Martin's filings over the last several years have included multiple frivolous filings. Because he was incarcerated at the time the cases

were filed, the filings qualified as strikes under § 1915(g). The defendants' motions to dismiss for violation of the PLRA's three-strikes rule should, therefore, be GRANTED, and the Court should vacate its order allowing Martin to proceed *in forma pauperis.* I recommend that Martin be allowed 30 days in which to pay the filing fee, and if no such fee is paid, that this case be DISMISSED.

## II. *Motion for Default Judgment*

Also pending before the Court is Martin's motion for a default judgment, in which he argues that the defendants failed to file answers in a timely manner. (Paper 8). When Martin filed his motion, the Marshals Service had not yet sent waivers of service to the defendants. The docket shows that Martin filed his motion on January 8, 2008, and that waivers were sent on January 10, 2008. Accordingly, the motion for default judgment was premature and should be DENIED.

### Conclusion

For the reasons set forth above, I recommend that the defendants' motions to dismiss (Papers 45 and 49) be GRANTED to the extent that they seek dismissal based upon 28 U.S.C. § 1915(g). The *in forma pauperis* order in this case (Paper 2) should be vacated and the case should be DISMISSED unless Martin pays the filing fee within 30 days of the entry of a final order by the Court.

Failure to pay the fee in a timely manner should result in dismissal. If the fee is paid in accordance with the Court's instructions, the Court will consider the remaining arguments for dismissal set forth by defendants Selby, Smith, Roberts, Charboneau and Wallis (Paper 49). Finally, I recommend that Martin's motion for default judgment (Paper 8) be DENIED.

D.Vt.,2008.
Martin v. Wallis
Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3471864 (D.Vt.)
**(Cite as: 2008 WL 3471864 (D.Vt.))**

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)
**(Cite as: 2008 WL 5157194 (N.D.N.Y.))**

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Melvin C. LEWIS, Plaintiff,
v.
P. HEALY, et al., Defendants.

No. 9:08-CV-148 (LEK/DEP).
Dec. 8, 2008.

West KeySummary**Federal Civil Procedure 170A**
☞**2734**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734 k. Forma Pauperis
Proceedings. Most Cited Cases

An inmate's *in forma pauperis* status, entitling
him to a waiver of normal court costs, was vacated
because he had brought three prior civil rights
actions which were dismissed on their merits.
Accordingly, the court recognized that the net result
of its findings regarding the prior actions was not
denial altogether of the inmate's access to the
courts, but instead was only the imposition of the
requirement that he conclude that the pursuit of his
civil rights claims justifies his expenditure of the
full applicable filing fee.

Melvin C. Lewis, Napanoch, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the
State of New York, David L. Cochran, Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

***DECISION AND ORDER***
LAWRENCE E. KAHN, District Judge.
    *1 This matter comes before the Court
following a Report-Recommendation filed on
October 29, 2008, by the Honorable David E.

Peebles, United States Magistrate Judge, pursuant
to 28 U.S .C. § 636(b) and L.R. 72.3(c) of the
Northern District of New York. Report-Rec. (Dkt.
No. 32).

    Within ten days, excluding weekends and
holidays, after a party has been served with a copy
of a Magistrate Judge's Report-Recommendation,
the party "may serve and file specific, written
objections to the proposed findings and
recommendations," FED.R.CIV.P. 72(b), in
compliance with L.R. 72.1. No objections have
been raised in the allotted time with respect to
Judge Peebles' Report-Recommendation.
Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is
not subject to attack for plain error or manifest
injustice.

    Accordingly, it is hereby

    **ORDERED,** that the Report-Recommendation
(Dkt. No. 32) is **APPROVED** and **ADOPTED** in
its **ENTIRETY;** and it is further

    **ORDERED,** that the Order granting Plaintiff
in forma pauperis status (Dkt. No. 4) is
**VACATED;** and it is further

    **ORDERED,** that Defendants' Motion to
dismiss Plaintiff's Complaint (Dkt. No. 21) is
**GRANTED** as to all Defendants and all claims
unless Lewis pays the full required filing fee of
$350 **within thirty (30) days** from the date of this
Order; and it is further

    **ORDERED,** that the requirement that
Defendants answer Plaintiff's Complaint is
**STAYED** indefinitely pending final resolution of
the IFP issue raised in their motion; and it is further

    **ORDERED,** that Plaintiff's Motion to amend
the Complaint (Dkt. No. 25) is **DENIED,** without
prejudice to its renewal in the event that the
required filing fee is paid; and it is further

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)
**(Cite as: 2008 WL 5157194 (N.D.N.Y.))**

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Melvin C. Lewis, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis* ("IFP"), has commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging deprivation of his civil rights. In their response to plaintiff's complaint, defendants assert that plaintiff's IFP status was improvidently granted, and seek conditional dismissal of plaintiff's complaint under 28 U.S.C. § 1915(g), absent his pre-payment in full of the applicable filing fee, in light of the prior dismissal of three or more such inmate civil rights actions brought by him, but found to be lacking in palpable merit. Because I agree that plaintiff is subject to the "three strikes" provision of section 1915(g), and has not established a basis to invoke the imminent danger exception to that rule, I recommend that defendants' motion be granted.

I. *BACKGROUND*

Plaintiff is, and was at the times relevant to the constitutional claims raised in this action, a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and confined within the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York. *See generally* Complaint (Dkt. No. 1). In his complaint, plaintiff asserts that he was subject to adverse action, including confinement to his cell and reassignment from his work program, in retaliation for having filed grievances against certain defendants. *Id.* Plaintiff also alleges that the defendants conspired to effectuate the issuance of a false misbehavior report against him, and that during the course of an ensuing disciplinary proceeding he was denied procedural due process. *Id.*

**\*2** In reply to a specific inquiry on the form civil rights complaint utilized by the plaintiff to initiate this action, requesting information regarding previous lawsuits, Lewis identified only one other action filed by him in any state or federal court relating to the terms of his confinement.[FN1] *See* Complaint (Dkt. No. 1) § 5. That limited response, however, is flatly contradicted by publicly available information which reveals that at the time of commencement of this suit, plaintiff had initiated at least ten other civil rights actions and one habeas corpus proceeding in this district, the Southern District of New York, and the Western District of New York, dating back to 1997, while a DOCS inmate. The following represents a listing of plaintiff's prior known civil right actions and habeas corpus petitions filed while confined as a prison inmate:

> FN1. When signing his complaint, plaintiff attested to the truth of its contents under penalty of perjury. *See* Complaint (Dkt. No. 1) at 11.

A. *Northern District of New York*

(1) *Lewis, et al. v. DeAngelo, et al.,* Civil Action No. 97-CV-1316 (Civil Rights Action consolidating Civil Action Nos. 97-CV-1457, 97-CV-1683, 97-CV-1657, 97-CV-1375, 97-CV-1416, and 97-CV-1427)

(2) *Lewis v. City of Binghamton, et al.,* Civil Action No. 97-CV-1823 (Civil Rights Action)

(3) *Lewis v. Dury, et al.,* Civil Action No. 00-CV-765 (Civil Rights Action)

(4) *Lewis v. Poole,* Civil Action No. 02-CV-987 (Habeas Corpus Proceeding)

(5) *Lewis v. Donahue et al.,* Civil Action No. 04-CV-1452 (Civil Rights Action)

(6) *Lewis v. Allen, et al.,* Civil Action No. 05-CV-1117 (Civil Rights Action)

(7) *Lewis v. Goord, et al.,* Civil Action No.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

06-CV-505 (Civil Rights Action)

**B.** *Western District of New York*
(1) *Lewis v. Pataki, et al.,* Civil Action No. 03-CV-800 (Civil Rights Action)

(2) *Lewis v. Blazejewski, et al.,* Civil Action No. 03-CV-943 (Civil Rights Action)

(3) *Lewis v. Pataki, et al.,* Civil Action No. 04-CV-162 (Civil Rights Action)

**C.** *Southern District of New York*
(1) *Lewis v. Corp. City of Binghamton, et al.,* Civil Action No. 07-CV-4674 (Civil Rights Action)

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 8, 2008, and was thereafter granted leave to proceed IFP. Dkt. Nos. 1, 4. Following their execution of acknowledgment of service forms, *see* Dkt. Nos. 11, 12, 13, 14, and 17, on May 23, 2008 defendants filed a motion seeking dismissal of plaintiff's complaint pursuant to 28 U.S.C. § 1915(g). Dkt. No. 21. With the filing by Lewis of papers in opposition to that motion, Dkt. No. 24, defendants' motion is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) (B) and Northern District of New York Local Rule 72.3(c).FN2 *See also* Fed.R.Civ.P. 72(b).

> FN2. Also pending before the court is a motion by the plaintiff to amend his complaint in order to add new defendants and assert additional claims under section 1983. *See* Dkt. No. 25. In light of my finding that plaintiff does not qualify for IFP status, I recommend that the motion to amend be held in abeyance, and decided only in the event plaintiff pays the full fee for filing this action.

## III. *DISCUSSION*

### A. *Three Strikes Provision Generally*

In their motion, defendants invoke 28 U.S.C. § 1915(g), arguing that under that section plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status.

**\*3** Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress enacting this "three strikes" provision was to curb prison inmate abuses and deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443-44 (2d Cir.2007); *Gill v. Pidlychak,* No. 9:02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec.19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in the same cost benefit analysis that other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee-that is, to assess whether the result to be achieved justifies the filing fee expenditure. *Tafari,* 473 F.3d at 444; *Ibrahim v. District of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006). As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted IFP status,

[p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing law suits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates discriminately to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), *cert. denied sub nom., Nicholas v. Miller,* 523 U.S. 1126, 118 S.Ct. 1812, 140 L.Ed.2d 950 (1998) (internal citations omitted); *see also Gill,* 2006 WL 3751340, at *2.

The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such a question for the court. FN3 *Tafari,* 473 F.3d at 442-43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. *Tafari,* 473 F.3d at 442 (citing *Andrews v. King,* 398 F.3d 1113, 1121 (9th Cir.2005)).

FN3. The Second Circuit has expressed its view that the time for determination of "strikes" is only when the section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously signal whether the dismissal should count as a "strike" for the purposes of that

section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004); *see also Snider v. Melindez,* 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

B. *Application of Section 1915(g)*

**\*4** Defendants' motion identifies four actions, all brought by the plaintiff in either this district or the Southern District of New York, as constituting strikes, for purposes of section 1915(g), including Civil Action Nos. 97-CV1823, 04-CV-1452, 07-CV-4674, and 05-CV-1117. In support of their motion, defendants offer only entries from the docket sheets maintained by the court in two of those four actions. *See* Cochran Affirmation (Dkt. No. 21) Exhs. C and D. Defendants interpret the docket entries associated with the dismissal of each of those actions as evidencing a judicial finding that plaintiff's complaint failed to state a claim upon which relief may be granted.

The determination of whether a prior dismissal does in fact constitute a strike is dependent upon the precise nature of the dismissal and the grounds supporting it. For that reason, rather than being guided by the text of relevant docket entries and the particular language employed, I have obtained copies of the actual orders directing dismissal of those actions, and will look to those orders, constituting matters of public record of which the court may properly take judicial notice, *Green v. Nottingham,* 90 F.3d 415, 418 (10th Cir.1996) (citing *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10 th Cir.1979)), to aid in determining whether they meet the requisite criteria to qualify as strikes under section 1915(g).

1. *Civil Action No. 97-CV-1823*

The first action offered by defendants in support of their motion is *Lewis v. City of Binghamton, et al.,* Civil Action No. 97-CV-1823 (N.D.N.Y., filed December 15, 1997).FN4 *See* Cochran Affirmation (Dkt.21) Exh. C. At the time the suit was commenced, plaintiff was confined

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)
**(Cite as: 2008 WL 5157194 (N.D.N.Y.))**

within the Broome County Correctional Facility. No. 6:97-CV-1823, Dkt. No. 1. Plaintiff's complaint in that action asserts claims under 42 U.S.C. § 1983 against the City of Binghamton; Gerald F. Mollen, the District Attorney of Broome County; Matthew Ryan, an attorney for the Broome County Public Defender's Office; and MaryAnn Lehmann, identified by Lewis as "City Court Judge for Broome County", seeking money damages for his allegedly illegal imprisonment in 1997 resulting from the negligence and malicious misconduct of the defendants. *Id.* at Dkt. Nos. 1, 5. Plaintiff's complaint was dismissed as a result of an order issued on February 5, 1998 by then-Chief Judge Thomas J. McAvoy on the basis that a plaintiff cannot recover monetary damages for an alleged unconstitutional conviction or imprisonment under section 1983 without first proving that the conviction has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. *Id.* at Dkt. No. 5 (citing, *inter alia, Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). The order specifically recited that plaintiff's complaint was being dismissed for failure to state a claim upon which relief may be granted. That action therefore qualifies as a strike for purposes of section 1915(g). *Tafari,* 473 F.3d at 441; *see also Smith v. District of Columbia,* 182 F.3d 25, 27-29 (D.C.Cir.1999).

> FN4. Because plaintiff was confined within the Broome County Correctional Facility at the time that action was commenced, the docket sheet does not reflect his department identification number ("DIN"), which is often helpful in confirming that the plaintiff in that action and the plaintiff in the current action are one in the same. Based upon an examination of his criminal record, however, the plaintiff "Melvin C. Lewis" in the current action is determined to be the same "Melvin Cornell Lewis" who commenced No. 97-CV-1823.

*2. Civil Action No. 04-CV-1452*

*5 The second case cited by the defendants in support of their three strikes motion is *Lewis v. Donahue, et al.,* Civil Action No. 3:04-CV-1452 (N.D.N.Y., filed Dec. 15, 2004). The plaintiff's complaint associated with that action reflects that at the time the suit was commenced, he was confined within the Auburn Correctional Facility, and that the claims asserted in his complaint are alleged to have arisen under 42 U.S.C. § 1983. *See* No. 04-CV-1452, Dkt. No. 1. That action was brought by plaintiff against Binghamton Police Officers Scott Donahue and Barry Angels, Broome County Court Judge Martin E. Smith, and Chief Assistant District Attorney Joanne Rose Parry, alleging false arrest, false imprisonment, and malicious prosecution in connection with his 2000 conviction and subsequent imprisonment.FN5 *Id.* As the result of an order issued on June 6, 2006 by District Judge Thomas J. McAvoy, plaintiff's complaint was dismissed on the basis that a plaintiff cannot recover damages for an unconstitutional conviction or imprisonment under section 1983 " 'unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.' " *Id.* at Dkt. No. 56 (quoting *Heck,* 512 U.S. at 489, 114 S.Ct. 2364, 129 L.Ed.2d 383). That order recited that plaintiff's complaint was being dismissed because it failed to state a claim upon which relief could be granted and was frivolous under 28 U.S.C. § 1915(e) (2). *Id.* Accordingly, that dismissal also qualifies as a strike for purposes of section 1915(g). *Tafari,* 473 F.3d at 441; *see also Smith,* 182 F.3d at 27-29.

> FN5. Plaintiff's complaint in that action was initially dismissed pursuant to an order issued on December 22, 2004 by District Judge Gary L. Sharpe, finding that plaintiff's claims were not cognizable under 42 U.S.C. § 1983 because it appeared that plaintiff was only seeking to alter the fact or duration of his custody, relief available solely by way of a habeas corpus petition. No. 04-CV-1452, Dkt. No

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

4. Plaintiff responded by filing a motion for reconsideration, *id.* at Dkt. No. 6, which was granted by Judge Sharpe on May 24, 2005, restoring the action and vacating the judgment in favor of the defendants on the ground that plaintiff was "not seeking immediate or speedier release from prison, but rather only monetary damages and a probable cause hearing[,]" relief which he could pursue under section 1983. *Id.* at Dkt. No. 10. Plaintiff's claims against Judge Martin E. Smith and Chief Assistant District Attorney Joanne Rose Parry, however, were dismissed by Judge Sharpe on the basis of judicial and prosecutorial immunity, respectively. *Id.*

*3. Civil Action No. 07-CV-4674*

The third strike alleged by the defendants relates to an action entitled *Lewis v. Corp. City of Binghamton, et al.,* Civil Action No. 1:07-CV-4674 (S.D.N.Y., filed June 4, 2007). *See* Corchran Affirmation (Dkt. No 21) Exh. D. In that suit, which like this action was commenced while plaintiff was confined within Eastern, Lewis asserted claims under 42 U.S.C. § 1983 against "the Corporation City of Binghamton"; Broome County Court Judge Martin E. Smith; Chief Assistant District Attorney Joanne Rose Parry; and James M. Barber, plaintiff's defense attorney, again alleging constitutional violations in connection with his 2000 conviction. No. 07-CV-4674, Dkt. No. 3. Citing *Heck,* Chief Judge Kimba M. Wood dismissed plaintiff's complaint on June 4, 2007 for failure to state a claim upon which relief may be granted, and also with the additional finding that any appeal from that order would not be taken in good faith. *Id.* at Dkt. No. 3. Consequently, that action similarly qualifies as a strike for purposes of defendants' motion. *Tafari,* 473 F.3d at 441; *see also Smith,* 182 F.3d at 27-29.

As the foregoing reflects, defendants have convincingly established that the plaintiff has filed at least three meritless civil rights complaints while

confined as a New York prison inmate.[FN6] Accordingly, absent applicability of the imminent danger exception, plaintiff is subject to the provisions of 28 U.S.C. § 1915(g), and thus may properly be required to prepay in full the applicable filing fee in order to pursue his claims, notwithstanding that IFP status was previously conferred. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247-48 (E.D.N.Y.1998).

FN6. Defendants contend that another action, *Lewis v. Monette,* 9:05-CV-1117 (N.D.N.Y., filed September 6, 2005), may qualify as a strike for purposes of section 1915(g). While it is unnecessary to analyze the circumstances surrounding the dismissal of that action, it likely does not qualify as a strike since plaintiff's claims were dismissed on motion for summary judgment, rather than based upon a failure to state a claim upon which relief may be granted. *See Weber v. Gathers,* No. 2:04-1563-MBS, 2006 WL 2796374, at *3 (D.S.C. Sept.26, 2006) ("[A]n action proceeding to the summary judgment stage can rarely be characterized as 'frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted' for purposes of 28 U.S.C. § 1915(g)."); *Harris v. Oatley,* No. 2:05-CV-265, 2006 WL 2714961, at *5 (W.D.Mich. Sept.22, 2006) ("[C]ases dismissed on summary judgment do not constitute a strike.").

On the other hand, it does appear that at least one other case not cited by the defendants may also qualify as a strike. *See Lewis v. Pataki, et al.,* Civil Action No. 04-CV-162 (W.D.N.Y., filed March 12, 2004) (dismissing the action pursuant to 28 U.S.C. § 1915(e)(2)(B) and certifying that any appeal from that order would not be taken in good faith). In light of the findings of this report and recommendation, however, it is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

unnecessary to address the circumstances surrounding dismissal of that case.

### C. *Imminent Danger Exception*

**\*6** As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g). *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm. *Id.* An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of a "serious physical injury." 28 U.S.C. § 1915(g). The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at *1-*2 (S.D.N.Y. Sept.6, 2005) (inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, does not establish imminent danger)

The term "serious physical injury", as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]" *Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6-7;

and patterns of harassment from corrections officers, heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330-31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

In this action, plaintiff's claims include allegations of retaliation, conspiracy, and denial of due process, resulting in confinement to his cell; reassignment from his work program; the issuance of a falsified misbehavior report; nineteen days of keeplock confinement; and loss of packages, telephone privileges, commissary, and recreation. FN7 *See* Complaint (Dkt. No. 1). Having carefully reviewed both plaintiff's complaint and the materials submitted in response to defendants' motion to dismiss, I conclude that none of the matters set forth in those papers suggest the existence of imminent danger of serious physical injury of the sort contemplated by Congress when enacting section 1915(g). *See Polanco v. Hopkins,* 510 F.3d 152 (S.D.N.Y.2007) (finding prisoner was not in imminent danger of serious physical injury where he alleged he was unjustly disciplined by confinement for thirty days, deprived of keeplock shower, called names and received threats from guards, wrongly reported with misbehavior charge, and confined to special housing unit (SHU)). Plaintiff therefore does not qualify for relief under the imminent danger exception to the three strikes rule.

> FN7. Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998) (citing *Gittens* ); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi,* 46 F.3d

189, 192 (2d Cir.1995)). Inmate conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

## IV. *SUMMARY AND RECOMMENDATION*

**\*7** The record now before the court firmly establishes that three prior civil rights actions, brought by the plaintiff while a prison inmate, have been dismissed on their merits for failure to state claims upon which relief may be granted. The record also fails to reveal any basis to conclude that plaintiff is in imminent danger of serious physical injury, and therefore entitled to exemption from the three strikes provision of 28 U.S.C. § 1915(g). Accordingly, recognizing that the net result of these findings is not denial altogether of plaintiff's access to the courts, but instead only the requirement that he conclude that the pursuit of his civil rights claims justifies his expenditure of the full applicable filing fee, it is hereby respectfully

RECOMMENDED that:

1) The order granting the plaintiff IFP status (Dkt. No. 4) be VACATED.

2) Defendants' motion to dismiss plaintiff's complaint (Dkt. No. 21) be GRANTED as to all defendants and all claims unless Lewis pays the full required filing fee of $350.00 within thirty days after the entry of a final order by the district court

addressing this recommendation; and

3) The requirement that defendants answer plaintiff's complaint be STAYED indefinitely pending final resolution of the IFP issue raised in their motion; and

4) Plaintiff's motion to amend the complaint (Dkt. No. 25) be DENIED, without prejudice to its renewal in the event that the required filing fee is paid or if the district court rejects this recommendation and denies defendants' motion to dismiss.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS OF SERVICE OF THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2008.
Lewis v. Healy
Not Reported in F.Supp.2d, 2008 WL 5157194 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Michael F. RAMSEY, Plaintiff,
v.
Glenn S. GOORD, Donald Selsky, Mr. Ryerson,
Thomas G. Eagen, John H. Nuttall, Michael McGinnis,
Paul Chapius, A. Bartlett, M. Sheahan, J. Irizarry, J.
Hale, J. Cieslak, Sgt. Litwilder, J. Ames, C.O. Clark,
C.O. Held, and P. Klatt, Defendants.
No. 05-CV-47A.

Aug. 13, 2005.
Michael F. Ramsey, Clinton Correctional Facility,
Dannemora, NY, pro se.

DECISION and ORDER

SKRETNY, J.

*INTRODUCTION*

**\*1** Plaintiff, an inmate formerly incarcerated at the
Elmira and Southport Correctional Facilities (hereinafter
"Elmira" and "Southport"), has brought this action
pursuant to 42 U.S.C. § 1983, and seeks permission to
proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.
Plaintiff's complaint sets forth five claims alleging
violations of his constitutional and statutory rights. The
first and second claims set forth in the complaint relate to
a July, 2002 administrative hearing that was conducted on
disciplinary charges brought against him during his
sojourn at Elmira, and principally allege a violation of
plaintiff's due process rights. Plaintiff's third and fourth
claims allege violations of his right to practice his
religious beliefs by correctional employees and
supervisory personnel at Southport between February,
2004 and January, 2005. Plaintiff's fifth claim asserts that
prison officials at Southport interfered with his First and
Fourteenth Amendment rights when they deprived him of
paper and other materials necessary to his prosecution of
legal actions that he had previously filed. Plaintiff seeks

declaratory and injunctive relief as well as compensatory
and punitive damages with respect to each claim.

Plaintiff's application to proceed *in forma pauperis* is
granted. For the reasons set forth below, several of
plaintiff's claims are now dismissed pursuant to 28 U.S.C.
§§ (e)(2)(B) and 1915A, and service by the U.S. Marshal
is directed with respect to the remaining claims.

*DISCUSSION*

Section 1915(e)(2)(B) of 28 U.S.C. provides that the
Court shall dismiss a case in which *in forma pauperis*
status has been granted if the Court determines that the
action: (I) is frivolous or malicious; (ii) fails to state a
claim upon which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief. In addition, 28 U.S.C. § 1915A(a) requires the
Court to conduct an initial screening of "a complaint in a
civil action in which a prisoner seeks redress from a
governmental entity or officer or employee of a
governmental entity," *id.,* regardless of whether or not the
inmate has sought *in forma pauperis* status under 28
U.S.C. § 1915.

In evaluating the complaint, the Court must accept as
true all factual allegations and must draw all inferences in
plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957). "This rule applies with particular
force where the plaintiff alleges civil rights violations or
where the complaint is submitted *pro se." Chance v.
Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). Based on its
evaluation of the amended complaint, the Court finds that
several of plaintiff's claims must be dismissed pursuant to
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because
they fail to state a claim upon which relief may be granted.

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. §
1983. "To state a valid claim under 42 U.S.C. §§ 1983, the
plaintiff must allege that the challenged conduct (1) was
attributable to a person acting under color of state law, and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). In addition, a prerequisite for liability under § 1983 is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

*1. Claims Relating to July, 2002 Disciplinary Hearing (First and Second Claims)*

*(a) Due Process*

The first claim of plaintiff's complaint alleges that he was deprived of his procedural due process rights during a disciplinary hearing conducted before defendant Ryerson, a hearing officer at Elmira, which resulted on July 24, 2002 in the determination of guilt with respect to the charges brought against plaintiff, and the imposition of six moths punitive confinement with six months loss of good time and privileges. (Compl. pp. 4-5). Specifically, plaintiff claims that he was denied the following due process rights at the hearing: the right to call witnesses; the right to employee assistance; the right to hear and respond to the evidence against him; and the right to have the hearing electronically recorded. (Compl. p. 5). He asserts that defendants Selsky and Goord further violated his due process rights when they denied his appeal of Ryerson's determination.

Plaintiff's second claim also relates to the July, 2002 disciplinary hearing, and alleges that defendant Goord, Commissioner of the New York State Department of Correctional Services ("DOCS") ordered defendant Selsky, Director of the Special Housing Program for DOCS, to deny plaintiff's appeal of the July 24, 2002 disciplinary determination in retaliation for a complaint plaintiff had sent to Goord with respect to Goord's treatment of him. The complaint further alleges that following the denial of plaintiff's appeal of the July 24, 2002 determination by defendant Selsky, he sent a complaint to defendant Goord repeating the "blatant due process violations" that had allegedly been committed by defendant Ryerson during the disciplinary hearing, and alleging that Goord and Selsky's refusal to reverse

Ryerson's determination was done for the purpose of retaliating against him for the complaint he had filed against Goord. Following plaintiff's receipt of a letter from defendant Selsky informing him that no further action would be taken with respect to plaintiff's appeal of the disciplinary determination, plaintiff states that he filed an Article 78 petition in New York State Supreme Court challenging defendant Ryerson's determination. He alleges that after unnecessarily delaying the Article 78 proceeding for the purpose of prolonging plaintiff's stay in punitive confinement, defendant Ryerson administratively reversed defendant Ryerson's determination and then moved successfully to dismiss plaintiff's petition as moot. (Compl. pp. 3, 6-7).

**\*3** It is well settled that when a litigant makes a constitutional challenge to a determination which affects the overall length of his imprisonment, the "sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Moreover, an inmate cannot use § 1983 to recover damages where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and a § 1983 cannot lie "unless ... the conviction or sentence has already been invalidated" on direct appeal or by a habeas corpus petition. *Id.* at 487. The Supreme Court further held in *Edwards v. Balisok,* 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), that habeas was the sole mechanism for an inmate's constitutional challenge to a prison disciplinary hearing which led to a revocation of the inmate's accrued good-time credits because the "principal procedural defect complained of," namely deceit and bias on the part of the disciplinary hearing officer, "would, if established, necessarily imply the invalidity of the deprivation [the inmate's] good-time credits."

While the determination that forms the gravamen of plaintiff's complaint in the instant matter did affect the overall length of his imprisonment to the extent that it imposed a loss of six months good time, his complaint is not barred under *Preiser* and *Heck* because plaintiff demonstrates that it was administratively reversed following his commencement of an Article 78 proceeding

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

in New York State Supreme Court.[FN1] *See, e.g., Odom v. Pataki,* 00 Civ. 3727, 2001 U.S. Dist. LEXIS 2790, at *7-8 (S.D.N.Y.2001) ("[A]n inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction has been reversed or otherwise invalidated.").

> FN1. Plaintiff attaches to his complaint documentation from the New York State Department of Correctional Services and the New York State Attorney General's Office which supports his claim that the July 24, 2002 disciplinary hearing determination was reversed, with all references to that determination expunged from plaintiff's record.

In determining whether plaintiff's first and second claims can go forward, the Court must also examine whether plaintiff has alleged the deprivation of a liberty interest that is entitled to constitutional protection. The administrative reversal of the July 24, 2002 disciplinary determination, and the expungement of that determination from plaintiff record, does not render plaintiff's due process claim non-justiciable, for plaintiff alleges that he served 121 days in "punitive confinement" prior to such reversal, during which he was handcuffed, chained and shackled whenever permitted to leave his cell.[FN2] (Compl. p. 5).

> FN2. The Court's determination that plaintiff served 121 days in punitive confinement is based upon the plaintiff's allegation that he was sentenced to six months of such confinement on July 24, 2002, and that his sentence was administratively reversed on November 22, 2002, pursuant to a Memorandum issued on the latter date by the Director of Special Housing/Inmate Discipline of the New York State DOCS, a copy of which is attached to the complaint.

In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected

the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.[FN3] "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, 115 S.Ct. at 2301, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. *See Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997) (holding that, while *Sandin* did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

> FN3. *Sandin* compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86, 115 S.Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," *id.* at 486, 115 S.Ct. at 2301, and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487, 115 S.Ct. at 2302.

**\*4** Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. *See, e.g., Welch v. Bartlett,* 196 F.3d 389, 393-95 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 8-9; *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997). Several factors should be considered when assessing whether the particular restrictions imposed on the prisoner are atypical and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary confinement compared to the potential duration a prisoner may experience while in discretionary confinement. *Wright,* 132 F.3d at 136.

In terms of the period of the number of days of punitive or other special confinement that will be regarded as sufficient implicate a prisoner's liberty interest, our Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004). Instead, the Court of Appeals have established guidelines to be used by district courts in determining whether a prisoner's liberty interest has been infringed. *Id.* Pursuant to these guidelines, the Court has ruled that where a prisoner has been confined for what it has termed an "intermediate duration," defined as between 101 and 305 days, the district court is required to develop a " 'detailed record' of the conditions of confinement relative to ordinary prison conditions." *Id.* at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000)). The Court in *Palmer* further instructed that in a case involving an intermediate term of confinement, the district court must examine the "actual circumstances" of SHU confinement "without relying on its familiarity with SHU conditions in previous cases." *Id.* (citing *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999)).

In the instant case, plaintiff alleges that he was maintained in keeplock for 121 days, during which time he further alleges that he was subject to restraint by handcuffs, chains and shackles whenever he was allowed to leave his cell. It is not possible, based upon the allegations set forth in the complaint, for the Court to determine whether the conditions under which plaintiff was maintained were atypical within the meaning of *Sandin.* In light of the Second Circuit's directive that the district court must develop a detailed record concerning the nature of confinement conditions "where special confinement exceeds 101 days or there is any other indication of atypicality," *Harris v. McGinnis,* No. 02 Civ. 6481, 2004 U.S. Dist. Lexis 19500, at *14 (S.D.N.Y.2004), the Court concludes that the complaint

sufficiently alleges that plaintiff was deprived of a liberty interest.

**\*5** To state a due process claim, plaintiff must also allege that the defendants "deprived him of [a liberty] interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654. Under the Fourteenth Amendment, the procedural protections required when the length or conditions of confinement implicate due process protections: "advance notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)). In light of the plaintiff's allegations, noted above, concerning how his due process rights were infringed at the July 24, 2002 hearing, and given the Court's duty to construe liberally the pleadings of *pro se* plaintiffs, the Court determines that the plaintiff's first and second claims sufficiently allege that his liberty interest was deprived as a result of insufficient process.[FN4]

> FN4. The Court notes that while plaintiff does specify in his complaint the precise nature of the alleged deprivation of due process that occurred at the July 24, 2002 hearing, the complaint is pretty thin in terms of allegations of specific facts showing precisely how plaintiff's due process rights were interfered with. The Court's decision to allow plaintiff's due process claims to proceed despite the sparseness of his factual allegations stems from the fact that the administrative reversal of the hearing determination is stated to have been based upon error by the hearing officer. (DOCS Memorandum 11/22/02 attached to complaint).

There remains, however, the question of whether plaintiff has alleged sufficient involvement by defendants Ryerson, Goord and Selsky in the claimed deprivation of his due process rights. A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998). Under this requirement, there may be liability if:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

(1) the defendant participated directly in the alleged constitutional violation; or (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which the unconstitutional practices occurred or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal. *Montero v. Travis,* 171 F.3d 757, 761-62 (2d. Cir.1999) (citing *Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997)); *see Neitzke v. Williams,* 490 U.S. 319, 323 n. 2, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's due process claim against defendant Ryerson stems from Ryerson's role as the hearing officer at the hearing which concluded on July 22, 2002, and the Court finds that Ryerson's alleged role in presiding over the hearing is sufficient to allege personal involvement. Accordingly, plaintiff's first claim, alleging deprivation of due process, will be allowed to go forward against defendant Ryerson.

The Court's determination is different, however, with respect to plaintiff's due process claims against defendants Selsky and Goord. Plaintiff alleges in his first claim that he appealed Ryerson's disciplinary determination to Goord, and that defendant Selsky responded on Goord's behalf, advising him that his appeal was denied. In his second claim he further alleges that he sent two letters to defendant Goord complaining about the treatment to which he had been subjected at the disciplinary hearing. Once again responding on behalf of Commissioner Goord, defendant Selsky advised plaintiff that no further action would be taken by Selsky or Goord with respect to plaintiff's complaint about his treatment at the hearing. (Compl. pp. 6-7). Plaintiff's allegations are not sufficient to allege personal involvement by defendants Selsky and

Goord with respect to plaintiff's due process claims.[FN5]

> **FN5.** While plaintiff alleges that defendant Goord ordered defendant Selsky to deny plaintiff's appeal as a means of punishing and retaliating against plaintiff for having complained to Goord, plaintiff alleges no facts that would support this allegation and it is not self-evident how plaintiff would have been in a position to know that Goord "ordered" Selsky to punish and retaliate against plaintiff. Plaintiff similarly alleges no facts to support his claim that Goord requested "lengthy delays and unnecessary extensions" in responding to plaintiff's Article 78 complaint.

**\*6** It is well-established that "mere linkage in the prison chain of command" is not sufficient to support a claim of personal involvement. *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1995); *see also Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim."). Moreover, the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS "chain of command," affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at *21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at *21-22 (S.D.N.Y.2004). In addition, the fact that defendant Goord apparently referred plaintiff's appeal and letter-complaints to defendant Selsky for resolution is not enough to establish personal involvement on the part of Goord. *See Lunney v. Brureton,* 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, at *45-46 (S.D.N.Y.2005) (citing *Sealy v. Giltner,* 116 F.3d 47, 51 (2d cir.1997)) ("[S]ubmitting an appeal or complaint to a subordinate for disposition is not sufficient to find personal involvement."). The Court therefore determines that plaintiff's due process claims against defendants Selsky and Goord must be dismissed.

*(b) Malicious Prosecution, First Amendment, Equal Protection*

In addition to his due process arguments, plaintiff's

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

first and second claims set forth additional bases for his challenges to the disciplinary proceeding concluded on July 24, 2002. He alleges that he was the victim of malicious prosecution, and that defendants Selsky and Goord's initial refusal to reverse the disciplinary determination stemmed from their decision to retaliate against plaintiff for complaining about their treatment of him, thereby violating his First Amendment rights. Plaintiff also invokes the equal protection clause.

Plaintiff fails to specifically indicate which actions of the defendants are alleged to constitute "malicious prosecution." However, based upon the factual recitals set forth in his statement of his first and second claims, it would appear that plaintiff is contending that the refusal of defendants Selsky and Goord to reverse defendant Ryerson's determination on appeal until after plaintiff had commenced an Article 78 proceeding with respect to that determination constituted "malicious prosecution."

"To prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding." Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir.1996) (citing Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991)). Further, only those claims of malicious prosecution that implicate Fourth Amendment rights can be appropriate bases for malicious prosecution claims brought under § 1983. Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir.2004) (citing Albright v. Oliver, 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A claim for malicious prosecution under § 1983 may not be premised on an administrative disciplinary proceeding, at least in the absence of a claim of a violation of Fourth Amendment rights. Id. at 315.

*7 The disciplinary proceeding challenged by plaintiff in the instant matter was not a criminal prosecution, see Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution ...."), and plaintiff alleges no violation of Fourth Amendment rights. Accordingly, to the extent the first and second claims in the complaint are based upon the defendants' alleged

malicious prosecution of him, they must be dismissed.

Plaintiff's invocation of his First Amendment rights to free speech and to petition the government as another basis for his second claim is understood to relate to his allegation that defendant Selksy denied plaintiff's appeal from the July 24, 2002 disciplinary determination in retaliation for his sending a letter to defendant Goord criticizing certain statements Goord had made in a DOCS newsletter. (Compl.P. 6).

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. See, e .g., Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. See Colon, 58 F.3d at 872-73.

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," Colon, 58 F.3d at 872, requiring " 'detailed fact pleading ... to withstand a motion to dismiss." ' Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983) (quoting Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir.1981)). To survive a motion to dismiss, such claims must be " 'supported by specific and detailed factual allegations," ' and should not be stated " 'in wholly conclusory terms." ' Friedl, 210 F.3d at 85-86 (quoting Flaherty, 713 F.2d at 13); see also Graham, 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); Gill v. Mooney, 824 F.2d 192,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

194 (2d Cir.1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. *Thaddeus-X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999) (cited with approval in *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). *See Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (on remand, district court must consider the "serious question" of "whether the alleged acts of retaliation ... were more than *de minimis*" in deciding summary judgment motion). A *de minimis* retaliatory act is outside the ambit of constitutional protection. *Dawes,* 239 F.3d at 492.

**\*8** There is nothing in plaintiff's complaint to support his claim that his appeal from July 24, 2002 was denied in retaliation for his having sent a complaint to defendant Goord beyond: (1) the temporal proximity between his filing of his complaint and the denial of his appeal and (2) his recital of an accusation of retaliation that he leveled against Goord and Selsky in a second letter that he sent to Goord following the denial of his appeal. Plaintiff fails, however, to point to anything said or otherwise communicated to him by Goord or Selsky or by any other prison official or employee that supports his claim that defendants' denial of his appeal was intended to retaliate against him for exercising his First Amendment rights. The Court therefore finds that plaintiff's claim of retaliation is wholly conclusory and therefore that his First Amendment claims (free speech, right to petition) should be dismissed. Further, the Court finds nothing in plaintiff's statement of his first and second claims that would support his allegation that defendants Goord and Selsky violated his equal protection rights, and those claims must likewise be dismissed.

*2. Claims Alleging Deprivation of Religious Freedom (Third and Fourth Claims)*

Plaintiff's third and fourth claims principally allege that prison officials took actions that had the effect of depriving him of his right to freely exercise his religious beliefs.

Plaintiff's third claim alleges that Jewish inmates like himself were subjected at Southport to certain delays and restrictions on their right to be fed food prepared in accordance with the prescribed kosher rules. Specifically, he asserts that only Jewish inmates were forced to wait ten to twenty days after their arrival at Southport before being provided with a kosher diet, disciplined for giving away food they do not eat or want and denied meat alternatives for meat items on the kosher menu. (Compl. p. 8). Curiously, plaintiff's complaint does not identify the officials or employees at Southport who were responsible for such alleged discriminatory treatment of Jewish inmates. Instead, his third claim focuses on the alleged failure of supervisory personnel to take favorable action in response to the grievances and letters plaintiff submitted to them in which he complained about the facility's "discriminatory policies and practices." He alleges that in February, 2004 he filed a grievance complaining about religious discrimination, but that acting Superintendent Chappius and Superintendent McGinnis upheld the denial of the grievance, as did defendant Eagan, the director of the DOCS Inmate Grievance Program, to whom plaintiff subsequently appealed.[FN6]

> FN6. Plaintiff attaches to his complaint copies of the relevant decisions denying his grievances, which the Court has reviewed.

As previously noted in connection with the Court's assessment of plaintiff's disciplinary hearing claims, personal involvement of a defendant in an alleged Constitutional violation is a prerequisite for liability under § 1983. Here, plaintiff does not allege that defendants Goord, Eagan, McGinnis and Chappius were personally involved in the alleged deprivations of plaintiff's free exercise rights. Instead, plaintiff seeks to sue them because of their refusal to reverse the denial of his grievance. As previously noted, the fact that a prison official in the prison "chain of command" affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official. *Page v. Breslin,* 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at \*21-22 (E.D.N.Y.2004); *Foreman v. Goord,* 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at \*21-22 (S.D.N.Y.2004); *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002); *Villante v. N.Y. State Dep't of Corr. Servs.,* 96-CV-1484,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

2001 U.S. Dist. LEXIS 25208, at *17 (N.D.N.Y.2001). This point was well-stated in *Joyner v. Greiner,* in which the Court dismissed a former inmate's Eighth Amendment claim against the Superintendent of the Sing Sing Correctional Facility which was premised upon the Superintendent's denial of a grievance the inmate had filed with respect to the medical treatment he had received:

**\*9** The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance-which is all that is alleged against him-is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant.

195 F.Supp.2d at 506 (internal quotation marks and citation omitted).

This principle applies to superintendents, commissioners, and other prison officials who are in the chain of command with respect to the grievance review process. *See, e.g., Breslin,* 2004 U.S. Dist. LEXIS at *21-22 (dismissing claim against superintendent based upon "mere affirmation of grievance denial"); *Foreman,* 2004 U.S. Dist. LEXIS at *21-22 (dismissing claims against Commissioner and prison superintendent).

Accordingly, the Court determines that plaintiff's claims against defendants Goord, Eagen, McGinnis, and Chappius alleging violations of his freedom of religion, due process and equal protection rights, as set forth in the "third claim" of his complaint, must be dismissed in their entirety for failure to allege the requisite personal involvement by the defendants.

Plaintiff's fourth claim also relates to the alleged deprivation by prison officials of kosher food, but other things are added to a create convoluted assortment of allegations. Specifically, plaintiff asserts that his rights to free speech and to petition were interfered with, and that he was subjected to malicious prosecution and discrimination.

Plaintiff's fourth claim alleges that in retaliation for having provided a statement supporting a fellow Jewish inmate who had been involved in a dispute with defendant

C.O. Clark, Clark advised plaintiff that he was being removed from the kosher meal program. Plaintiff asserts that this retaliatory denial of kosher food, which began on July 29, 2004, continued for about a month thereafter, ending (on September 4, 2004) after plaintiff had filed grievances with respect to the defendants' actions in connection with plaintiff's exclusion from kosher meals, and related retaliatory actions allegedly undertaken by several of the defendants.[FN7] Plaintiff claims that defendant Held initially ordered him removed from the kosher meal program, and that defendant Irizarry subsequently sent plaintiff a letter advising him that he was being removed from the kosher meal "for allegedly violating a facility rule."

FN7. Several of the memoranda and grievance decisions by DOCS officials attached to the complaint indicate that plaintiff had been removed from the "Cold Alternative Meal Program" as a result of "program violations" by the plaintiff (specifically, that plaintiff was giving away or trading his food) and not in retaliation for something plaintiff had done.

Plaintiff then chronicles his attempts to appeal defendant Irizarry's determination, initially to defendant McGinnis. He alleges that McGinnis was advised by the facility Rabbi that Irizarry's actions violated plaintiff's religious dietary laws, and that he should immediately be returned to the kosher meal program, but McGinnis disregarded the Rabbi's advice and upheld Irizarry's determination. Thereafter plaintiff appealed McGinnis's affirmation of Irizarry's decision to defendant Goord. However, following the resumption of plaintiff's kosher meals on September 4, 2004, defendant DOCS deputy Commissioner Nuttal, responding on behalf of Goord, informed plaintiff that the issue was "closed," and that no actions would be taken in response to the issues raised in plaintiff's complaints and appeals. Two additional grievances subsequently filed by plaintiff were, he claims, likewise ignored.

**\*10** The Court finds that plaintiff's allegations are sufficient to allow his fourth claim asserting violations of his free exercise, right to petition, due process, and equal protection rights to proceed against defendants Klatt,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

Clark, Held, Irizarry, McGinnis, and Sheahan.[FN8]

> [FN8.] While the allegations in plaintiff's fourth claim against defendants McGinnis and Sheahan would appear to be essentially based upon their denial of plaintiff's appeal of defendant Irizarry's decision to remove plaintiff from the kosher food program, and might therefore be dismissed for failure to allege those defendant's personal involvement in the violation of plaintiff's constitutional rights (see discussion set forth in the Court's dismissal of plaintiff's third claim *supra* ), the Court finds that plaintiff's allegation that the facility Rabbi spoke to defendant McGinnis, but McGinnis disregarded his advice sufficiently alleges personal involvement against defendant McGinnis (and by extension, defendant Sheahan, who plaintiff alleges acted in concert with McGinnis) to allow plaintiff's fourth claim against McGinnis and Sheahan to go forward.

The Court further finds, however, that plaintiff's fourth claim must be dismissed with respect to defendants Goord, Nuttal, Cieslak and Eagan. Plaintiff's allegations against these defendants with respect to his fourth claim are based upon the fact that they refused to reverse the denial of several grievances filed by plaintiff with respect to his claims of religious discrimination and denial of due process. As explained by the Court in addressing plaintiff's third claim, *supra,* the mere fact that a prison official in the prison "chain of command" has occasion to pass upon a prisoner's grievance is not sufficient to establish personal involvement in an alleged denial of a plaintiff's constitutional rights. *See, e.g., Joyner v. Greiner,* 195 F.Supp. at 506. Similarly, the fact that plaintiff also sent letters to defendant Goord "pleading for him to take corrective actions," but that Commissioner Goord and Deputy Commissioner Nuttall took no corrective action in response to his missives is not sufficient to hold Goord or Nuttal liable under § 1983. *See Sealey,* 116 F.3d at 51.

Plaintiff also asserts in his fourth claim that he was the victim of malicious prosecution and failure to protect, but the complaint does not allege the predicate facts necessary to support these allegations, and they are accordingly dismissed against all defendants.

*3. Claim of Denial of Access to Court and Right to Petition (Fifth Claim)*

Plaintiff's fifth claim asserts that his rights to petition for redress of grievances and for access to the Courts were interfered with when defendants Ames and Litwilder, in February/March 2004, confiscated all of his writing paper and carbon paper, denied him law library materials, would not allow him to use a stapler, and refused to allow him to have his briefs and affidavits in a state court case to be bound in accordance with the rules of the New York State Supreme Court, Second Judicial Department, causing his papers to be rejected. Plaintiff filed grievances with respect to these alleged interferences with his rights, but his grievances were denied or ignored by defendants Bartlett, Hale, and Cieslak, as were his ensuing appeals to defendants McGinnis, Chapius and Eagan.

Plaintiff's allegations that the denial of his access to materials necessary to prepare or perfect his grievances and lawsuits materially prejudiced his ability to pursue such grievances and legal actions are sufficient to state a claim that his right of access to the courts was unconstitutionally hindered. *Ramsey v. Coughlin,* No. 94-CV-9S( F), 1 F.Supp.2d 198, 204-205 (W.D.N.Y.1998) (Magistrate's Report and Recommendation). Plaintiff's fifth claim will therefore be allowed to proceed against defendants Ames and Litwilder.

**\*11** However, plaintiff's fifth claim must be dismissed with respect to defendants Bartlett, Hale, Cieslak, McGinnis, Chapius and Eagan. With respect to these defendants, plaintiff's allegations fail to allege the requisite personal involvement. As previously noted, the fact that defendants failed to respond to plaintiff's letters or, as links in the prison system "chain of command," affirmed the denial or dismissal of plaintiff's grievances, is not sufficient to establish their liability under Section 1983. *See, e.g., Page v. Breslin,* 2004 U.S. Dist. LEXIS at \*21-22; *Foreman v. Goord,* 2004 U.S. Dist. LEXIS, at 19-22; *Joyner v. Greiner,* 195 F.Supp.2d at 15.

*CONCLUSION*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)

(Cite as: 2005 WL 2000144 (W.D.N.Y.))

In accordance with the foregoing, the Court determines that:

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted.

All claims against defendants Goord, Selsky, Eagan, Chappius, Nuttal, Cieslak, Bartlett, and Hale are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Plaintiff's malicious prosecution claim as set forth in the "first claim" of his complaint is dismissed as to all defendants enumerated therein.

Plaintiff's free exercise of religion, due process, equal protection/discrimination claims set forth in the "third claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's malicious prosecution and failure to protect claims set forth in the "fourth claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's due process claim set forth in the "first claim" of his complaint survives as to defendant Ryerson.

Plaintiff's free exercise of religion, right to petition, due process, and equal protection claims set forth in the "fourth claim" of his complaint survive as to defendants Klatt, Clark, Held, Irizarry, McGinnis and Sheahan.

Plaintiff's access to court, right to petition, and due process claims set forth in the "fifth claim" of his complaint survive as to defendants Ames and Litwilder.

The U.S. Marshal is directed to serve the summons, complaint and this Order on defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder regarding the claims against those defendants which survive, as enumerated above.

### ORDER

IT HEREBY IS ORDERED that plaintiff's claims against defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate as parties to this action defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the summons, complaint and this Order upon defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*12** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

W.D.N.Y.,2005.

Ramsey v. Goord
Not Reported in F.Supp.2d, 2005 WL 2000144 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
George M. CHAVIS, Plaintiff,
v.
K. CURLEE, Prison Counselor, Great Meadow C.F.,
e.g., Defendants.

No. 9:06-CV-0049 (LEK/GHL).
Feb. 21, 2008.

George M. Chavis, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Adele M. Taylor-Scott, Esq., Assistant Attorney General, of Counsel, Albany, NY.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on January 28, 2008 by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 36). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff George M. Chavis, which were filed on February 13, 2008. Objections (Dkt. No. 37).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 36) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Plaintiff's *in forma pauperis* status is **revoked as having been improvidently granted** and that Plaintiff is given **TEN (10) DAYS** from the date of this Order to pay the Court's filing fee of $250. Should Plaintiff fail to make that payment, his Complaint will be dismissed without further order of this Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Plaintiff's Amended Complaint alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., fourteen employees of the New York State Department of Correctional Services ("Defendants") violated his constitutional rights by retaliating against him or subjecting him to cruel and unusual prison conditions. (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].) Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint on the ground that the action is barred by the "three strikes" rule established by 28 U.S.C. § 1915(g). (Dkt. No. 31.) For the reasons that follow, I recommend that Defendants' motion be granted or, in the alternative, that Plaintiff's Amended Complaint be *sua sponte* dismissed as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# I. ANALYSIS OF DEFENDANTS' MOTION

## A. Acquisition of "Three Strikes" Warranting Dismissal

**\*2** Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted,* unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) [emphasis added]. Defendants are correct when they argue that the power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding. (Dkt. No. 31, Part 13, at 2-3.) In other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.[FN1]

> FN1. *See, e.g., Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at \*1 & n. 1 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.); *Gill v. Pidlypchak,* 02-CV-1460, 2006 WL 3751340, at \*5 (N.D.N.Y. Dec.19, 2006) (Scullin, J.); *Polanco v. Burge,* 05-CV-0651, 2006 WL 2806574, at \*2 (N.D.N.Y. Sept.28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe,* 118 F.Supp.2d 172, 174 (D.Conn.2000); *McFadden v. Parpan,* 16 F. Supp.2d 246, 247 (E.D.N.Y.1998); *see also Rolle v. Garcia,* 04-CV-0312, Report-Recommendation (N.D.N.Y. Jan. 29, 2007) (Lowe, M.J., *adopted on other grounds,* 04-CV-0312, 2007 WL 672679 (N.D.N.Y. Feb.28, 2007) (Kahn, J.).

The first thing we must do is determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). The Complaint in this action was signed by Plaintiff on September 12, 2005, postmarked on January 12, 2006, and received (and docketed) by the Clerk's Office on January 13, 2006. (Dkt. No. 1.) Ordinarily, under the "prison mailbox rule," the date of *filing* is deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing,* which is the date that the complaint was *signed.*[FN2] The problem here is that there appears to have been a four-month delay between the date of signing of the Complaint and the date of mailing (or post-marking) of the Complaint. As a result, the question arises: was Plaintiffs Complaint "filed" on the date of signing (i.e., September 12, 2005) or on the date of mailing (i.e., January 12, 2006)? Fortunately, the Court need not decide whether Plaintiff's action was "brought," for purposes of 28 U.S.C. § 1915(g)-on September 12, 2005, or on January 12, 2006-because an analysis under either finding would yield the same conclusion.

> FN2. *See Shaw v. Superint., Attica Corr. Facility,* 03-CV-0610, 2007 WL 951459, at \*3 n. 3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.,* 03-CV-0681, 2006 WL 931729, at \*3-4 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

After carefully reviewing Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, I have determined that, as of September 12, 2005 (the earlier of the two aforementioned dates), he had acquired at least three "strikes" for purposes of 28 U.S.C. § 1915(g) .

Plaintiffs "first strike" came in the case of *Chavis v. Charnes,* 99-CV-5072 (S.D.N.Y.). In *Charnes,* Plaintiff's *pro se* prisoner rights complaint was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

dismissed by the Southern District of New York *sua sponte,* on July 14, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The Docket Sheet does not expressly state whether the dismissal was for frivolousness, maliciousness or merely failure to state a claim. *Id.* However, clearly the dismissal was for one of those three reasons since the Order of Dismissal expressly cited 28 U.S.C. § 1915 and was issued *sua sponte* immediately after filing. *Id.* The only authority under 28 U.S.C. § 1915 to issue such an order *sua sponte* immediately after filing is if the dismissal is frivolousness, maliciousness or failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b). Furthermore, the Chief District Judge issuing the Order (Thomas P. Griesa) certified that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3). *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). Such a certification, which occurs when a district judge finds the lack of an arguable basis in law or fact in the losing party's claims or arguments, indicates a finding of frivolousness with regard to Plaintiff's claims.[FN3] Thus, there was clearly at least one "strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN3. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) ("We consider a [losing party's] good faith ... demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if in forma pauperis litigation is attempted for reasons that may genuinely be characterized as the litigant's 'bad faith,' express authority exists in 28 U.S.C.1915(d) for dismissal of the cause as frivolous."); *accord, Pytel v. U.S.,* 378 F.Supp. 294, 296-97 (N.D.N.Y.1974) (MacMahon, J.) ("This Court will not authorize an appeal *in forma pauperis* under 28 U.S.C. § 1915(a) and hereby certifies that any appeal is not taken in good faith. In this context, good faith is judged by an objective standard, and where, as here, an appeal would be frivolous, it

is not taken in good faith.") [citations omitted]; *S.E.C v. Broadwell Securities, Inc.,* 64-CV-3995, 1981 WL 1655, at *1 (S.D.N.Y. July 8, 1981)* ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous.") [internal quotation marks and citations omitted].

**\*3** Plaintiff's "second strike" came during his appeal from the aforementioned order of dismissal. Despite Chief Judge Griesa's certification that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3), Plaintiff took an appeal anyway, on August 12, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The appeal, which was to the Second Circuit, was assigned docket number 99-265. *Id; see also Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). On February 25, 2000, the Second Circuit issued an Order denying Plaintiff's request to proceed *in forma pauperis* during the appeal, and dismissed Plaintiff's appeal. (*Id.*) Although the copy of the Order of Dismissal is not available on-line, the Second Circuit Docket Sheet expressly quotes the Order. *See Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). According to the Docket Sheet, the Order stated:

> Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.1915(e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

(*Id.*) [FN4] I can find no record of any appeal pending (or having been actually filed) with the Supreme Court. Thus, there was clearly a "second strike" for purposes of 28 U.S.C. § 1915(g) before

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff "brought" this action on September 12, 2005. I note that a second strike may result from the dismissal of a federal appeal, even though the appellant had already incurred a strike during the dismissal of the federal district court action underlying the appeal.[FN5]

> FN4. I note that this express finding of "frivolousness" is also reflected in the district court docket sheet's identification of the Second Circuit's Order of Dismissal. *See Chavis v. Chames,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation).

> FN5. *See Cait v. Beto I Unit,* 04-CV-40848, 126 Fed. App'x 645, 646 (5th Cir. Feb.23, 2005) ("The magistrate judge's dismissal of Cain's complaint as frivolous and for failure to state a claim and our dismissal of Cain's appeal both count as strikes for purposes of 28 U.S.C. § 1915(g)."); *Smith v. Bruce,* No. 04-3043, 103 Fed. App'x 324, 344 (10th Cir. June 29, 2004) ("Dismissal of Smith's appeal as frivolous counts as a strike against him, as does the district court's dismissal of his complaint.") [citations omitted]; *Mains v. Washington,* 131 F.3d 1248, 1250 (7th Cir.1997) ("A frivolous complaint (or as in this case a complaint that is dismissed under § 1915 A for failure to state a claim) followed by a frivolous appeal leads to two 'strikes' under 28 U.S.C. § 1915(g)."); *cf. Bea v. Doe,* 401 F.Supp.2d 538, 540 & n. 5 (E.D.Va.2005) (because district court proceeding and appellate proceeding arising out of district court proceedings were "distinct" for purposes of PLRA's "three strikes" rule, the plaintiffs voluntary withdrawal of his appeal did not effect the fact that the dismissal of the district court action constituted a "strike").

Plaintiffs "third strike" came in the case of *Chavis v. Streubel,* No. 04-2814 (2d Cir.). In *Streubel,* Plaintiff's *pro se* prisoner rights complaint was dismissed by the Western District of New York on March 29, 2004, for failure to state claim *and* failure to adduce evidence pursuant to Fed.R.Civ.P. 56. *Chavis v.*

*Struebel,* 317 F.Supp.2d 232, 236-39 (W.D.N.Y. March 29, 2004). As a result, no strike resulted from that dismissal. However, during the dismissal, the United States Magistrate Judge (assignment to whom the parties had consented) certified that any appeal from his order of dismissal would not be taken in good faith, for purposes of 28 U.S.C. § 1915(a)(3). *Struebel,* 317 F.Supp.2d at 239. Plaintiff took an appeal anyway. On June 2, 2005, the Second Circuit dismissed the appeal because it "lack[ed] an arguable basis in law or fact" pursuant to 28 U.S.C. § 1915(e)(2) (B)(l), expressly citing that statute and *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *Chavis v. Struebel,* No. 04-2814, Mandate (2d Cir. filed March 11, 2005) (attached as Exhibit 3 to this Report-Recommendation). *Neitzke v. Williams,* and its progeny, explain that use of such language is an unequivocal finding of frivolousness for purposes of 28 U.S.C. § 1915.[FN6] I can find no record of any appeal pending (or having been filed) with the Supreme Court. Thus, there was clearly a "third strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN6. *See Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[A]n appeal on a matter of law is frivolous where none of the legal points are arguable on their merits.... By logical extension, a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact.") [internal quotation marks and citation omitted]; *Tavarez v. Reno,* 54 F.3d 109, 109 (2d Cir.1995) ("An appeal is frivolous where it lacks an arguable basis in law or fact.") (citing *Neitzke v. Williams,* 490 U.S. 319, 325 [1989] ).

**\*4** Even if one of the above dismissals did not constitute a "strike" for some reason, Plaintiff incurred yet another strike before he filed the current action. Plaintiff's "fourth strike" came in the case of *Chavis v. New York,* UID 2001-013-019 (N.Y.Ct.CI.). In *Chavis v. New York,* Plaintiff, as a prisoner proceeding *pro se,*

filed a claim against New York State for the "loss of travel expenses [incurred] by [his] family members" as a result of "false information given them over the phone by [his] vindictive SHU-Counselor" regarding the authorized time during which they could visit Plaintiff at Lakeview Prison. *Chavis v. New York,* UID 2001-013-019, Decision (N.Y. Ct. CI. filed Sept. 19, 2001) (Patti, J.) (attached as Exhibit 4 to this Report-Recommendation). The defendant moved to dismiss on the ground that the claim was inappropriately brought in that (1) Plaintiff was not the one who incurred the property loss and (2) he was not authorized to represent them in court (as a practicing attorney). *Id.* The Court of Claims judge assigned to the case, Judge Philip J. Patti, agreed with defendant and dismissed Plaintiffs claim on September 19, 2001. *Id.* Notably missing from the decision is any mention of evidence. This is because the decision was based solely on the allegations of Plaintiff's complaint. As a result, the dismissal was much like one for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).[FN7] I can find no record of any appeal from this decision anywhere pending (or having been filed). Thus, there appears to have been a "fourth strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN7. I note that, even if the dismissal of Plaintiff's claim in *Chavis v. New York* was not simply caused by a failure to state a claim but was also caused partially by a lack of standing, case law exist holding that such a dismissal would still constitute a "strike" for purposes of 28 U.S.C. § 1915(g). *See Jones v. Edgar,* 3 F.Supp.2d 979, 981-82 (C.D.Ill.1998) (dismissal of prisoner's claim relating to alleged Fifteenth Amendment violation for failure to state claim, coupled with dismissal of prisoner's judicial-voting-districts claim for lack of standing, counted as a "strike" for purposes of PLRA, cited with approval in *Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at *2, n. 4 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.) [collecting

cases]; *cf. Comeaux v. Cockrell,* 72 F. App'x 54, 55 (5th Cir.2003) ("The district court could dismiss part of [the plaintiff's] complaint as malicious, which counted as a strike under 28 U.S.C. § 1915(g), even though the case was ultimately dismissed for failure to comply with court orders."); *Cross v. Harris,* 06-CV-0236, 2006 WL 3834270, at *3 & n. 1 (E.D.Ark. Dec.29, 2006) (counting as a strike a prior partial dismissal on ground of frivolousness, even though rest of action was dismissed for failure to exhaust administrative remedies); *President v. Duplichan,* 05-CV-1178,2006 WL 2540362, at *5 (W.D.La. June 14, 2006) (considering fact that "Plaintiff has had at least three previous civil actions filed in this Court dismissed in whole *or in part* as frivolous, malicious, or for failing to state a claim" in determining whether he had acquired "three strikes" pursuant to Section 1915[g] ) [emphasis added]; *Townsend v. Walker,* 06-CV-0361, 2006 U.S. Dist. LEXIS 37723, at *3-4, 2006 WL 1663713 (S.D. Ill. June 8, 2006) (rejecting plaintiff's argument that "[b]ecause [his] entire case was not dismissed for failure to state a claim, ... the ... [partial dismissal] should not count as a strike."); *Shaw v. Weaks,* 06-CV-2024, 2006 WL 1049307, at *6 n. 13 (W.D.Tenn. Apr.20, 2006) (counting as a strike a prior partial dismissal on ground of firivolousness or failure to state claim, even though rest of action was dismissed for failure to exhaust administrative remedies); *demons v. Young,* 240 F.Supp.2d 639, 640-641 (E.D.Mich.2003) (ruling that "a complaint dismissed in part as frivolous and in part without prejudice because of the failure to exhaust administrative remedies is ... a 'strike' for purposes of 28 U.S.C. § 1915(g)").

Having said all of this, I note that, for the most part, I am not persuaded by Defendants' argument that various of Plaintiffs actions or appeals resulted in "strikes" for purposes of 28 U.S.C. § 1915(g). (Dkt. No. 31, Part 13, at 4-5.) Generally, either the particular

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

dismissals cited by Defendants occurred after the "bringing" of Plaintiff's action (on September 12, 2005, or perhaps January 12, 2006), or those dismissals simply did not occur on the ground that the action was "frivolous, malicious, or fails to state a claim" under 28 U.S.C. § 1915(g). I note that I do not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely because of discovery abuses pursuant to Fed.R.Civ.P. 37, or a failure to serve pursuant to Fed.R.Civ.P. 41, constitutes a dismissal for frivolousness, maliciousness or failure to state a claim. FN8 Failures during discovery and failures to serve are failures based on something other than the four corners of a plaintiff's complaint-which is essentially the only thing looked at when determining frivolousness, maliciousness and failure to state a claim. Finally, I read 42 U.S.C. § 1915(g) as not encompassing a dismissal that is based partially upon the absence of genuine issues of material fact determined after a review of record evidence pursuant to Fed.R.Civ.P. 56. Apart from the fact that 28 U.S.C. § 1915(g), which is very specific, does not speak of such dismissals, such a review of record evidence generally only occurs when a litigant has survived any argument that his claim is frivolous, malicious or fails to state a claim.

> FN8. *See, e.g.,* Marjorie A. Shields, "Validity and Construction of 'Three Strikes' Rule Under 28 U.S.C.A. § 1915(g) Barring Prisoners from In Pauperis Filing of Civil Suit After Three Dismissals for Frivolity," 168 A.L.R. Fed. 433, §§ III.5. III.6 (2001 & Cumulative Supplement) (discussing cases addressing what constitutes a "frivolous" or "malicious" action for purposes of 28 U.S.C.A. § 1915[g] ).

**\*5** For all of these reasons, I find that Plaintiff had earned at least three "strikes" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005. However, that does not end our inquiry, because the "Three Strikes Rule" contains an exception for prisoners who are "in imminent danger of serious physical injury" when they bring their action. 28 U.S.C. § 1915(g).

**B. Non-Applicability of Imminent Danger Exception**

As stated earlier, the "Three Strikes Rule," set forth in the federal statute governing *in forma pauperis* proceedings, reads,

> *In no event shall a prisoner bring a civil action* or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

28 U.S.C. § 1915(g) [emphasis added].

Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought. See Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). As the Second Circuit explained in *Malik,*

> We agree with our sister circuits that § 1915(g) allows prisoners to escape the three strikes rule only if "the prisoner *is* under imminent danger of serious physical injury." (emphasis added). Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed. Further, "[b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar [v. McKelvie],* 239 F.3d [307] at 315 [3d Cir.2001]. Accordingly, the language of § 1915(g) makes clear that the "imminent danger" exception only applies to danger existing at the time the complaint is filed.

> *Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002), *accord, Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec.6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik* ).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

As a result, as in the Court's analysis of the assessment-of-strikes issue, the first thing the Court must do when analyzing the imminent-danger issue is to determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). As explained above in Part I.A. of this Report-Recommendation, because of the "prison mailbox rule," an issue exists regarding precisely when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). He signed his original Complaint on September 12, 2005. However, he apparently did not mail that Complaint until on January 12, 2006. What further complicates matters is the fact that Plaintiff signed what he characterized as an "Amended" Complaint in this action on July 24, 2006. (Dkt. No. 6.) Ordinarily, this fact would not present a real problem, since an amended complaint contains allegations arising out of the same events as the events giving rise to the allegations contained in the original complaint. However, here, the "Amended" Complaint was, in actuality, an Amended and *Supplemental* Complaint, asserting, for the first time, allegations arising out of events occurring *after* the date he originally "brought" the action, specifically events occurring between May and July of 2006, at Auburn C.F. (*Compare* Dkt. No. 1 *with* Dkt. No. 6.) As a result, a sort of paradox arises: If a court considers the new allegations presented in a plaintiff's supplemental complaint when resolving the imminent-danger issue (presented by 28 U.S.C. § 1915 [g] ), the court will be determining whether the plaintiff was in imminent danger *after,* not before, he brought the action-unless the court re-characterizes the date on which the action was "brought" to coincide with the filing of the supplemental complaint.

**\*6** Fortunately, again, the Court need not resolve this issue because the Court would reach the same conclusion about the applicability of the imminent-danger exception regardless of whether the Court assumed Plaintiff "brought" this action on July 24, 2006, on January 12, 2006, or on September 12, 2005. This is because Plaintiff has not, in either his original Complaint or his Amended Complaint, alleged facts plausibly suggesting that he was under imminent danger of serious physical injury on any of the referenced dates.[FN9]

> **FN9.** I note that, when determining whether a prisoner has qualified for the "imminent danger" exception, courts look at the non-conclusory allegations in the prisoner's complaint. *Welch v. Fisher,* 07-CV-0929, 2007 WL 3231992, at \*1-2 (N.D.N.Y. Oct.30, 2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious physical injury) [citations omitted]; *see also Abdrews v. Cervantes,* 493 F.3d 1047, 1053 (9th Cir.2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist., of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint"); *Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir.2004) ("[T]he issue [under § 1915(g) ] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin,* 144 F.3d 719, 726 (11th Cir.1998) ("Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on other grounds, Jones v. Block,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

For example, liberally construed, Plaintiff's Amended Complaint (signed on July 24, 2006) alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., the fourteen Defendants in this action violated his constitutional rights in the following ways:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) **Defendant Curlee** (a) filed false disciplinary charges against Plaintiff on July 7, 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Auburn C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request on or about July 11, 2005, at Auburn C.F.;

(2) **Defendant Young** denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F.;

(3) **Defendant Jackowski** (a) also denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F., (b) wrongfully convicted Plaintiff of the referenced charges, and excessively sentenced him to nine months' confinement in the Great Meadow C.F. SHU, and (c) Defendant Jackowski also excessively punished Plaintiff to six months' confinement in the Great Meadow C.F. SHU following another wrongful conviction of false and retaliatory charges filed by Defendant Curlee in July of 2005;

(4) **Defendant Selsky** failed to completely reverse these disciplinary convictions, in September or October of 2005;

(5) **Defendant Green** intentionally ordered wrongful disciplinary hearings against Plaintiff on false disciplinary charges in July and August of 2005, at Great Meadow C.F.;

(6) **Defendant Campbell** (a) filed false disciplinary charges against Plaintiff in July of 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Great Meadow C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request five or six months before his Parole Board interview in 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(7) **Defendant Atkinson** wrongfully and intentionally denied Plaintiff's "mandatory program" requests between February and August of 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(8) **Defendant Beebe,** in retaliation against Plaintiff for having provided Defendant Curlee with written notice that he intended to take legal action against her, at Auburn C.F., (a) wrongfully and intentionally inhibited Plaintiff's practice of the Islamic religion by denying him "all religious materials including [his] study lessons" between July and August of 2005, at Great Meadow C.F., (b) wrongfully and intentionally denied Plaintiff his legal work, which was inside his "property bags," at Great Meadow C.F., and (c) wrongfully and intentionally placed him in a Great Meadow C.F. SHU cell that was "dirty, grimy and unsanitized" for a month prior to his transfer to another prison;

**\*7** (9) **Defendant McGuire** either committed the same violations as did Defendant Beebe during the same time period at Great Meadow C.F., or he helped Defendant Beebe commit those violations;

(10) **Defendant Nesmith** callously (a) denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" between June of 2005 and August 8, 2005, even though Plaintiff had had an outbreak of hives during that time period, at Great Meadow C.F., which had caused "eye and facial swelling," and (b) visited Plaintiff's cell without actually performing a sick call on several dates during the referenced time period;

(11) **Defendant Laux** denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" on May 23, 2006, without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.;

(12) **Defendant Hai** filed false disciplinary charges against Plaintiff on June 13, 2006, and June 14, 2006, in retaliation for the grievances that he had filed against Defendant Hai on June 2, 2006, and June 13, 2006, at Auburn C.F.;

(13) **Defendant Wolgzyk** (a) intentionally denied Plaintiff a legal assistant prior to his disciplinary

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

hearings on June 19, 2006, and June 20, 2006, at Auburn C.F., (b) wrongfully convicted him of the charges against him at those hearings, at Auburn C.F., and (c) callously sentenced him to incarceration in the Auburn C.F. SHU; and

(14) **Defendant Graham** caused Plaintiff to be incarcerated in an Auburn C.F. SHU cell that was dirty and flooded, and where he was deprived of running water, cleaning supplies, personal hygiene items, and his legal papers, in June and July of 2006. (*See generally* Dkt. No. 6.)

I find that these alleged facts do not plausibly suggest that Plaintiff was under an *imminent danger of serious physical injury* when he brought this action. (Indeed, I would have difficulty finding that these allegations plausibly suggest any *deliberate indifference to a serious medical need.*) The closest Plaintiff comes to asserting such factual allegations is when he alleges that (1) Defendant Nesmith denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" *between June of 2005 and August 8, 2005,* even though Plaintiff had had an outbreak of hives during that time period at Great Meadow C.F., which had caused "eye and facial swelling," and (2) Defendant Laux denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" *on May 23, 2006,* without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.

The first problem with these allegations is they do not plausibly suggest that the injuries Defendants Nesmith and Laux caused Plaintiff *between June of 2005 and August 8, 2005,* and *on May 23, 2006,* somehow continued to cause Plaintiff adverse health consequences *at the time this action was "brought"* - whether that date was when Plaintiff dated his original Complaint, on *September 12, 2005,* or when that original Complaint was postmarked, on *January 12, 2006,* or when Plaintiff signed his "Amended" Complaint in this action, *on July 24, 2006,*

**\*8** The Second Circuit recently affirmed a district court's finding of no-imminent-danger under circumstances involving an analogous temporal

disconnect. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724 (2d Cir. Dec.6, 2007). In *Polanco v. Hopkins,* the plaintiff alleged that (1) defendants were effectively forcing him to breathe "black mold" in a prison shower, exacerbating both his AIDS condition and his Hepatitis-B condition, and (2) defendants had deprived him of hygienic items and a proper diet while in the prison SHU, causing him to lose weight. *Polanco v. Hopkins,* 03-CV-6661, 2007 WL 914023, at \*3-5 (W.D.N.Y. March 23, 2007). With respect to the first claim (regarding the moldy shower), the Western District of New York ruled that the plaintiff had not alleged facts plausibly suggesting that he was in imminent danger of serious physical injury *at the time be "brought" the action,* because he filed the action on December 29, 2003 (while he was incarcerated at Auburn C.F.) long after he had been subjected to the moldy shower on October 10, 2002 (while he was incarcerated at Elmira C.F.). *Polanco,* 2007 WL 914023, at \*3-4. With respect to the second claim (regarding his proper hygiene and diet while in SHU), the Western District ruled there was no "imminent danger" alleged due to a similar temporal disconnect between the date of the injury (on March 25-27, 2003) and the date of the filing (on December 29, 2003). *Id.* at \*5 & n. 1. On appeal, the Second Circuit agreed, affirming the Western District's ruling. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at \*2 (2d Cir. Dec.6, 2007) ("Nor did the District Court err in determining that Polanco's 'allegations cannot support a determination that he was in imminent danger' of serious physical injury with respect to his claims relating to the health risks associated with his exposure to mold or to his claim of unjust discipline.' ").

In any event, even if this temporal disconnect did not plague Plaintiff's allegations, his allegations would still not plausibly suggest "imminent danger" because they lack several critical details. For example, with respect to his Benadryl claim, Plaintiff alleges no physical injury greater than "eye and facial swelling." Nor does Plaintiff allege how many times Defendant Nesmith deprived him of the Benadryl-a number closer to four or forty? With respect to his vitamin claim, Plaintiff alleges no specific physical injury *at all.* How

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

did Defendant Laux's alleged vitamin deprivation on one day exacerbate Plaintiff's pre-existing Hepatitis-B condition? And how did any such exacerbated condition rise to the level of an *imminent danger of serious physical injury?*

Analogous circuit court decisions exist finding that a prisoner had not alleged such an imminent danger due to his failure to provide such critical details. *See, e.g., Skillern v. Paul,* 06-CV-11440, 202 Fed. App'x 343, 344 (11th Cir. Oct.4, 2006) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged merely that the deprivation of his heart medication "may result" in his suffering serious physical injury, without "present[ing] any description of the condition giving rise to the prescription for heart disease medication," and without "alleg[ing] that he suffered any physical injury as a result of not receiving the medication"); *White v. Colorado,* 157 F.3d 1226, 1231-32 (10th Cir.1998) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915 [g], where he merely alleged "vague and utterly conclusory assertions" of withheld medical treatment, specifically, that he "ha [s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life threatening degree"). FN10

> FN10. *See also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he merely asserted conclusory allegations that prison officials were trying to kill him by forcing him to work in extreme weather conditions despite "his blood pressure condition").

**\*9** Finally, I note that Plaintiff, in an obvious attempt to respond to Defendants' imminent-danger argument, has asserted some allegations of physical injury in his Opposition Memorandum of Law (described below). As an initial matter, I find that only

the allegations of a prisoner's *pleading* (not a memorandum of law) should be considered in deciding whether such imminent danger existed at the time an action was brought, for the reasons discussed above. FN11 In any event, these allegations asserted in Plaintiff's Opposition Memorandum of Law are, like the allegations asserted in his pleadings, wholly conclusory. (*See* Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 4, 26 [alleging that an excessive use of force, by unidentified Defendants on unidentified dates, caused Plaintiff to experience "internal organ trauma with bleeding-swelling to head and body with lacerations"]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 20 [alleging that Defendant Laux caused "a deterioration of Plaintiff's physical condition"]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 21-22 [alleging that, on July 17, 2006, unidentified correctional officers, physically assaulted Plaintiff]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 25 [alleging that, during an unspecified time, unspecified Defendants denied Plaintiff "emergency medical treatment for 2 1/2 weeks"].)

> FN11. *See, supra,* note 9 of this Report-Recommendation.

For these reasons, I find that Plaintiff has not alleged facts plausibly suggesting that he was under imminent danger of serious physical injury when he brought this action. As a result, I recommend that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ten (10) days from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of dismissal.

Finally, I note that I specifically reject Plaintiff's argument that the Court is somehow estopped from revoking or rescinding his *in forma pauperis* status because it granted that status on July 5, 2006. (Dkt. No. 33, at 24-25 [Plf.'s Opp. Mem. of Law].) It is true that, in my Report-Recommendation of July 5, 2006, I noted, in a footnote, that Plaintiff had filed five other actions in the Northern District. (Dkt. No. 5, at 2.) However, before so noting, I had no occasion to look outside of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Northern District of New York for other cases filed by, or "strikes" earned by, Plaintiff. Simply stated, I was relying on Plaintiff's misrepresentation, in his sworn Complaint, about his litigation history. (*See, infra,* Part II of this Report-Recommendation [describing Plaintiff's misrepresentation].) Having misled the Court about his previous litigation history, Plaintiff cannot be heard to complain about the Court's reconsideration of his entitlement to proceed *in forma pauperis.*

## II. ALTERNATIVE GROUND FOR DISMISSAL

In the alternative, I find that Plaintiff should be sanctioned for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

**\*10** Specifically, in Paragraph 5 of Plaintiff's sworn Complaint, he answered "Yes" to the question, "Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?" (Dkt. No. 1, ¶ 5[a] [Plf.'s Compl.].) He then listed only *one* case when identifying those cases, even though he was specifically instructed, "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5[b] [Plf.'s Compl.].) Paragraph 5 of Plaintiff's sworn Amended Complaint contains the exact same question and answer. (*See* Dkt. No. 6, ¶ 5 [Plf.'s Am. Compl.].)

The problem is that, in answering this question, Plaintiff failed to disclose to the Court *any* of the *fourteen* state and federal court actions relating to his imprisonment that he had filed before the date on which he signed his original Complaint, on September 12, 2005, and/or before the date on which he signed his Amended Complaint, on July 24, 2006. *See Chavis v. Charnes,* 99-CV-5070 (S.D.N.Y.) (filed 7/14/99); *Chavis v. Cunningham,* 00-CV-0097 (W.D.N.Y.) (filed 1/28/00); *Chavis v. Flagler,* 01-CV-0510 (W.D.N.Y.) (filed 7/19/01); *Chavis v. VonHagan,* 02-CV-0119 (W.D.N.Y.) (filed 2/11/02); *Chavis v. Zodlow,* 02-CV-0637 (N.D.N.Y.) (filed 5/9/02); *Chavis v. Kienert,* 03-CV-0039 (N.D.N.Y) (filed 1/9/03); *Chavis v. Ferris,* 03-CV-0743 (W.D.N.Y.) (filed 10/2/03); *Chavis v. Bennett,* 03-CV-0755 (N.D.N.Y.) (filed 6/18/03); *Chavis v. D.N.,* 04-CV-0158 (N.D.N.Y.) (filed 2/12/04); *Chavis v. Woods,* 05-CV-0429 (S.D.N.Y.) (filed 1/14/05); *Chavis v. Woods,* 05-CV-0768 (E.D.N.Y.) (filed 2/9/05); *Chavis v. Goord,* 8 A.D.3d 786, 777 N.Y.S.2d 918 (N.Y.App.Div., 3d Dept.) (appeal dismissed on 6/10/04); *Chavis v. New York,* UID 2001-013-019, Claim No. 100419 (N.Y. Ct CI.) (dismissed on 9/19/01).

Generally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

Here, the information omitted by Plaintiff was certainly material since the action proceeded for well over a year on the assumption that Plaintiff was telling the truth when he swore that, as of the dates on which he filed his Complaint and Amended Complaint, he had filed only one other lawsuit in state or federal court otherwise relating to his imprisonment. Had Plaintiff answered truthfully, it is highly likely that either the Court, or defense counsel, would have more promptly explored Plaintiff's prior litigation history and discovered the above-described "strikes." I note that, while a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

form complaint calling for such information, and *swore* to the truthfulness of his answer. No amount of special solicitude can excuse such a material misrepresentation to the Court.[FN12]

> FN12. I note that I am doubtful that Plaintiff is even entitled to such special solicitude, since the rationale for extending such solicitude is a *pro se* litigant's inexperience, and, here, Plaintiff is no stranger to the court system. *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to extend special solicitude to experienced *pro se* civil rights litigant); *see also Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n.l (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, at *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.). Specifically, from my review of various on-line databases, including the Federal Judiciary's PACER Service, it appears that Plaintiff has filed at least 15 other federal court actions, most of which were followed by an appeal, and at least six state court actions or appeals. *See, supra,* Part II of this Report-Recommendation (listing cases); *see also Chavis v. Ryan,* 05-CV-0100 (N.D.N.Y.); *Chavis v. Goord,* No. 500537, 2007 WL 4335538 (N.Y.App.Div., 3d Dept); *Chavis v. Goord,* 45 A.D.3d 1063, 845 N.Y.S.2d 866 (N.Y.App.Div., 3d Dept.); *Chavis v. Goord,* 43 A.D.3d 1235, 841 N.Y.S.2d 720 (N.Y.App.Div., 3d Dept.).

**\*11** District judges from this Court have recently indicated a willingness to sanction *pro se* litigants for making such material misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033,2007 WL 2406909, at *13-14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J.,

adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAcoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases].

Certainly, numerous other federal courts have so sanctioned *pro se* litigants. *See, e.g., Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith,* No. 05-13124, 181 Fed. App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,,* 99 F.3d 1145, 1145 (9th Cir.1996) (affirming district court dismissal that was based on this ground).[FN13]

> FN13. *See also Hood v. Tompkins,* No. 05-16358, 197 Fed. App'x 818, 819 (11* Cir. Aug.7, 2006) (affirming district court dismissal on this ground), *accord, Dinkins v. Smalley,* 07-CV-0043, 2008 WL 160699, at *3 & n. 3 (S.D.Ga. Jan.14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground) [citing cases]. I note that the dismissals in *Hood v. Tompkins* and *Dinkins v. Smalley* were without prejudice since the plaintiffs in those cases had not yet had an opportunity to file an amended complaint. However, here, Plaintiff has had such an opportunity. (*See* Dkt. No. 6.) As a result, the dismissal should be *with prejudice.*

I note that I have carefully considered all less drastic sanctions and found them to be inadequate and inappropriate remedies, given the particular

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

circumstances of this case, and Plaintiff's incorrigible propensity for abusing the litigation process.[FN14] As a result, I recommend that, in the alternative, Plaintiff's Amended Complaint should be dismissed with prejudice as a sanction under Fed.R.Civ.P. 11 for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

> FN14. For example, in addition to the numerous baseless actions that Plaintiff has filed in federal court, and the numerous misrepresentations he has made in those actions about his then-previous litigation history, I note that Plaintiff has, in this action, used abusive language, calling various Defendants "devils" and "satanic," and calling defense counsel "sneaky, wicked, [and] manipulative." (*See, e.g.,* Dkt. No. 6, ¶ 6 at 1, 16 [Plf.'s Am. Compl.]; Dkt. No. 33, at 15 [Plf.'s Opp. Mem. of Law].)

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 31) be ***GRANTED.*** that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ***TEN (10) DAYS*** from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of ***DISMISSAL;*** and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's Complaint be *sua sponte* **DISMISSED with prejudice** as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history; and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

**\*12** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

*Exhibit 1*
**U.S. District Court**
**United States District Court for the Southern**
**District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE # : 1:99-cv-05072-TPG**
*Chavis v. Charnes,* et al

Assigned to: Judge Thomas P. Griesa

Demand: $0

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/14/1999

Date Terminated: 07/14/1999

Jury Demand: Plaintiff

Nature of Suit: 550 Prisoner: Civil

Rights

Jurisdiction: Federal Question

*Plaintiff*

**George M. Chavis**

V.

*Defendant*

**Mr. Allen Charnes**

*Defendant*

**Ms. Irene Springer**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

represented by **George M. Chavis**

(91-A-3261)

Southport Correctional Facility

P.O. Box 2000

Pine City, N.Y. 14871-2000

PROSE

| Date Filed | # Docket Text |
| --- | --- |
| 07/14/1999 | 1 DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS by George M. Chavis (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 2 COMPLAINT filed (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Magistrate Judge Dolinger is so Designated. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 3 ORDER OF DISMISSAL Accordingly, the complaint, filed in forma pauperis under 28 U.S.C.1915(a), is dismissed pursuant to 28 U.S.C.1915(d). We certify pursuant to 28 U.S.C.1915(a) that any appeal from this order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa) (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 4 JUDGMENT for Allen Charnes, Irene Springer. Ordered, Adjudged and Decreed: That the complaint be and it is hereby dismissed. 28 U.S.C.1915(d). We certify that any appeal from the Court's order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa). entered on 7/19/99. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Case closed Op) (Entered: 07/19/1999) |
| 08/12/1999 | NOTICE OF APPEAL by George M. Chavis; from [4-1] judgment. Copies of notice of appeal mailed to |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

|  | Attorney(s) of Record: .FEES DUE, IFP revoked 7/14/99. (as) (Entered: 09/02/1999) |
|---|---|
| 08/12/1999 | Notice of appeal and certified copy of docket to USCA: [5-1] appeal by George M. Chavis; Copy of notice of appeal sent to District Judge. (as) (Entered: 09/02/1999) |
| 09/08/1999 | 6 Notice that the record on appeal has been certified and transmitted to the U.S. Court of Appeals: [5-1] appeal by George M. Chavis (as) (Entered: 09/08/1999) |
| 03/01/2000 | 7 MANDATE OF USCA (certified copy) Re: Dismiss [5-1] appeal by George M. Chavis. Motions having been made by appellant pro se for in forma pauperis status and for damages, upon consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. 99-0265 Roseann B. MacKechnie, Clerk (sl) (Entered: 03/02/2000) |
| 05/11/2000 | Record on appeal files (99-265) returned from U.S. Court of Appeals: [5-1] appeal by George M. Chavis. (dt) (Entered: 05/11/2000) |

**PACER Service Center**

**Transaction Receipt**

01/17/2008 11:48:19

| **PACER Login:** | us4417 | **Client Code:** | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 1:99-cv-05072-TPG |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

*Exhibit 2*
GENERAL DOCKET FOR
Second Circuit Court of Appeals
**\*13** Filed: 9/14/99

Court of Appeals Docket # :99-265

Nsuit: 3550 PRISONER PET-Civil Rights

*Chavis v. Charnes,* et al

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Appeal from: U.S. District Court SDNY

Case type information:

1) Prisoner Petition

2) State

3) Civil Rights

Lower court information:

District: 0208-01: 99-cv-5072

Trial Judge: Thomas P. Griesa, Chief Judge

Date Filed: 7/14/99

Date order/judgment: 7/14/99

Date NOA filed: 8/12/99

Fee status: IFP denied in CA

Prior cases:

None

Current cases:

None

Panel Assignment:

GEORGE M. CHAVIS, Plaintiff-Appellant

George M. Chavis

# 91-A-3261

[COR LD NTC]

Coxsackie Correctional Facility

P.O. Box 2000

Coxsackie, N.Y. 12051

ALLEN CHARNES, Mr., Defendant-Appellee

# 990265, Esq.

[COR LD NTC ret]

Attorney General's Office

State of New York

The Capitol

Albany, N.Y. 12224

IRENE SPRINGER, Ms., Defendant-Appellee

# 990265, Esq.

(See above)

[COR LD NTC ret]

Official Caption FN15

> FN15. Fed. R.App. P. Rule 12[a] and 32[a].

Docket No. [s]: 99-0265

GEORGE M. CHAVIS, Plaintiff-Appellant,

v.

MR. ALLEN CHARNES and MS. IRENE SPRINGER, Defendants-Appellees.

Authorized Abbreviated Caption FN16

> FN16. For use on correspondence and motions only.

Docket No. [s]: 99-0265

*CHAVIS v. CHARNES*

8/31/99 Copy of district court order RECEIVED.

(ag44)

9/14/99 Copy of notice of appeal and district court docket entries on behalf of Appellant George M. Chavis filed. (COANRQ state-cvrgt;fee due) [99-265] (ag44)

9/14/99 Record on appeal filed. (Original papers of district court.) Number of volumes: 1 (ag44)

9/17/99 Note: This appeal was PRO SE when filed. (ag44)

9/17/99 Letter sent to Appellant George M. Chavis giving 30 days from date to either pay the fee or file a motion for ifp. Fee due on 10/18/99. D Response due financial affidavit on 10/18/99. (ag44)

9/20/99 Appellant George M. Chavis motion to proceed in forma pauperis Satisfy fee or motion for ifp. FILED (w/pfs). [1555668-1] (ag44) 10/6/99 Letter from appellant, regarding submission of pre-argument materials, received. (ag44)

10/12/99 Letter sent to Appellant George M. Chavis instructing him to forward his prisoner fee letter to this court as soon as possible. (ag44)

10/18/99 Appellant George M. Chavis motion to allow damages FILED (w/pfs). [1490706-1] (ag40)

11/24/99 Letter from appellant, regarding the status of his appeal, received. (ag44)

1/4/00 Letter sent to Appellant George M. Chavis informing him of the status of his appeal. (ag44)

2/25/00 Order FILED DENYING motion to allow [1490706-1] by Appellant George M. Chavis, endorsed on motion dated 10/18/99., DENYING motion to proceed in forma pauperis [1555668-1] by Appellant George M. Chavis, endorsed on motion dated 9/20/99. Order states, "Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.

S.1915 (e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). For the Court: LC." (ag44)

**\*14** 2/25/00 Notice, regarding motion order dated 2/25/00, issued to counsel. (ag44)

2/25/00 Certified copy of order dated 2/25/00 disposing of the appeal issued to district court. (ag44)

3/9/00 Letter from appellant, regarding reinstatement of the appeal, received. (ag44)

3/16/00 Letter sent to Appellant George M. Chavis stating that if he wants to reinstate the appeal, he must file a motion. (ag44)

3/31/00 Appellant George M. Chavis motion for: 2.5 million dollars RECEIVED. (ag44)

5/1/00 Record on appeal RETURNED to lower court. No. of volumes: 1(ref)

5/25/00 Letter from appellant, regarding motion for appointment of counsel and review of medical papers, received. (ag44)

6/22/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1652956-1](hh)

7/18/00 Appellant George M. Chavis papers supporting motion # for reconsideration [1652956-1] by Appellant George M. Chavis filed. (ag44)

8/2/00 Order FILED DENYING motion to reconsider decision [1652956-1] by Appellant George M. Chavis, endorsed on motion dated 6/22/00. Order states, "Before CJS, SS, DN Hurd, It is hereby ordered that the motion for reconsideration be and it hereby is denied. For the Court: BJM" (ag44)

8/3/00 Notice, regarding motion order dated 8/2/00, issued to counsel. (ag44)

8/18/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1691931-1](hh)

10/6/00 Letter received from G. Chavis re: appeal to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Supreme Court. (ag42)

11/9/00 Letter from appellant, regarding denial of his motion for reconsideration, received. (ag44)

12/8/00 Letter sent to Appellant George M. Chavis re: Letter received on 10/06/00. (ag42)

6/25/01 Order FILED DENYING motion to reconsider decision [1691931-1] by Appellant George M. Chavis, endorsed on motion dated 8/18/00. (Before: CJS, SS, CJJ, Hurd, DJ) (BJM, AA FOR THE COURT) (ag40)

6/25/01 Notice of motion to denying reconsideration issued to counsel and pro se. (ag40)

6/25/01 Letter sent to Appellant George M. Chavis: reagrding letter he sent to this court. (ag40)

*Exhibit 3*
United States Court of Appeals
FOR THE
SECOND CIRCUIT
At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 11th Day of MARCH Two thousand and five.

Present:

Hon. Thomas J.

Meskill, Hon. Dennis Jacobs,

Hon. Chester J. Straub,

*Circuit Judges.*

_____

George M. Chavis, Plaintiff-Appellant,

v.

Robert Cunningham, George Struebel, Defendants-Appellees,

D. Waiter, T. Brekon, Wright, John Doe, Glenn S. Goord, Anthony J. Annuci, Walter R. Kelly, Frank McCray, James Conway, Edward Donnerly, Defendants,

_____

Appellant, *pro se,* moves for *in forma pauperis* status. Upon due consideration, it is ORDERED that the motion is DENIED, and the appeal is dismissed, because the appeal "lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

**\*15** FOR THE COURT:

Roseann B. MacKechnie, Clerk

By: Lucille Carr

*Exhibit 4*
**New York State Court of Claims**

*CHAVIS v. THE STATE OF NEW YORK,* #
**2001-013-019, Claim No. 100419, Motion No. M-63721**
**Synopsis**
A claim brought by a non-attorney which asserts a cause of action on behalf of family members is dismissed as improperly brought.

**Case Information**

| | |
|---|---|
| **UID:** | 2001-013-019 |
| **Claimant(s):** | GEORGE CHAVIS |
| **Claimant short name:** | CHAVIS |

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

| | |
|---|---|
| **Footnote (claimant name):** | |
| **Defendant(s):** | THE STATE OF NEW YORK |
| **Footnote (defendant name):** | |
| **Third-party claimant(s):** | |
| **Third-party defendant(s):** | |
| **Claim number(s):** | 100419 |
| **Motion number(s):** | M-63721 |
| **Cross-motion number(s):** | |
| **Judge:** | Philip J. Patti |
| **Claimant's attorney:** | GEORGE CHAVIS, Pro Se |
| | HON. ELIOT SPITZER |
| **Defendant's attorney:** | Attorney General of the State of New York |
| | BY: William D. Lonergan, Esq. Assistant Attorney General |
| **Third-party defendant's attorney:** | |
| **Signature date:** | September 19, 2001 |
| **City:** | Rochester |
| **Comments:** | |
| **Official citation:** | |
| **Appellate results:** | |
| **See also** | |
| **(multicaptioned case)** | |

### Decision

On August 15, 2001, the following papers were read on Defendant's motion for an order of dismissal:

1. Notice of Motion and Supporting Affidavit of William D. Lonergan, Esq. ("Lonergan Affidavit")

2. Affidavit in Opposition: None Received

3. Filed Papers: Claim; Answer

The substantive portion of this claim, which was filed by *pro se* Claimant George Chavis, reads as follows:

On date of 8-22-98, my mother and brothers (2), had visited me at Lakeview Prison, at an "unauthorized" time, due to false information given them over the phone by my vindictive SHU-Counselor, on 8-11-98, resulting in loss of travel expenses by my family members.

Claimant served a Notice of Intention on September 11, 1998 (Lonergan Affidavit, Exhibit A), and the Claim was filed and served in May 1999. In its answer, the State raised the following as its fifth affirmative defense:

The claim is inappropriately brought, as the Claimant is not authorized to practice law under the New York State Judiciary Law. As such, Claimant cannot bring an action on behalf of his family members.

Defendant now moves for an order dismiss the claim on this ground.

CPLR 321(a) provides that an adult party "may prosecute or defend a civil action in person or by attorney," and Judiciary Law § 478 makes it unlawful

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

for persons who have not been admitted to practice law to appear as or hold themselves out as attorneys. Claimant has made no submission in opposition to Defendant's motion and, because he expressly indicates that he has brought this action *"pro se,"* I have no option but to conclude that he has neither the authority to represent his family members in this matter nor a claim to assert on his own behalf.

**\*16** Defendant's motion is granted, and Claim No. 100419 is dismissed.

September 19, 2001

Rochester, New York

HON. PHILIP J. PATTI Judge of the Court of Claims

N.D.N.Y.,2008.
Chavis v. Curlee
Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2014 WL 458018 (W.D.N.Y.)
**(Cite as: 2014 WL 458018 (W.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Nahshon JACKSON, Plaintiff
v.
Glenn S. GOORD, et al., Defendants.

No. 06–CV–6172 CJS(MWP).
Feb. 4, 2014.

Nahshon Jackson, Comstock, NY, pro se.

Gary M. Levine New York State Office of the Attorney General, Rochester, NY, for Defendants.

DECISION AND ORDER
CHARLES J. SIRAGUSA, District Judge.
INTRODUCTION

**\*1** Plaintiff, a prisoner in the custody of the New York State Department of Corrections and Community Services ("DOCCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. Now before the Court is Defendants' motion to revoke Plaintiff's *in forma pauperis status* and dismiss this action. (Docket Nos. [# 50][# 54] ).FN1 The application to revoke Plaintiff's *in forma pauperis* status is granted, and the action is dismissed with prejudice.

> FN1. Defendants filed two motions [# 50][# 54] seeking the same relief. It appears that Defendants may have intended to withdraw the first motion, and replace it with the second, essentially identical, motion. To avoid any confusion, the Court lists the docket numbers of both motions.

BACKGROUND

On March 27, 2006, Plaintiff submitted to the Court a Complaint and an application to proceed *in forma pauperis* ("IFP"). The Complaint [# 1] complained about matters that allegedly occurred at At-

tica Correctional Facility ("Attica") and Upstate Correctional Facility ("Upstate"). At the time Plaintiff commenced this action he was housed at Marcy Correctional Facility ("Marcy"), and there is no indication that he was in imminent danger of physical harm at that time.

When filing this action, Plaintiff used a form complaint FN2 that required him to list any other lawsuits that he had filed pertaining to his imprisonment. Plaintiff responded by listing just three actions: *Jackson v. Goord, et al.,* No. 97 Civ. 7149 (Southern District of New York), *Jackson v. Pataki, et al.,* No. 00–CV–1102 (Northern District of New York) and *Jackson v. Ricks, et al.,* No. 02–CV–0773 (Northern District of New York). Plaintiff represented that *Jackson v. Goord* and *Jackson v. Ricks* were still pending, and that *Jackson v. Pataki* had been "dismissed without prejudice." (Complaint [# 1] at pp. 3–4). Plaintiff signed the complaint under penalty of perjury.

> FN2. Plaintiff wrote out the complaint by hand, tracking the language of the standard § 1983 form complaint used by the Court.

On May 16, 2006, the Court relied on Plaintiff's representations and granted his application to proceed *in forma pauperis.* (Order, Docket No. [# 5] ). When a prison inmate is granted leave to proceed *in forma pauperis,* the court filing fee is collected from his prison account over time.FN3 In Plaintiff's case, however, the Clerk of the Court has advised that no fees were ever collected from Plaintiff's inmate account. Accordingly, the filing fee, which was $250.00 at the time Plaintiff filed this action, remains unpaid.

> FN3. *See,* Pro Se Guidelines, U.S. District Court, Western District of New York ("A statute enacted in 1996 affected *in forma pauperis* status for prisoners. As a result prisoners, even though they are granted *in forma pauperis* status, must still pay the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

filing fee, but over a period of time out of their prisoner account. However, the filing of the lawsuit will not be delayed because the prisoner has no money in his or her prisoner account. 28 U.S.C. § 1915(b)(1) and (4).")

This action then proceeded through pretrial discovery. On October 12, 2011, the Court issued a Decision and Order [# 42] which, *inter alia,* denied summary judgment as to certain claims. On July 9, 2013, the Court issued a Pretrial Order [# 49], scheduling this matter for trial on March 3, 2014.

On November 7, 2013, Defendants filed the subject motion [# 50] to revoke Plaintiff's *in forma pauperis* status and dismiss the action. Specifically, Defendants indicate that the Court should revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g), and dismiss the action, because prior to the date that he commenced this action, he had at least three other actions dismissed as being frivolous, malicious, or failing to state a claim. Defendants also maintain that the Court should dismiss the action with prejudice as a sanction, since Plaintiff made material misrepresentations to the Court when he indicated that he had only filed three prior lawsuits.

**\*2** In support of the application, Defendants maintain that Plaintiff had actually filed eleven actions relating to prison conditions prior to commencing this one, not three.[FN4] Furthermore, in connection with those eleven actions, Defendants maintain that four of the actions, including one that Plaintiff listed on the Complaint, *Jackson v. Pataki,* 00–CV–1102, and one appeal, were dismissed, as being frivolous, malicious or failing to state a claim, before he commenced this action.[FN5] As support, Defendants have submitted a Memorandum Decision and Order of the Honorable Glenn T. Suddaby, United States District Judge, Northern District of New York, in the case of *Jackson v. Pfau,* 10–CV–1484, dated May 12, 2011, in which, *inter alia,* the court denied Plaintiff's application to proceed *in forma pauperis,* due to the fact that he

had at least four prior "strike" dismissals pursuant to 28 U.S.C. § 1915(g), all of which pre-date Plaintiff's filing of this action. *See,* Levine Decl. [# 50–1], Ex. A, at p. 10. In that regard, Judge Suddaby stated:

> FN4. Those actions are: 1) *Jackson v. Suffolk County Homicide,* 95–CV–4684 (E.D.N.Y.); 2) *Jackson v. Artuz,* 95–CV–8868 (S.D.N.Y.); 3) *Allah, et al. v. Pataki,* 95–CV–9921 (S.D.N.Y.); 4) *Jackson v. Artuz,* 96–CV–0259 (E.D.N.Y.); 5) *Jackson v. U.S. Postal Service,* 96–CV–5392 (mistakenly identified by Defendants as 96–CV–*9352* ) (S.D.N.Y.); 6) *Jackson v. Goord,* 97–Civ. 7149 (S.D.N.Y.); 7) *Jackson v. Artuz,* 98–CV–0104 (E.D.N.Y.); 8) *Jackson v. Pataki,* 00–CV–1102 (N.D.N.Y.); 9) *Jackson v. Duncan,* 01–CV–0966 (N.D.N.Y.); 10) *Jackson v. Ricks,* 02–CV–0773 (N.D.N.Y.); and 11) *Jackson v. USA,* 03–CV–0353 (S.D.N.Y.).

> FN5. *See,* Declaration of Gary Levine, Assistant Attorney General [# 50–1] at ¶ 4.

At least four of [Jackson's] actions or appeals have resulted in 'strikes' for purposes of 28 U.S.C. § 1915(g). *See, Jackson v. Pataki,* 00–CV–1102, Judgment (N.D.N.Y. filed March 26, 2003) (Mordue, J.) (adopting Report–Recommendation of Homer, M.J., recommending that Court grant defendant's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12[b][6] ); *Jackson v. USA,* 03–CV–0353, Order of Dismissal (S.D.N.Y. filed Jan. 16, 2003) (Mukasey, C.J.) (*sua sponte* dismissing complaint pursuant to U.S.C. § 1915 [e][2]; *Jackson v. Artuz,* 95–CV–8868, Order of Dismissal (S.D.N.Y. filed July 30, 1999) (Stein, J.) (granting defendants' motion for judgment on pleadings pursuant to Fed.R.Civ.P. 12[c]; *Jackson v. U.S.P.S.,* 96–CV–5392, Order of Dismissal (S.D.N.Y. filed July 19, 1996) (Griesa, C.J.) (*sua sponte* dismissing complaint pursuant to section

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

of 28 U.S.C. § 1915 formerly designated as '(d),' currently designated as '(e) (2)').
*Id.*

It is significant that although Plaintiff appealed Judge Suddaby's ruling, the Second Circuit affirmed, and specifically found that Judge Suddaby had not erred in denying the application to proceed *in forma pauperis.* Levine Decl. [# 50–1], Ex. B, *Jackson v. Pfau,* 12–324–pr, (2d Cir. Apr. 4, 2013) ("The District Court also properly found that at least four of Jackson's prior actions or appeals resulted in 'strikes' for purposes of § 1915(g), and therefore properly denied his motion to proceed IFP pursuant to that section.").

Plaintiff nevertheless opposes the motion to dismiss, and indicates, first, that Defendants' counsel is acting in bad faith by bringing this motion after the court-imposed deadline for bringing dispositive motions, thereby "hindering [Plaintiff's] ability to prosecute this civil rights action." Pl. Response [# 52] at ¶ 3. Plaintiff further indicates that when he drafted the Complaint, he only mentioned three prior lawsuits, while failing to mention eight others, because he was confined to the Special Housing Unit ("SHU"), and only had legal papers pertaining to the three listed actions in his SHU cell, while papers relating to the other eight actions were in storage. *Id.* at ¶ ¶ 24–26. Plaintiff further states that he was "unable to remember the exact title and cites of each of [those] cases and the manner in which they were disposed of." *Id.* at ¶ 26. Plaintiff also contends that the Court should deny Defendants' motion, because Defendants' counsel, who has practiced before the Court for more than a decade, has not produced evidence that he is admitted to practice. Additionally, Plaintiff argues that the motion to dismiss should be denied because Defendants' counsel did not sign the motion, although that assertion is incorrect.

DISCUSSION

**\*3** The relevant section of law upon which Defendants' motion is based states, in pertinent part:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g) (West 2014). Clearly, the Court may revoke a prisoner plaintiff's IFP status if it determines that he is in violation of the three strikes provision. *See, generally, Harris v. City of New York,* 607 F.3d 18 (2d Cir.2010); *Collazo v. Pagano,* 656 F.3d 131, 133–134 (2d Cir.2011).

In this case, the Court finds that Plaintiff accumulated three "strikes" prior to commencing this action, and that the "imminent danger" exception does not apply. The Court will therefore revoke Plaintiff's *in forma pauperis* status.

The Court also finds that revocation of Plaintiff's IFP status and dismissal of the action is warranted, as a sanction which the Court may impose pursuant to its inherent authority over this action, because he misrepresented his prior litigation history to the Court, hampering the Court's ability to evaluate his IFP application. *See, Harris v. City of New York,* 607 F.3d at 23 ("As an initial matter, we note that Harris's 'Prisoner Complaint' forms misrepresented how many strike suits he had filed prior to bringing the instant action. Harris should not benefit from his own misleading submissions[.]"); *Cameron v. Lambert,* No. 07 Civ. 9258(DC), 2008 WL 4823596 at \*4 (S.D.N.Y. Nov.7, 2008) ("Pursuant to its inherent power, a court may impose sanctions against a party for 'act[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons.' *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citations omitted), and for 'misconduct during the course of litigation.' *Milltex Indus. Corp.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*v. Jacquard Lace Co.,* 55 F.3d 34, 37–38 (2d Cir.1995).").

The only remaining issue is whether such dismissal should be with prejudice. In an analogous case, the Second Circuit affirmed the dismissal, with prejudice, of an action in which a *pro se* litigant, in bad faith, misrepresented his income and assets in connection with an application to proceed *in forma pauperis. See, Vann v. Commissioner of the New York City Department of Correction,* No. 11–2200–pr, 496 Fed.Appx. 113, 2012 WL 4010492 (2d Cir. Sep.13, 2012). In that decision, the Circuit Court stated that, "[t]o determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the *in forma pauperis* system and history of litigation." *Id.,* 2012 WL 4010492 at *2. In the instant case, the record indicates that Plaintiff was an experienced *pro se* litigator when he commenced this action. It is also evident that Plaintiff, who apparently filed most, if not all, of his lawsuits from prison, was familiar with the *in forma pauperis* systems.[FN6] Consequently, the Court finds that Plaintiff knew that he was required to list all of his prior lawsuits.

> FN6. For example, as indicated above, ten years before Plaintiff commenced this action, Judge Griesa, in *Jackson v. U.S.P.S.,* 96–CV–5392, granted Plaintiff leave to proceed *in forma pauperis,* and dismissed Plaintiff's complaint pursuant to what is now 28 U.S.C. § 1915(e)(2).

**\*4** The Court also notes that Plaintiff's explanation for failing to list his prior prison lawsuits, many of which had been dismissed as "strikes," is unconvincing. In that regard, Plaintiff indicates that he did not list those other cases because his papers relating to them were in storage, and he was "unable to remember the exact title and cites of each of [those] cases and the manner in which they were disposed of." Pl. Response [# 52] at ¶ 26. However, Plaintiff does not explain why he signed the deficient complaint under penalty of perjury, rather than requesting to have the documents taken out of storage, or why he did not write to the particular courts, where those cases had been filed, and request the necessary information. At the very least, he could have told the Court that he had prior lawsuits, but could not remember the details. That way, the Court could have obtained the necessary information before makings its determination concerning *in forma pauperis.*[FN7]

> FN7. As noted earlier, Plaintiff contends that the Court should deny Defendants' motion because it is untimely. The Court disagrees, and finds that Plaintiff can hardly complain about the fact that it took Defendants this long to discover his deception.

Based upon all of the foregoing factors, the Court finds that dismissal with prejudice is appropriate, based on Plaintiff's bad faith conduct. The Court is somewhat reluctant to do so, since some of Plaintiff's claims have survived summary judgment. Nevertheless, it appears that Plaintiff intentionally misled the Court. Moreover, simply dismissing the action without prejudice and permitting Plaintiff to re-file the action and pay the filing fee would not provide an adequate deterrent to such conduct.

CONCLUSION

Defendant's motion [# 50][# 54] to dismiss is granted, with prejudice. The Clerk of the Court is directed to close this action.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 458018 (W.D.N.Y.)
**(Cite as: 2014 WL 458018 (W.D.N.Y.))**

W.D.N.Y.,2014.
Jackson v. Goord
Slip Copy, 2014 WL 458018 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 443852 (W.D.N.Y.)
**(Cite as: 2013 WL 443852 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Said GSSIME, Plaintiff
v.
Mr. John BURGE, et al., Defendants.

No. 08–CV–6404 CJS(mwp).
Feb. 5, 2013.

Said Gssime, West Coxsackie, NY, pro se.

Gary M. Levine, New York State Office of the Attorney General, Rochester, NY, for Defendants.

DECISION AND ORDER
CHARLES J. SIRAGUSA, District Judge.
INTRODUCTION

**\*1** Plaintiff, a prisoner in the custody of the New York State Department of Corrections and Community Services ("DOCCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. Now before the Court is Defendants' motion to revoke Plaintiff's *in forma pauperis status* and dismiss this action. (Docket No. [# 43] ). The application to revoke Plaintiff's *in forma pauperis* status is granted, and this action will be dismissed unless Plaintiff pays the filing fee within thirty (30) days.

BACKGROUND

On September 5, 2008, Plaintiff submitted to the Court a Complaint and an application to proceed *in forma pauperis* ("IFP"). The Complaint [# 1] alleged, *inter alia,* that in 2007, at Elmira Correctional Facility, Defendants denied Plaintiff medical and dental care, groped his genitals during a security frisk and retaliated against him for filing a grievance. There is no indication that Plaintiff was in imminent danger of physical harm when he commenced this action, at which time he was housed at Marcy Correctional Facility.

When filing this action, Plaintiff used a form complaint that required him to list any other lawsuits that he had filed pertaining to his imprisonment. Plaintiff responded by listing a single action: 9:06–CV–1499, *Gssime v. Kadian, et al.* (NDNY). As it now appears, Plaintiff's representation that this was his only prior lawsuit arising from his imprisonment was indisputably false.

On September 24, 2008, the Court relied on Plaintiff's representations and granted his application to proceed *in forma pauperis.* This action then proceeded through pretrial discovery.

On December 11, 2012, Defendants filed the subject motion to dismiss [# 43]. Specifically, Defendants indicate that the Court should revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g), and dismiss the action, because prior to the date that he commenced this action, he had at least three other actions dismissed as being frivolous, malicious, or failing to state a claim.

In support of the application, Defendants identify the three actions that were previously dismissed, as being frivolous, malicious or failing to state a claim, as follows: 1) 06–CV–4988, *Gssime v. Bray* (NDNY Apr. 3, 2007); 2) 6:07–CV–0363, *Gssime v. Eli Lilly, et al.* (NDNY Apr. 27, 2007); 3) 07–2094–cv, *Gssime v. Bray* (2d Cir. Mar. 28, 2008). Copies of the respective decisions and orders dismissing those actions are attached to Defendants' moving papers. Those decisions and orders do, in fact, indicate that those actions were dismissed for failing to state a claim and/or for being frivolous.

In response to the motion to dismiss, Plaintiff argues that dismissal is not appropriate, "[s]ince appeals still pending, and some are re-store by the Court." [sic] *See,* Docket No. [# 44]. However, there is no indication that Plaintiff's assertion is correct. To the contrary, although Plaintiff appealed the dismissal of *Gssime v. Bray,* the Second Circuit

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 443852 (W.D.N.Y.)
**(Cite as: 2013 WL 443852 (W.D.N.Y.))**

dismissed the appeal as lacking "an arguable basis in fact or law," thereby accounting for two of his three strikes. Moreover, there is no indication that *Gssime v. Eli Lilly* was actually "restored" or re-opened. FN1

> FN1. On January 18, 2013, the Court's law clerk telephoned the Office of the Clerk for U.S. District Court for the Northern District of New York, in Syracuse, and was advised that *Gssime v. Eli Lilly* was dismissed with prejudice in 2007 and never re-opened.

## DISCUSSION

**\*2** The relevant section of law upon which Defendants' motion is based states, in pertinent part:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g) (West 2012). Clearly, the Court may revoke a prisoner plaintiff's IFP status if it determines that he is in violation of the three strikes provision. *See, generally, Harris v. City of New York,* 607 F.3d 18 (2d Cir.2010); *Collazo v. Pagano,* 656 F.3d 131, 133–134 (2d Cir.2011).

In this case, the Court finds that Plaintiff accumulated three "strikes" prior to commencing this action, and that the "imminent danger" exception does not apply. The Court will therefore revoke Plaintiff's *in forma pauperis* status.

The Court also finds that revocation of Plaintiff's IFP status is warranted, as a sanction which the Court may impose pursuant to its inherent authority over this action, because he misrepresented his prior litigation history to the Court, hampering the Court's ability to evaluate his IFP application. *See, Harris v. City of New York,* 607 F.3d at 23 ("As an initial matter, we note that Harris's 'Prisoner Complaint' forms misrepresented how many strike suits he had filed prior to bringing the instant action. Harris should not benefit from his own misleading submissions[.]"); *Cameron v. Lambert,* No. 07 Civ. 9258(DC), 2008 WL 4823596 at \*4 (S.D.N.Y. Nov.7, 2008) ("Pursuant to its inherent power, a court may impose sanctions against a party for 'act[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons.' *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citations omitted), and for 'misconduct during the course of litigation.' *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 37–38 (2d Cir.1995).").

## CONCLUSION

Defendant's motion [# 43] is granted insofar as it seeks revocation of Plaintiff's *in forma pauperis* status. Plaintiff must pay the applicable filing fee of three hundred fifty dollars ($350) within *thirty (30) days* of the filing of this Decision and Order, *and his failure to pay such fee will result in a dismissal of this case without further order of the Court.*

In the event that this action is dismissed for Plaintiff's failure to pay the filing fee, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*3** So Ordered.

W.D.N.Y.,2013.
Gssime v. Burge

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 443852 (W.D.N.Y.)
**(Cite as: 2013 WL 443852 (W.D.N.Y.))**

Not Reported in F.Supp.2d, 2013 WL 443852 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1117172 (S.D.N.Y.)
**(Cite as: 2012 WL 1117172 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Benjamin WATERS, Plaintiff,
v.
Captain CAMACHO, Officer Slack, Defendants.

No. 11 Civ. 3263(JGK).
April 2, 2012.

### MEMORANDUM OPINION AND ORDER
JOHN G. KOELTL, District Judge.

**\*1** The plaintiff, Benjamin Waters, brought this action, *pro se,* against Captain Camacho and Officer Slack of the New York City Department of Corrections alleging incidents of sexual assault. The defendants have moved to dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2) on the ground that the plaintiff made false statements in his May 4, 2011 application to proceed in this case *in forma pauperis* ("IFP"). Alternatively, the defendants request that plaintiff's IFP status be revoked.

The defendants ask that the plaintiff's case be dismissed with prejudice because in filing his IFP application, he failed to disclose that he had recently received $600 in the settlement of another case. Under 28 U.S.C. § 1915(e)(2)(a), "the court shall dismiss the case at any time if the court determines that ... the allegation of poverty is untrue." However, dismissal is a "harsh remedy to be saved for the most extreme cases of misrepresentation." *Christensen v. Bristol–Myers Co.,* No. 86 Civ. 0183, 1990 WL 6554, at \*2 (S.D.N.Y. Jan.22, 1990). In deciding whether dismissal is required, "the question before the Court is not the accuracy of every specific representation made by Plaintiff in support of his application to proceed *in forma pauperis,* but whether Plaintiff's 'allegation *of poverty* is untrue.' " *Hobbs v. Cnty. of Westchester,* No. 00 Civ. 8170, 2002 WL 868269, at \*2 (S.D.N.Y. May

3, 2002) (quoting *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 338, 69 S.Ct. 85, 93 L.Ed. 43 (1948)). Dismissal is required if the Court finds that the plaintiff "is not sufficiently poor to qualify for in forma pauperis status given the facts that are true." *Id.* (quoting *Lee v. McDonald's Corp.,* 231 F.3d 456, 459 (8th Cir.2000). Moreover, dismissal with prejudice generally requires a showing that "an applicant misrepresent[ed] [his or] her financial arrangements *in bad faith* to obtain IFP status." *Cuoco v. Bureau of Prisons,* 328 F.Supp.2d 463, 468 (S.D.N.Y.2004) (emphasis added).

In this case, the plaintiff admits that he received $600 in another case and did not disclose that information in his May 4, 2011 IFP application. However, he denies that the omission was intentional and says that he is prepared to pay the filing fee. There is no clear showing that the plaintiff misstated his income in bad faith in order to obtain IFP status. Even with the $600 of undisclosed income, it is not clear that that the plaintiff's "allegation of poverty is untrue". 28 U.S.C. § 1915(e)(2)(a).

Given the small amount of money at issue and the plaintiff's representation that he is prepared to pay the filing fee, it is sufficient that the plaintiff's IFP status be **revoked.** Dismissal at this time is neither required nor appropriate, and the defendants' motion to dismiss is **denied.**

### CONCLUSION
The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **denied.** The plaintiff's IFP status is revoked and the plaintiff is directed to pay the $350 filing fee within thirty (30) days of this Order. If the plaintiff fails to pay the filing fee, the defendant may move to dismiss this action for failure to prosecute.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*2 The Clerk is directed to close Docket No. 17.**

**SO ORDERED.**

S.D.N.Y.,2012.
Waters v. Camacho
Not Reported in F.Supp.2d, 2012 WL 1117172 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2014 WL 411569 (N.D.N.Y.)
**(Cite as: 2014 WL 411569 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Michel TOLIVER, Plaintiff,
v.
Brian FISCHER, New York State Commissioner of
DOCCS; Joseph T. Smith, Superintendent of
Shawangunk Correctional Facility; W. Maly,
Deputy of Security, Shawangunk Correctional Fa-
cility; J. Stefinik, Correction Officer, Shawangunk
Correctional Facility; J. Gardner, Lieutenant Hear-
ing Officer, Shawangunk Correctional Facility;
Stone, Corrections Officer, Shawangunk Correc-
tional Facility; Lucien J. Leclaire, Deputy Commis-
sioner of DOCCS; Sgt. Aube, Sgt. In House Unit,
Shawangunk Correctional Facility; Gaye (John
Doe), Corrections Officer, Shawangunk Correction-
al Facility; Keys, Corrections Officer, Shawangunk
Correctional Facility; L. Pingott, Captain
(Security), Shawangunk Correctional Facility; D.
Degraff, Corrections Officer, Shawangunk Correc-
tional Facility; Sergeant Preston, Sergeant Correc-
tions, Shawangunk Correctional Facility; R. Cutler,
Corrections Officer, Shawangunk Correctional Fa-
cility; Budziszewski, Corrections Officer, Shawan-
gunk Correctional Facility; R. Kane, Corrections
Officer, Shawangunk Correctional Facility; C.O.
North; and J. Peterson, Defendants.

No. 9:12–CV–77 (MAD/ATB).
Feb. 3, 2014.

Michel Toliver, Romulus, NY, pro se.

Office of the New York, State Attorney General,
Cathy Y. Sheehan, AAG, of Counsel, Albany, NY,
for Defendants.

**ORDER**
MAE A. D'AGOSTINO, District Judge.

**\*1** By his complaint in this action, Plaintiff as-
serts claims for the violation of his constitutional
rights arising out of his confinement at Shawan-
gunk Correctional Facility ("Shawangunk C.F.").
Plaintiff states that he was transferred to Shawan-
gunk C.F. in February of 2011, and assigned to a
housing unit which was not wheelchair accessible.
*See* Dkt. No. 1 at 15–17. Plaintiff was told that his
wheelchair had to be kept in a bin in a storage room
and retrieved from that location whenever Plaintiff
required it to move around the facility. *See id.* at
15–16. Plaintiff's repeated requests for inmate as-
sistance with storing and retrieving his wheelchair
were denied. *See id.* at 16–17. As alleged, Plaintiff
was injured on several occasions during this period
when he was attempting to store or retrieve his
wheelchair. *See id.* at 17–22. Throughout this peri-
od, Plaintiff filed numerous grievances regarding
the conditions of his confinement. In addition, as
many as nine misbehavior reports were issued to
Plaintiff. *See id.* at 22–24. Plaintiff claims that De-
fendants filed false misbehavior reports against him
in retaliation for his grievance activity, denied him
proper and adequate medical care, and discrimin-
ated against him on the basis of his disability and
sexual orientation. *See id.* at 8. Plaintiff seeks an
award of monetary damages, as well as declaratory
and injunctive relief. *See id.* at 13.

On March 12, 2013, Defendants filed a motion
seeking dismissal pursuant to 28 U.S.C. § 1915 and
for sanctions pursuant to Rule 11 of the Federal
Rules of Civil Procedure. *See* Dkt. No. 104. In their
motion, Defendants ask the Court to revoke
Plaintiff's *in forma pauperis* status and condition-
ally dismiss the case because Plaintiff has previ-
ously filed seven federal actions or appeals that
were dismissed in such a manner that they should
be deemed strikes for purposes of the "three
strikes" provision of the Prison Litigation Reform
Act ("PLRA"). *See* Dkt. No. 104–10 at 4–7. Fur-
ther, Defendants argue that this action should be
dismissed because of Plaintiff's misrepresentations
in his complaint regarding his litigation history. *See
id.* at 8–10.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

On October 29, 2013, Magistrate Judge Baxter issued a Report–Recommendation in which he recommends that the Court deny Defendants' motion in its entirety. *See* Dkt. No. 120. Magistrate Judge Baxter first reviewed Plaintiff's lengthy litigation history and determined that, despite having filed more than thirty-five actions or appeals since 1992, only one of them qualifies as a "strike" for purposes of the PLRA. *See id.* at 4–8. Next, Magistrate Judge Baxter found that Defendants' Rule 11 motion is subject to denial because they failed to provide Plaintiff with the twenty-one day safe harbor period required by the Rule. *See id.* at 10. Finally, Magistrate Judge Baxter recommended that the Court deny the Rule 11 motion on the merits as well. *See id.* at 10–11. Specifically, the Report–Recommendation finds that Plaintiff has a far more extensive litigation history than the seven actions identified in the complaint. *See id.* at 11. Nevertheless, Magistrate Judge Baxter finds that although the standard form complaint "asks for a description of all prior lawsuits, and the court does not condone the omission, the court does not find plaintiff's failure to list all of his prior lawsuits so unreasonable as to require the imposition of sanctions." *See id.*

**\*2** Currently before the Court is Magistrate Judge Baxter's October 29, 2013 ReportRecommendation, to which neither party has objected.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

Having carefully reviewed the October 29, 2013 Report–Recommendation, the parties' submissions and the applicable law, the Court finds that Magistrate Judge Baxter correctly determined that the Court should deny Defendants' motion in its entirety. Although Plaintiff does have an extensive litigation history, at the time he filed this lawsuit he had acquired only one strike for purposes of the PLRA. *See Toliver v. Dep't of Corrections,* No. 07–CV–3017, Dkt. No. 3 (S.D.N.Y.2007). The remaining cases Defendants cite do not qualify as strikes. Several of the cases, although filed as civil rights complaints, were treated as petitions for a writ of habeas corpus. *See* Dkt. No. 120 at 6. The Second Circuit has held that dismissal of such cases cannot constitute strikes for purposes of the PLRA. *See Jones v. Smith,* 720 F.3d 142, 147 (2d Cir.2013). Other cases cited were dismissed for

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 411569 (N.D.N.Y.)
**(Cite as: 2014 WL 411569 (N.D.N.Y.))**

Plaintiff's failure to submit a completed Prison Authorization Form and for Plaintiff's failure to comply with the filing fee requirements. *See* Dkt. No. 120 at 6–7 (citing cases). District courts in the Second Circuit have declined to find that a dismissal for failure to prosecute constitutes a strike for purposes of 28 U.S.C. § 1915(g). *See McNair v. Kelly,* No. 13 Civ. 728, 2013 WL 4574247, *1 (S.D.N.Y. Aug.22, 2013). Moreover, Magistrate Judge Baxter properly determined that a class action in which Plaintiff appears to have not given authorization for his name to appear should not be a frivolous action attributable to Plaintiff. *See* Dkt. No. 120 at 7–8.

**\*3** Finally, as to the motion for sanctions, Magistrate Judge Baxter correctly determined that Defendants failed to provide Plaintiff with the twenty-one day safe harbor period, which alone warrants denial of the motion. *See Fierro v. Gallucci,* 423 Fed. Appx. 17, 18–19 (2d Cir.2011) (finding that the district court "was required to deny plaintiffs' motion for sanctions for failure to comply with the 21–day 'safe harbor,' which requires Rule 11 motions to be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims") (citations omitted).

After carefully considering Magistrate Judge Baxter's Report–Recommendation and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's October 29, 2013 Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 104) is **DENIED;** and the Court further

**ORDERS** that Defendants shall answer or otherwise respond to Plaintiff's amended complaint (Dkt. No. 27) within **TWENTY–ONE (21) DAYS** from the filing date of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Mae A. D'Agostino, United States District Judge.

Liberally construed, plaintiff's Amended Complaint ("Am.Compl.") (Dkt. No. 27) asserts claims against a number of defendants arising out of his confinement at Shawangunk Correctional Facility. ( *See generally* Am. Compl.). Plaintiff alleges that defendants filed false misbehavior reports against him in retaliation for his grievance activity, denied him adequate medical care, and discriminated against him on the basis of his disability and sexual orientation. Plaintiff seeks monetary damages as well as declaratory and injunctive relief.

Currently before the court is defendants' motion pursuant to 28 U .S.C. § 1915(g), seeking to revoke plaintiff's in forma pauperis status and conditionally as a sanction pursuant to Federal Rule of Civil Procedure 11 (" Rule 11 "). (Dkt. No. 104). Plaintiff filed a response (Dkt. No. 106) to which defendants replied (Dkt. No. 107). Plaintiff then filed three supplemental affidavits (Dkt. Nos.109–111) in opposition to the motion.

Defendants argue that plaintiff has previously filed seven federal actions or appeals that were dismissed under circumstances justifying dismissal of this action under the "three strikes" provision of the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 104–10 at 4–7). Defendants further assert that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

action should be dismissed based on plaintiff's mis-representations in his complaint regarding his litigation history. (Dkt. No. 104–10 at 8–10.) Having concluded that plaintiff has not acquired three "strikes" under section 1915(g), this court recommends that defendants' motion to revoke plaintiff's in forma pauperis status and conditionally dismiss the case be denied. The court further concludes that dismissal under Rule 11 is not warranted.

## DISCUSSION

### I. Three Strikes

#### A. Legal Standards

**\*4** The "three strikes" section of the PLRA prohibits the filing of an action in forma pauperis when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g). The purpose of section 1915(g) is to "stem the tide of egregiously meritless lawsuits" by "forcing the prisoner to go through the same thought process non-inmates go through before filing a suit, i.e. is filing this suit worth the costs?" *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007) (citations omitted).

Section 1915(g) provides that:

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [in forma pauperis] if the prisoner has, on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

An action may be dismissed pursuant to section 1915(g) even if the court originally granted plaintiff in forma pauperis status. *See, e.g., Gamble v. Maynard* 9:06–CV–1543 (DNH/DEP), 2008 WL 150364, at \*5 (N.D.N.Y. Jan. 14, 2008)

(conditionally dismissing complaint under section 1915(g) and finding that in forma pauperis status was improvidently granted); *Luevano v. Clinton,* 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at \*3 (N.D.N.Y. July 1, 2010). An action is "frivolous" for purposes of the statute if it " 'lacks an arguable basis either in law or in fact.' " *Tafari,* 473 F.3d at 442 (citation omitted). In determining whether a dismissal satisfies the failure to state a claim prong of the statute, courts have drawn upon the provisions of Federal Rule of Civil Procedure 12(b)(6) for guidance, in light of the similarity in phrasing utilized in the two provisions. *Id.* The three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the 1996 enactment of section 1915(g). *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000).

A dismissal cannot count as a strike until after the opportunity to appeal has been exhausted or waived. *See, e.g., Partee v. Connolly,* 08 Civ. 4007, 2009 WL 1788375, at \*2 (S.D.N.Y. June 23, 2009). If a district court dismisses an action on a ground specified in section 1915(g), and an appellate court simply affirms, together the decisions constitute a single strike. *Id.; Thompson v. Drug Enforcement Admin.,* 492 F.3d 428, 436–37 (D.C.Cir.2007). However, when a district court dismisses an action for any of the reasons set forth under the three strikes statute, and if the subsequent appeal is dismissed as frivolous, then the two decisions count as separate strikes. *Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010) (noting that "sequential dismissals on strike grounds can provide separate strikes under § 1915(g)").

**\*5** If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action in forma pauperis unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,*

293 F.3d 559, 562–63 (2d Cir.2002).

**B. Analysis**

Plaintiff is a frequent litigator. Based on the court's review of his litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it appears that plaintiff has filed more than 35 actions or appeals since 1992. As Judge D'Agostino noted in her Decision and Order dated May 4, 2012, plaintiff had clearly acquired one strike for purposes of the PLRA before he filed the current action (on December 22, 2011). FN1 (Dkt. No. 9 at 3). Plaintiff incurred this first strike on April 16, 2007, after filing a civil rights action in the Southern District of New York. *Toliver v. Dep't of Corrections, et al.,* 07–CV–3017, Dkt. No. 3 (S.D.N.Y.). According to the docket entries in that action, 07–CV–3017, FN2 the district court dismissed this action *sua sponte,* because it failed "to state a claim on which relief may be granted." (*Id.* at Dkt. Entry No. 3).

> FN1. Defendants assert that the action was "commenced on January 17, 2012." (Dkt. No. 104–10 at 3). However, the complaint is dated December 22, 2011 (Dkt. No. 1 at 13), and, under the prisoner mailbox rule, the document is deemed filed on the date appearing on its face. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993).

> FN2. The district court's order is not available in the electronic PACER system. This court may rely on the docket entries to determine whether PLRA's three strikes limitation applies, so long as they indicate "with sufficient clarity" the grounds under which the prior suit was dismissed. *Harris v. City of New York,* 607 F.3d 18, 23 (2d Cir.2010).

Defendants assert that in addition to that dismissal, plaintiff has acquired six other strikes:

1. *Toliver v. McDonald, et al.,* 92–CV–5982 (S.D.N.Y.);

2. *Toliver v. Fountoulakis,* et al., 07–CV–2496 (S.D.N.Y.);

3. *Toliver v. Dep't of Corrections, et al.,* 07–CV–7672 (S.D.N.Y.);

4. *Toliver v. New York District Attorneys, et al.,* 10–CV–7711 (S.D.N.Y.);

5. *Toliver v. City of New York, et al.,* 10–CV–8375 (S.D.N.Y.); and

6. *Toliver v. New York State, et al.,* 11–CV–4330 (S.D.N.Y.).

(Dkt. No. 104–10 at 5). The court finds that at the time plaintiff filed this complaint, he had not accumulated three or more "strikes" under section 1915(g) and that his action is not subject to dismissal under that provision of the PLRA. FN3

> FN3. The court notes, however, that since the time he filed this action, plaintiff appears to have acquired at least three additional strikes. *See, e.g., Toliver v. City of New York, et al.,* 12–CV–0964 (S.D.N.Y.) (dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii)); *Toliver v. City of New York, et al.,* 12–1855 (2d Cir.) (dismissed as lacking an arguable basis in law or fact); *Toliver v. New York City Dep't of Corrections, et al.,* 12–4992 (2d Cir.) (dismissed as lacking an arguable basis in law or fact).

*Toliver v. McDonald,* et al., 92–CV–5982 (S.D.N.Y.) and *Toliver v. New York State, et al.,* 11–CV–4330 (S.D.N.Y.) were both apparently filed by plaintiff as actions pursuant to 42 U.S.C. § 1983, however, the court considered each to be a petition for a writ of habeas corpus. *See* 92–CV–5982, Dkt. Entry No. 2 (dismissing the complaint "which was treated as a petition for a writ of habeas corpus relief"); 11–CV–4330, Dkt. No. 4 (ordering amendment and noting that plaintiff sought no monetary

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

damages, instead challenging his 2010 conviction), Dkt. No. 6 (dismissing the amended petition for a writ of habeas corpus as premature). The Second Circuit has held that dismissals of habeas petitions filed pursuant to sections 2254 or 2255 cannot constitute strikes for purposes of the PLRA. *Jones v. Smith,* 720 F.3d 142, 147 (2d Cir.2013) ("[D]ismissals of habeas petitions challenging the prisoner's conviction or the duration of his confinement should not be considered strikes for purposes of the PLRA."). Consequently, this court will not consider these dismissals "strikes" because they were considered by the Southern District of New York to be habeas petitions, not civil rights actions.

**\*6** Defendants also argue that the dismissal of *Toliver v. Fountoulakis, et al.,* 07–CV–2496 (S.D.N.Y.) constitutes a strike because the docket sheet states that the complaint was dismissed pursuant to section 1915(e)(2). (Dkt. No. 104–10 at 6). However, as plaintiff correctly observes (Dkt. No. 106 at 5), a review of the Order of Dismissal clarifies that the action was dismissed without prejudice because plaintiff failed to submit a completed Prison Authorization form. 07–CV–2496, Dkt. No. 3 at 2 (attached as Ex. A). Similarly, *Toliver v. Dep't of Corrections, et al.,* 07–CV–7672 (S.D.N.Y.) was dismissed for failure to comply with the filing fee requirements. 07–CV–7672, Dkt. No. 3 (dismissing the action following plaintiff's failure to submit an application to proceed in forma pauperis or pay the filing fee within thirty days of the court's compliance order) (attached as Ex. B). Neither was "dismissed on the grounds that it [was] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). District courts in the Second Circuit have declined to find that a dismissal for failure to prosecute would be considered a strike for purposes of 28 U.S.C. § 1915(g). *See, e.g .,* *McNair v. Kelly,* No. 13 Civ. 728, 2013 WL 4574247, at \*1 (S.D.N.Y. Aug.22, 2013) (finding that dismissals for failure to prosecute and procedural failures did not constitute strikes); *Toliver v. Perri,* No. 10 Civ. 3165, 2011 WL 43461, at \*2–3 (S.D.N.Y. Jan. 6, 2011).

Defendants contend that plaintiff also acquired a strike when *Carrion, et al. v. City of New York, et al.,* 10–CV–8375 was dismissed. (Dkt. No. 104–10 at 7). In response, plaintiff asserts that he did not give authorization for his name to appear in this "class-action." (Dkt. No. 106 at 7). The court has reviewed the application to proceed in forma pauperis, the prisoner authorization form, and the complaint. 10–CV–8375, Dkt. Nos. 1, 2 (attached as Ex. C). There is no indication in any of these documents that plaintiff intended to be a part of that action. *See id.* The complaint identifies Toliver as a plaintiff, but is not signed by Toliver. *Id.* at Dkt. No. 2. Instead, all three documents are completed by Stephen Risi. *Id.* The factual allegations appear to be drafted by Risi and relate to Risi and Carrion, not Toliver. *Id.* Moreover, the Order of Dismissal notes that the action was brought by Risi on behalf of Carrion, and was not signed by Toliver or Carrion. *Id.,* Dkt. No. 3 (attached as Ex. D). Accordingly, the court finds that this action was not brought by plaintiff, and will not consider the dismissal a strike for purposes of section 1915(g).

*Toliver v. New York District Attorneys, et al.,* 10–CV–7711 (S .D.N.Y.) was dismissed as duplicative of another case filed by plaintiff. 10–CV–7711, Dkt. No. 3 (attached as Ex. E). In the Order of Dismissal, the Southern District of New York explained that "no useful purpose would be served by litigating this repeat filing," dismissed it as "duplicative," and directed the Clerk not to collect the filing fee. *Id.* The court also notes that plaintiff asserts that he "personally informed the court of [his] error after realizing [he] submitted this complaint twice accidentally." (Dkt. No. 111 at 8). The court doubts that under these circumstances this dismissal could be considered a strike for purposes of section 1915(g). However, the court does not need to decide this issue because even assuming, arguendo, that it could be considered a strike, it would only be plaintiff's second.

**II. Rule 11**

**A. Legals Standards**

**\*7** Under Rule 11, whenever a signed pleading or "other paper" is submitted to the court, the attorney or pro se litigant certifies, *inter alia,* that:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay ... [and]

(2) the factual contentions have evidentiary support ....

Fed.R.Civ.P. 11(b). In order to justify Rule 11 sanctions, it must appear that the lawyer or pro se litigant "sign[ed] a pleading, motion, or other paper for an improper purpose ... or [did] so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law ...." *Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir.1994).

To comply with Rule 11's procedural requirements, a party must make its motion for sanctions separate from other motions or requests, describe the specific conduct alleged to violate Rule 11(b), provide notice to opposing counsel, and serve the motion at least twenty-one days prior to filing the motion with the court. Fed.R.Civ.P. 11(c)(2); *see also, Langdon v. County of Columbia,* 321 F.Supp.2d 481, 484 (N.D.N.Y.2004); *Kron v. Moravia Central School Dist.,* No. 5:98–CV–1876, 2001 WL 536274, at \*3 (N.D.N.Y. May 3, 2001). The twenty-one day period between notice and filing is referred to as a "safe harbor" because the opposing party may avoid sanctions by withdrawing or correcting the offending material during this period.

The imposition of sanctions is a discretionary decision. *Margo v. Weiss,* 213 F.3d 55, 64 (2d Cir.2000). That discretion should be exercised with caution, and sanctions imposed only when it is patently clear that one has engaged in improper conduct. *Cerrone v. Cahill,* 95–CV–241, 2001 WL 1217186, at \*16 (N.D.N.Y. Sept.28, 2001). Whether conduct is sanctionable is subject to a test of ob-

jective unreasonableness. *Margo,* 213 F.3d at 64–65; *see also, Binghamton Masonic Temple, Inc. v. Bares* 168 F.R.D. 121, 126–27 (N.D.N.Y.1996).

A sanction imposed under Rule 11 must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(b)(4). The court must be mindful that the main thrust of Rule 11 sanctions is deterrence. *Margo,* 213 F.3d at 64–65; *Ehrich v. Binghamton City School District,* 210 F.R.D. 17 (N.D.N.Y.2002). A court has the discretion to dismiss an action with prejudice as a sanction pursuant to Rule 11, although this harsh sanction should be imposed only in extreme circumstances where the court is sure that lesser sanctions will be ineffective. *See, e.g., Safe–Strap Co., Inc. v. Koala Corp.,* 270 F.Supp.2d 407, 417–18 (S.D.N.Y.2003) (collecting cases).

**B. Analysis**

Here, defendants have combined the Rule 11 motion with their motion to revoke plaintiff's in forma pauperis status and conditionally dismiss the action. They do not appear to have provided plaintiff with the twenty-one day safe harbor period. Defendants' motion for sanctions is subject to denial on this procedural basis alone.

**\*8** Turning to the merits, defendants assert that the court should dismiss plaintiff's complaint based on his "material misrepresentations" regarding his litigation history. (Dkt. No. 104–10 at 8). Generally, information about a pro se litigant's previous cases is considered material because it allows the court to determine: (1) if the issues in the case have been previously litigated and decided; (2) if plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g); (3) if plaintiff has a record of frivolous litigation sufficient to warrant a "bar order;" and (4) if plaintiff's litigation experience is so extraordinary that the court need not afford him the special solicitude normally afforded to *pro se* litigants. *Bell v. Lasacelli,* No. 08–CV–0287A, 2009 WL 1032857, at \*3 (W.D.N.Y.Apr.13, 2009) (citation omitted).[FN4]

FN4. Although defendants contend that the court granted plaintiff's in forma pauperis application based, at least in part, on plaintiff's misrepresentations (Dkt. No. 104–10 at 3), it is clear that the court undertook its own review and analysis of plaintiff's litigation history. (*See* Dkt. No. 9 at 3).

In his complaint and amended complaint, plaintiff admitted that he has filed lawsuits in the past, and identified seven that were filed in 2010 and 2011. (Compl. at 9, 14; Am. Compl., at 10, 15). As noted above, plaintiff has a far more extensive litigation history than the seven actions identified in his complaint. Although the form asks for a description of all prior lawsuits, and the court does not condone the omission, the court does not find plaintiff's failure to list all of his prior lawsuits so unreasonable as to require the imposition of sanctions.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 104) be **DENIED,** and it is further

**RECOMMENDED,** that defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (Dkt. No. 104) be **DENIED,** and it is further

**RECOMMENDED,** that if the District Court adopts this recommendation, the defendants be ordered to answer or otherwise respond to plaintiff's amended complaint (Dkt. No. 27) within twenty-one (21) days of the District Court's order.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2014.
Toliver v. Fischer
Slip Copy, 2014 WL 411569 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



c

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Andre DOLBERRY, Plaintiff,
v.
Correction Officer JAKOB, et al., Defendants.

No. 9:11–CV–1018 (DNH/DEP).
Signed March 28, 2014.

Andre Dolberry, Fishkill, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Adele Taylor–Scott, Esq., Ass't Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Pro se plaintiff Andre Dolberry, who is also sometimes known as Andre Duberry, brought this action pursuant to 42 U.S.C. § 1983. On February 28, 2014, the Honorable David E. Peebles, United States Magistrate Judge, advised by Report–Recommendation that plaintiff's motion for summary judgment be denied, and that plaintiff's complaint in this action be dismissed based upon his material misrepresentation to the court, under oath, that he has not brought any prior actions relating to his imprisonment. Plaintiff timely filed objections to the Report–Recommendation.

Based upon a de novo review of the portions of the Report–Recommendation to which plaintiff objected, the Report–Recommendation is accepted and adopted in all respects. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's motion for summary judgment is DENIED;

2. Plaintiff's complaint is DISMISSED in its entirety based upon his material misrepresentations to the court and abuse of the litigation process; and

3. Defendants' motion for summary judgment is DENIED as moot.

The Clerk is directed to serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Andre Dolberry, who is also sometimes known as Andre Duberry and has an extensive litigation history, has commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants deprived him of his civil rights while he was incarcerated in a state prison facility. In his complaint, plaintiff alleges that he was issued false misbehavior reports in retaliation for exercising his First Amendment rights, he was threatened and harassed by corrections officials, his rights to procedural due process and equal protection were violated, and the superintendent of the facility, though not directly involved, was complicit in all of those violations.

Currently pending before the court in connection with the action are cross-motions for summary judgment. For the reasons set forth below, I recommend that plaintiff's motion for summary judgment be denied, and that plaintiff's complaint in this action be dismissed based upon his material misrepresentation to the court, under oath, that he has not brought any prior actions relating to his imprisonment.

### I. BACKGROUND[FN1]

> FN1. Ordinarily, when a motion for summary judgment is made, the record before the court is construed with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003). In this case, in light of the parties'

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

cross-motions for summary judgment, the court draws "all factual inferences ... against the party whose motion is under consideration." *Tindall v. Poultney High Sch. Dist.,* 414 F.3d 281, 284 (2d Cir.2005) (quotation marks omitted).

Although plaintiff is currently confined elsewhere, his claims in this action arise from his previous incarceration in the Coxsackie Correctional Facility ("Coxsackie"), a prison operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally Dkt. No. 1.*

Plaintiff's complaint asserts claims against defendant Glenn Saltsman, a corrections officer at Coxsackie, based upon two separate incidents. The first involved a complaint by an unnamed inmate who reported to defendant Saltsman, on July 5, 2005, that he was being threatened by the plaintiff. *Dkt. No. 45–16 at 1; Dkt. No. 45–21.* Following an investigation by the area supervisor, Sargeant Melendez, who is not a named defendant in this action, defendant Saltsman issued a misbehavior report to plaintiff charging him with violating a prison rule prohibiting inmates from making threats. *Dkt. No. 45–16 at 2; Dkt. No. 45–17; Dkt. No. 45–21 at 22 .* Defendant Christopher McDermott, a corrections lieutenant employed by the DOCCS, presided over a Tier II disciplinary hearing, held on July 14, 2009, stemming from that misbehavior report.[FN2] *Dkt. No. 45–19 at 4; Dkt. No. 45–21 at 2.* Following the hearing, at which plaintiff was given the opportunity to call witnesses and testify on his behalf, plaintiff was found guilty of threatening another inmate.[FN3] *Dkt. No. 45–19 at 4; Dkt. No. 45–21 at 14,* 19. As a result of that finding, defendant McDermott sentenced plaintiff to serve thirty days of keeplock confinement, with a corresponding loss of certain privileges.[FN4] *Dkt. No. 45–19 at 4; Dkt. No. 45–21 at 14,* 19.

FN2. The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace,* 143 F.3d 653, 655 n. 1 (2d Cir.1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recre-

ation privileges. *Hynes,* 143 F.3d 655 n. 1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the facility's special housing unit ("SHU"). *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

FN3. Plaintiff requested that several witnesses be called to testify on his behalf; all of them refused to testify. *Dkt. No. 45–21 at 11–12.* Similarly, defendant McDermott offered plaintiff an opportunity to testify, but plaintiff refused. *Id.* at 12.

FN4. "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *accord, Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998); *Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at \*2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998).

**\*2** The second incident involving defendant Saltsman occurred on August 20, 2009, while the corrections officer was making routine rounds at the facility. *Dkt. No. 45–16 at 2.* According to defendant Saltsman, after observing that plaintiff had placed a towel over his lamp, creating a potential fire hazard, he ordered Dolberry to remove the towel. *Id.* at 3. Plaintiff responded by stating, " 'This is my cell, I'll keep it the way I want.' " *Id* . Defendants maintain plaintiff complied

Slip Copy, 2014 WL 1292225 (N.D.N.Y.)
**(Cite as: 2014 WL 1292225 (N.D.N.Y.))**

with defendant Saltsman's request only after he was given two additional direct orders. *Id.* Based upon that incident, defendant Saltsman issued plaintiff a misbehavior report accusing Dolberry of violating three prison rules, including creating a fire hazard, disobeying a direct order, and failing to maintain orderliness of his living quarters. *Id.; Dkt. No. 45–18; Dkt. No. 1 at 14.* There is no record regarding the results of any disciplinary hearing that may have occurred following the issuance of that misbehavior report.

According to defendant Saltsman, at the time both of those misbehavior reports were written, he was not aware of the fact that plaintiff had filed grievances or complaints against him. *Dkt. No. 45–16 at 3.*

Plaintiff's claims against defendant John Jakob, another corrections officer at Coxsackie, center around several misbehavior reports issued to Dolberry by that defendant between June and October of 2009. *See generally Dkt. No. 1; Dkt. No. 45–11 at 2.* The first of those was issued on July 3, 2009, charging plaintiff with violating several facility rules, by disobeying a direct order, being out of place, making a false statement, making threats, and committing a movement violation. *Dkt. No. 45–11 at 3; Dkt. No. 45–20 at 2, 3, 13.* According to defendant Jakob, that misbehavior report was issued based upon Dolberry's refusal to line up properly following an evening meal on July 3, 2009, and lying about not being in the proper order. *Dkt. No. 45–11 at 3; Dkt. No. 45–20 at 13.* Plaintiff alleges that the misbehavior report was issued in retaliation for having filed "grievance complaints on staff on 6/3/09." *Dkt. No. 1 at 12.* Defendant Jakob maintains that, at the time he issued the misbehavior report dated July 3, 2009, he had no knowledge of plaintiff having submitted any written complaints against him. *Dkt. No. 45–11 at 3.* On July 10, 2009, defendant McDermott conducted a Tier II disciplinary hearing to address the charges contained in the July 3, 2009 misbehavior report. *Dkt. No. 45–19 at 2; Dkt. No. 45–20 at 2–7.* Defendant McDermott dismissed the charge of making threats immediately upon commencing the hearing. *Dkt. No. 45–20 at 3.* Plaintiff was permitted to, and did, testify on his behalf, and he was given an opportunity to call witnesses. *Id.* at 3–6. At the

conclusion of the hearing, defendant McDermott found plaintiff not guilty of disobeying a direct order and providing a false statement. *Id.* at 6, 10. Plaintiff was found guilty, however, of being out of place and a movement violation. *Id.* Defendant McDermott sentenced plaintiff to twenty days loss of privileges, although the sanction was suspended for sixty days. *Id.* at 6–7, 10.

**\*3** A second misbehavior report was issued to plaintiff by defendant Jakob on August 23, 2009, accusing Dolberry of additional prison rule infractions, including disobeying a direct order, failing to maintain orderliness of his living quarters, and harassment. *Dkt. No. 45–11 at 3; Dkt. No. 46–2 at 18.* That misbehavior report was issued after defendant Jakob ordered plaintiff to remove his locker from the top of plaintiff's desk, and, in response, plaintiff said, " 'I'll do what I want. I'm suing your white ass.' " *Dkt. No. 45–11 at 3; DKt. No. 46–2 at 18; see also Dkt. No. 1 at 17.* A Tier II disciplinary hearing was conducted regarding that misbehavior report on September 3, 2009, by Lieutenant Meigs, a DOCCS employee. *Dkt. No. 46–2 at 2–12.* At the hearing, plaintiff was permitted to testify in his defense, but refused an opportunity to call any witnesses on his behalf. *Id.* at 5–6. At the conclusion of the hearing, Lieutenant Meigs found plaintiff guilty of disobeying a direct order, but not guilty on the other charges. *Id.* at 6, 15. As a sanction, plaintiff was sentenced to fifteen days loss of privileges. *Id.*

A third misbehavior report was issued by defendant Jakob to the plaintiff, on September 1, 2009, charging him with being out of place and failing to comply with the disciplinary sanction, in violation of prison rules. FN5 *Dkt. No. 45–11 at 4; Dkt. No. 45–15; Dkt. No. 45–22 at 11.* That misbehavior report, which plaintiff characterizes as "bogus," *Dkt. No. 1 at 17,* was issued based upon defendant Jakob's belief that plaintiff had attended outside recreation despite having been previously issued a disciplinary sanction that included loss of recreation during that period. *Dkt. No. 45–11 at 3–4; Dkt. No. 45–15; Dkt. No. 45–22 at 11.* On September 11, 2009, defendant McDermott conducted a Tier II disciplinary hearing related to that misbehavior report. *Dkt.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*No. 45–19 at 4; Dkt. No. 45–22 at 2–5.* Plaintiff testified in his defense but declined an opportunity to call any witnesses. *Dkt. No. 45–22 at 4.* Defendant McDermott found plaintiff guilty on both charges, and sentenced him to fourteen days keeplock confinement and a loss of certain privileges. *Id.* at 4, 8.

> FN5. The copy of this misbehavior report attached as Exhibit D to defendant Jakob's declaration does not include a charge for being out of place. *Dkt. No. 45–15.* Another copy of that same misbehavior report attached as Exhibit C to defendant McDermott's declaration, however, includes the out-of-place charge. *Dkt. No. 45–22 at 11.* A review of the complete disciplinary packet arising from this misbehavior report reveals that defendant Jakob did, in fact, charge plaintiff with being out of place, and defendant McDermott found plaintiff guilty of the charge. *See generally Dkt. No. 45–22.* The discrepancy between the two copies in the record has not been explained by defendants.

A fourth misbehavior report was authored by defendant Jakob on or about October 9, 2009, accusing plaintiff of threatening Jakob and his family. *Dkt. No. 45–11 at 4; Dkt. No. 45–25 at 4.* Plaintiff alleges that this misbehavior report was fabricated and retaliatory. *Dkt. No. 1 at 18.* That misbehavior report resulted in a Tier III disciplinary hearing, conducted by defendant Eric Gutwein, a DOCCS hearing officer, on October 15, 2009. *Dkt. No. 45–24 at 2; Dkt. No. 45–25 at 1–3.* Following the hearing, defendant Gutwein found the plaintiff guilty of making threats and engaging in violent conduct, and sentenced him to serve a period three months of disciplinary confinement in the facility's special housing unit ("SHU"), to commence on October 23, 2009.[FN6] *Dkt. No. 45–24 at 3; Dkt. No. 45–25 at 1.* That determination was subsequently reversed, however, by the DOCCS central office based upon a procedural error, and plaintiff was released from SHU confinement on November 12, 2009, after serving only twenty-one days of disciplinary confinement. *Dkt. No. 45–24 at 3; Dkt. No. 45–26 at 2; Dkt. No. 45–27.*

> FN6. In New York, SHU cells are utilized for

segregating prisoners from general population areas for various reasons including, predominantly, disciplinary purposes. *Lee v. Coughlin,* 26 F.Supp.2d 615, 618 (S.D.N.Y.1998) (citing 7 N.Y.C.R.R. §§ 253, 254 301). The conditions typically experienced by inmates confined in an SHU include two showers per week; one hour of outdoor exercise per day; unlimited legal visits; one non-legal visit per week; access to counselors; access to sick call; cell study programs; and access to library books. *Husbands v. McClellan,* 990 F.Supp. 214, 218 (W.D.N.Y.1998) (citing 7 N.Y.C.R.R. § 304).

## II. *PROCEDURAL HISTORY*

**\*4** Plaintiff commenced this action on August 25, 2011, in the Western District of New York. *Dkt. No. 1.* The action was subsequently transferred to this district, and plaintiff was thereafter granted leave to proceed *in forma pauperis.*[FN7] Dkt. Nos. 3, 4, and 5. Plaintiff's complaint, as modified by the court's initial order, *Dkt. No. 5,* names, as defendants, Corrections Officers Jakob, Saltsman, and Silverman; Coxsackie Superintendent Martuscello; Acting Superintendent Gutwein; and Corrections Lieutenant McDermott. *See generally Dkt. No. 1.* In it, plaintiff asserts causes of action for the deprivation of procedural due process and equal protection, in violation of the Fourteenth Amendment; unlawful retaliation, in violation of First Amendment; denial of court access, in violation of the First, Fifth, and Fourteenth Amendments; and cruel and unusual punishment, in violation of the Eighth Amendment. *Id.*

> FN7. Fortuitously, plaintiff filed his complaint in this action between two periods of incarceration. Had plaintiff been an inmate when the action was commenced, it appears likely, based upon his litigation history, that he would not have qualified for IFP status in light of the three strikes provision of 28 U.S.C. § 1915(g). *See* Part III.A. of this report, *post.*

On March 25, 2013, following the close of discovery, plaintiff moved for the entry of summary judgment in his favor. *Dkt. No. 37 .* On May 20, 2013, defendants submitted their opposition to that motion, and simultan-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

eously filed a cross-motion for summary judgment seeking dismissal of plaintiff's complaint on a variety of grounds. Dkt. Nos. 44–47. Plaintiff has since responded in opposition to defendants' cross-motion. *Dkt. No. 49.* The parties' cross-motions for summary judgment are now ripe for determination, and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

A. *Plaintiff's Material Misrepresentation to the Court*

In his complaint, which was filed utilizing a pre-printed form from the Western District of New York intended for use in civil rights actions brought under 42 U.S.C. § 1983, plaintiff was asked the following question: "Have you begun any other lawsuits in federal court which relate to your imprisonment?" *Dkt. No. 1 at 3.* In response, defendant answered, "No." *Id.* That answer is demonstrably false. By the time plaintiff had commenced this action, he had already developed a robust inmate litigation history, having filed at least seven cases in this circuit, six of which were dismissed, upon initial review, as frivolous or for failure to state a cause of action, pursuant to 28 U.S.C. § 1915(e)(2).[FN8]

> FN8. According to the Federal Judiciary's Public Access to Court Electronic Records ("PACER"), plaintiff has filed the following seven cases in district courts within this circuit prior to filing the case now before the court: (1) *Dolberry v. Levine,* No. 06–CV–6452, *Dkt. No. 8 at 15* (W.D.N.Y. filed Sept. 7, 2006) (dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A); (2) *Dolberry v. Levine,* No. 02–CV–6418, *Dkt. No. 368* (W.D.N.Y. filed Aug. 6, 2002) (settled for $3,300.00); (3) *Dolberry v. Dutchess Cnty. Jail,* No. 99–CV–5774, *Dkt. No. 3* (S.D.N.Y. filed July 21, 1999) (dismissed pursuant to 28 U.S.C. § 1915(d), the predecessor to section 1915(e)(2)(B)); (4) *Dolberry v. Fernandez,* No. 99–CV–2235, *Dkt. No. 3* (S.D.N.Y. filed Mar.

25, 1999) (dismissed because the complaint "lack[ed] an arguable basis either in law or in fact" pursuant to 28 U.S.C. § 1915(e) (2)); (5) *Dolberry v. Dutchess Cnty. Jail,* No. 99–CV–1088, Docket Entry Dated May 26, 1999 (S.D.N.Y. filed Feb. 16, 1999) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (6) *Dolberry v. Dutchess Cnty. Jail,* No. 99–CV–1087, *Dkt. No. 5* (S.D.N.Y. filed Feb. 16, 1999) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (7) *Dolberry v. Fernandez,* No. 98–CV–8572, Dkt. No. 3 (S.D.N.Y. filed Dec. 4, 1998) (dismissed pursuant to 28 U.S.C. § 1915(d), the predecessor to section 1915(e) (2)(B)).

In failing to disclose his prior litigation history, plaintiff provided misinformation to the court regarding a material issue. As one of my former colleagues has noted regarding the materiality of an inmate-plaintiff's prior litigation history,

> [g]enerally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purpose of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned 'three strikes' for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a 'bar order' (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a 'vexatious' litigator pursuant to 28 U.S .C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

**\*5** *Chavis v. Curlee,* No. 06–CV–0049, 2008 WL 508694, at \*10 (N.D.N.Y. Feb. 21, 2008) (Kahn, J., *adopting report and recommendation by* Lowe, M.J.).[FN9] While the second of those four articulated rationales

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

does not apply in the case because plaintiff was not a prison inmate when this suit was commenced, the remaining three are valid considerations in this action given plaintiff's history. Plaintiff's failure to truthfully answer the inquiry concerning his prior litigation history represents a fraud upon the court, and a violation of his obligations under Rule 11 of the Federal Rules of Civil Procedure.FN10

> FN9. All unreported decisions cited to in this report have appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

> FN10. That rule provides, in pertinent part, as follows:

>> (b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: ...

>> (3) the factual contentions have evidentiary support or, if specifically so identified, would likely have evidentiary support after a reasonable opportunity and further investigation or discovery[.]

> Fed.R.Civ.P. 11(b).

*Pro se* litigants, like any others, are subject to the strictures of Rule 11, and may properly be sanctioned for making material misrepresentations to the court. *See, e.g., Manwani v. Brunelle,* No. 95–6080, 1995 WL 732686, at *2 (2d Cir. Dec. 8, 1995) (unpublished) (affirming district court's Rule 11 sanctions issued against a *pro se* litigant). In view of plaintiff's gross and cavalier misrepresentation concerning his litigation history in this and other actions he has filed in this circuit, the imposition of sanctions is clearly warranted.FN11

> FN11. In this action, in addition to his initial

disclaimer regarding his litigation history, plaintiff has persisted with the assertion that he has no litigation history, including through his denial of defendants' factual assertion, set forth in their local rule 7.1(a)(3) statement of undisputed material facts, that "Plaintiff has filed numerous actions in the United States District Courts, and is a practiced litigator." *Compare Dkt. No. 45–2 at 1 with Dkt. No. 49 at 8.* Moreover, even after filing this action, which unequivocally complains of conditions of prison confinement, plaintiff has continued to falsely represent to district courts in this circuit that he has never filed any actions related to his imprisonment. *See, e.g., Dolberry v. Martin,* No. 13–CV–1539, *Dkt. No. 1 at 2* (N.D.N.Y. filed Nov. 19, 2013) (maintaining, in his complaint, that he "has filed no other lawsuit dealing with the same facts involved in this action *or otherwise relating to his imprisonment*" (emphasis added)); *Dolberry v. Martin,* No. 13–CV–1529, *Dkt. No. 2 at 5* (N.D.N.Y. filed Nov. 19, 2013) (answering "[n]o" to the question in the verified complaint asking, "Have you ever filed any other lawsuits in any state or federal court relating to your imprisonment?").

In their motion, defendants request that the court sanction plaintiff, due to his misrepresentations, by dismissing the complaint in this action. *Dkt. No. 46–8 at 23–25.* I note, however, that defendants have failed to provide plaintiff with the twenty-one day safe harbor period called for in Rule 11(c)(2), a failure that would, on its own, warrant denial of the motion. *See Fierro v. Gallucci,* 423 F. App'x 17, 18–19 (2d Cir.2011) (finding that the district court "was required to deny plaintiff's motion for sanctions for failure to comply with the 21–day 'safe harbor,' which requires Rule 11 motions be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims"). The court, however, is permitted under Rule 11 to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." Fed.R.Civ.P. 11(c)(1); *see also* Fed.R.Civ.P. 11(c)(3) ("On its own, the court may order

a[ ] ... party to show cause why conduct specifically described in the order has not violated Rule 11(b).")." The Second Circuit has held that, to impose sanctions *sua sponte,* courts must first find subjective bad-faith on the party to be sanctioned. *In re Pennie & Edmonds LLP,* 323 F.3d 86, 90 (2d Cir.2003).FN12

> FN12. *Pennie & Edmonds LLP* specifically addressed "the applicable *mens rea* standard when a trial judge, *sua sponte,* initiates a post-trial Rule 11 sanction proceeding because a lawyer permitted a client to submit a false affidavit at an earlier stage of the litigation." *Pennie & Edmonds,* 323 F.3d at 87. District courts in this circuit have routinely held, post-*Pennie & Edmonds LLP,* however, that the holding of that case is broad enough to apply to sanction proceedings in pre-trial circumstances. *See, e.g., In re Hudson,* No. 10–CV–1352, 2011 WL 867989, at *5 n .5 (N.D.N.Y.2011) (Scullin, J.) (citing *TVT Records v. Island Def Jam Music Group,* 447 F.Supp.2d 311, 314–15 (S.D.N.Y.2006)) (finding that the "holding in *Pennie & Edmonds* is sufficiently broad to govern the ... instant case * * * where, as here, the attorney personally submitted a false or misleading filing and the court, *sua sponte,* initiated a pre-trial Rule 11 sanction proceeding"); *Castro v. Mitchell,* 727 F.Supp.2d 302, (S.D.N.Y.2010) (applying *Pennie & Edmonds LLP* when considering whether to issue *sua sponte* pre-trial sanctions; *see also Muhammad v. Walmart Stores East, L.P.,* 732 F.3d 104, 108–09 (2d Cir.2013) (reviewing a district court's imposition of pre-trial Rule 11 sanctions under the bad-faith standard set forth in *Pennie & Edmonds LLP* ).

In this case, in light of plaintiff's chronicled history of unabashed misstatements to this and other courts, I find that those misstatements were made in bad faith, and that dismissal of his complaint is warranted.FN13 *See Elijah Bell v. Lasaceli,* No. 08–CV–0278, 2009 WL 1032857, at *4 (W.D.N.Y. Apr. 15, 2009) ("Because Plaintiff has repeatedly misrepresented his litigation

history to the Court ..., the Court finds that he has violated Fed.R.Civ.P. 11 and therefore, this action will dismissed, in the alternative, on that basis."); *Chavis,* 2008 WL 508694, at *11 (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint); *see also Muniz v.. Goord,* No. 04–CV–0479, 2007 WL 2027912, at *6 n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint (collecting cases)); *see also Hoskins v. Dart,* 633 F.3d 541, 543 (7th Cir.2011) (affirming district court's dismissal of the appellant's case as a sanction for failing to accurately disclose his litigation history); *Greer v. Schriro,* No. 06–15537, 2007 WL 4163413 (9th Cir.2007) ("The district court did not abuse its discretion in dismissing Greer's action, because she failed to adequately explain misrepresentations, made under penalty of perjury, about her previous litigation history."); *Mathis v. Smith,* 181 F. App'x 808, 810 (11 th Cir.2006) (finding no abuse of discretion by the district court where it dismissed the plaintiff's case in light of his dishonesty); *Joiner v. Delo,* 905 F.2d 206, 208 (8th Cir.1990) (affirming district court's rule 11 dismissal of plaintiff's claims in light of the plaintiff's "blatant misrepresentation of the circumstances of his medical treatment").

> FN13. The gamesmanship demonstrated by plaintiff's false representation to the court regarding his litigation history in his action does not appear to be isolated. Three examples are illustrative. First, plaintiff has identified himself at various times as Andre Dolberry and Andre Duberry. In his most recent DOCCS incarceration at Coxsackie, plaintiff was listed as Andre Duberry, under department identification number ("DIN") 08–A–0273. Publically available records, however, reflect that he was previously confined on three separate occasions with the DOCCS under the name Andre Dolberry in 2003 (DIN 03–A–3611), 1999 (DIN

99–A–4612) and 1992 (DIN 92–R–1828). *See* http://nysdoccslookup/doccs.ny.gov (last visited on February 28, 2014). A screenshot of that website is included in this report and recommendation as Attachment A.

As a second example, the court notes that plaintiff's most recent actions filed in this district, Nos. 13–CV–1329, 13–CV–1359, assert identical causes of action (excessive force and failure to protect) against the same six defendants, one of whom is identified by name, the other five identified as "John Doe." *See generally Martin,* No. 13–CV–1529, *Dkt. No. 2;Martin,* No. 13–CV–1539, *Dkt. No. 1.*

By way of a third example, plaintiff's response, pursuant to local rule 7.1(a)(3), to defendants' statement of material facts in this action is haphazard, unsupported, and in violation of the requirements under the pertinent rule. With few exceptions, plaintiff's denials fail to cite record evidence, as required by rule 7.1(a)(3). *Dkt. No. 49 at 8–10.* His responsive statement sets forth objections without explanations. *Id.* Most notably, however, he denies certain fundamental facts that are clearly undisputed. *Id.* For example, he denies defendants' factual assertion that "[a]ll of the events alleged in the complaint occurred while plaintiff was incarcerated with the [DOCCS]." *Compare Dkt. No. 45–2 at 1 with Dkt. No. 49 at 8.* Similarly, plaintiff denies such non-controversial assertions as "all of the events alleged in the complaint occurred at the Coxsackie Correctional Facility between June and November of 2009." *Id.* Plaintiff additionally denies that the complaint in this action was filed after his release from incarceration, another seemingly noncontroversial fact. *Compare Dkt. No. 45–2 at 2 with Dkt. No. 49 at 8.*

**B.** *The Parties' Cross–Motions for Summary Judgment*
**\*6** Notwithstanding my recommendation that

plaintiff's complaint be dismissed due to his repeated dishonesty with the court, I have analyzed the parties' cross-motions for summary judgment below in the event that recommendation is not adopted.

1. *Legal Standard Governing Motions for Summary Judgment*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

2. *Plaintiff's Motion for Summary Judgment*

Plaintiff has moved for summary judgment in his favor. *Dkt. No. 37.* Plaintiff's motion, however, reflects a fundamental misunderstanding of the law of summary judgment. In his memorandum, Dolberry makes the following statements:

> [T]here exists a genuine issue of material facts [sic] to whether C.O. Jakob's false disciplinary tickets for threats against Dolberry was in retaliation, C.O. Saltsman['s] tickets were in retaliation, and Supt. Martuscello ignored Dolberry's complaints for months ....

> **\*7** It cannot be argued here the facts are well established and settled[.]

*Dkt. No. 37–1 at 2.* Because plaintiff does not argue, nor has he established, that no genuine disputes of material fact exists for a factfinder at trial, he has failed to sustain his burden under Rule 56. Accordingly, I recommend that plaintiff's motion for summary judgment be denied.

3. *Defendants' Motion for Summary Judgment*

i. *Plaintiff's Procedural Due Process Claim*

Among the claims asserted by the plaintiff is a procedural due process cause of action against defendants McDermott and Gutwein. *Dkt. No. 1 at 21–24.* That claim appears to stem from five Tier II or Tier III disciplinary hearings conducted by those defendants, the details of which are listed below.FN14

> FN14. A sixth disciplinary hearing is disclosed the record, which occurred in connection with a misbehavior report issued to plaintiff by defendant Jakob on August 23, 2009. *See generally Dkt. No. 46–2.* Plaintiff, however, does not assert any causes of action arising from that hearing or against the hearing officer, Lieutenant Meigs, who is not a named defendant in this action. *See generally Dkt. No. 1.*

| Hearing Date | Type | Hearing Officer | Sanction |
|---|---|---|---|
| 7/10/09 | Tier II | Defendant McDermott | 20 days loss of packages, commissary, telephone, and recreation privileges, initially suspended but later reinstated based upon a subsequent adverse hearing determination within 60 days of that disposition |
| 7/14/09 | Tier II | Defendant McDermott | 30 day of keeplock confinement, with a corresponding loss of commissary, telephone, and package privileges |
| 9/11/09 | Tier II | Defendant McDermott | 14 days of keeplock confinement, with a corresponding loss of packages, commissary, telephone, and recre- |

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | | | ation privileges |
| --- | --- | --- | --- |
| 10/15/09 | Tier II | Defendant McDermott | 30 days of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges |
| 10/15/09–10/23/09 | Tier III | Defendant Gutwein | Three months of SHU confinement.[15] |

FN15. That determination was later reversed on appeal on procedural grounds. *See Dkt. No. 45–24 at ¶¶ 14–15* and Exh. B. As a result of that reversal, plaintiff spent only twenty-one days in SHU confinement. *See id.* Exh. C.

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483–84; *Tellier,* 280 F.3d at 79–80; *Hynes,* 143 F.3d at 658. By its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004) (citing *Welch v. Bartlett,* 196 F.3d 389, 394 n. 4 (2d Cir.1999)). The issue, then, is whether the allegations related to the conditions of plaintiff's keeplock and SHU confinement rise to the level of an atypical and significant hardship.

**\*8** Atypicality in a *Sandin* inquiry is normally a

question of law .[FN16] *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). "[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker,* 139 F.3d 329, 336 (2d Cir.1998) (citing *Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997)). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a court may not need to undergo a detailed analysis of these considerations. *Arce,* 139 F.3d at 336; *Hynes,* 143 F.3d at 658.

FN16. In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230–31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999).

In this case, to the extent that plaintiff's due process claim centers around his confinement in keeplock or the SHU, the lengths of time he spent in either one as a result of a sanction imposed by defendants McDermott and Gutwein are insufficient to give rise to a liberty interest implicating a prisoner's due process rights.[FN17] The Second Circuit has made clear that disciplinary confinements of fewer than 101 days and not involving extraordinary circumstances do not constitute atypical and significant hardships. *Palmer v. Richards,* 364 F.3d 60, 65 (2d Cir.2004) (citing *Sealey,* 197 F .3d at 589). Here, plaintiff's disciplinary confinements, none of which involved anything but "normal" circumstances, endured for no more than thirty days in keeplock and twenty-one days in the SHU confinement beginning on October 23,

2009, and ending on November 12, 2009. *Dkt. No. 45–24 at 3; Dkt. No. 45–27.* Accordingly, I find that no genuine dispute of material fact exists regarding whether plaintiff's liberty interests were violated, thus implicating his procedural due process rights. *See Palmer,* 364 F .3d at 65–66 ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." (citing *Arce,* 139 F.3d at 335–36; *Hynes,* 143 F.3d at 658–59; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996)). Accordingly, I recommend that plaintiff's due process claim asserted against defendants McDermott and Gutwein be dismissed without examining the sufficiency of the procedural safeguards afforded to him.

> FN17. The court recognizes that the Second Circuit has made "clear that duration [of the confinement] is not the only relevant factor." *Ortiz v. McBride,* 323 F.3d 191, 195 (2d Cir.2003). In this case, however, although plaintiff's allegations with respect to his due process claim against defendants McDermott and Gutwein are not entirely clear, I have not discerned any allegations in plaintiff's complaint suggesting that plaintiff's keeplock or SHU confinement involved constitutionally inadequate conditions of confinement. For that reason, I have analyzed only whether the duration of his confinement implicates a liberty interest.

ii. *Plaintiff's Cruel and Unusual Punishment Claims*

Throughout plaintiff's complaint are allegations that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Although this is anything but clear, it appears that the claim is centered around (1) the actions of defendant Jakob, who allegedly subjected plaintiff to threats, abuse, and harassment; (2) the twenty-one day period of SHU confinement imposed by defendant Gutwein; and (3) the denial by defendant Silverman, another corrections officer stationed at Coxsackie, of a food tray on one occasion.

a. *Eighth Amendment Principles Generally*

**\*9** The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or 'involve[s] the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73 (1976) (citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both objective and subjective requirements. *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996). As to the objective prong, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.' " *Jolly,* 76 F.3d at 480 (quoting *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.2985)); *see also Walker v. Schult,* 717 F.3d. 119, 125 (2d Cir.2013) ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). To meet the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly,* 76 F.3d at 480 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at \*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837; *see also Waldo,* 1998 WL 713809, at \*2; *Davidson,* 920 F.Supp. at 308.

b. *Threats and Harassment*

Central to the cruel and unusual claims asserted by

the plaintiff in this action is his contention that he was subjected to threats and abuse by defendant Jakob. *See generally Dkt. No. 1.* Defendants seek dismissal of those claims. *Dkt. No. 46–8 at 15.* Because it is well settled in this circuit that mere verbal threats and harassment not resulting in physical injury do not give rise to an Eighth Amendment violation, I recommend that this claim be dismissed. *See Felder v. Fillion,* 368 F. App'x 253, 256 (2d Cir.2010) ("The allegation that [the defendant] threatened [the plaintiff] verbally was not a sufficient basis for a claim of Eighth Amendment violation because [the plaintiff] did not present evidence of any injury resulting from those threats." (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)).

### c. *SHU Confinement*

**\*10** Plaintiff's Eighth Amendment claim asserted against defendant Gutwein stems from Gutwein's imposition of a thirty-day disciplinary SHU confinement. As was noted above in connection with plaintiff's due process claim, he has not alleged, nor has he presented evidence suggesting, that the conditions of confinement in the SHU were constitutionally inadequate. In other words, there is nothing in the record to give rise to a dispute of material fact regarding whether the disciplinary confinement was, objectively, sufficiently serious, or that, subjectively, defendant Gutwein exhibited deliberate indifference to plaintiff's health or safety. *Farmer,* 511 U.S. at 834. Accordingly, I recommend that plaintiff's Eighth Amendment claim against defendant Gutwein be dismissed.

### d. *Denial of Food*

Another component of plaintiff's Eighth Amendment claim is his contention that he was denied a meal on one isolated occasion by defendant Silverman. *Dkt. No. 1 at 27.* Courts in this circuit have routinely held, however, that the denial of a single meal is constitutionally *de mininis,* and insufficient to support an Eighth Amendment claim. *Rush v. Fischer,* 923 F.Supp.2d 545, 555–56 (S.D.N.Y.2013) (citing *Hankerson v. Nassau Cnty. Corr. Facility,* No. 12–CV–5282, 2012 WL 6055019, at \*3 (E.D.N.Y. Dec. 4, 2012); *Scarbrough v. Evans,* No. 11–CV–0131, 2012 WL 4364511, at \*5 (N.D.N.Y. May 17, 2012) (Homer, M.J.), *report and re-*

*commendation adopted by* 2012 WL 4350792 (Mordue, J.)). I therefore recommend dismissal of this claim against defendant Silverman.

### iii. *Plaintiff's Denial of Access to the Courts Claim*

In his complaint, plaintiff alleges that defendant Jakob's issuance of misbehavior reports to him effectively denied him access to the courts. *Dkt. No. 1 at 9,* 11, 12, 13, 26. Defendants seek dismissal of this claim based on the fact that there is nothing in the record from which a reasonable factfinder could conclude that plaintiff suffered any prejudice in his lawsuits due to defendant Jakob's issuance of misbehavior reports. *Dkt. No. 46–8 at 17–18.*

Undoubtedly, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith,* 430 U.S. 817, 824 (1977); *accord, Lewis v. Casey,* 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts."* (emphasis in original)). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents, or file them [.]" *Lewis,* 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to the courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis,* 320 F.3d at 351. Second, plaintiff must demonstrate that he suffered an actual injury. *Id.*

**\*11** In this case, there is insufficient record evidence to give rise to a genuine dispute of fact regarding either element of a court-access claim. One of the two lawsuits referenced in plaintiff's complaint is No. M–75662, which was pending in the New York State courts at the time defendant Jakob issued a misbehavior report to plaintiff on October 9, 2009. *Dkt. No. 1 at 13.* Publically available records regarding that case reveal that the only defendant named in that case was the State of New York. *Dolberry v. State,* 71 A.D.3d 948 (2d Dep't 2010). Accordingly, without more, I conclude that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

there is nothing in the record to support the implicit suggestion by the plaintiff that, at the time defendant Jakob issued that misbehavior ticket to plaintiff, he knew plaintiff had a lawsuit pending. Similarly, plaintiff references a case "02CV6418," which corresponds to one of plaintiff's civil rights lawsuits filed in the United States District Court for the Western District of New York. *Dolberry v. Levine,* No. 02–CV–6418 (W.D.N.Y. filed Aug. 6, 2002). Plaintiff has not explained how he suffered any prejudice in connection with that lawsuit, and it is unclear to the court based on publically available records how he suffered prejudice. Indeed, plaintiff settled with the defendants in that case for $3,300.00. *Levine,* No. 02–CV–6418, Dkt. No. 368 (W.D.N.Y.). It is also worth noting that there is nothing in the record to suggest that defendant Jakob, who is not a named-defendant in that case, knew about the lawsuit at any time.

In summary, because no reasonable factfinder could conclude, based on the record evidence, that defendant Jakob issued misbehavior reports to plaintiff deliberately and maliciously to interfere with his lawsuits or that plaintiff suffered prejudice as a result of the misbehavior reports, I recommend that his First Amendment court access claim be dismissed.

iv. *Plaintiff's Equal Protection Claim*

In his complaint plaintiff alleges, without elaboration, that the defendants deprived him of equal protection. *Dkt. No. 1 at 26,* 27. Defendants now argue that plaintiff's equal protection claim is insufficiently stated and not supported by the record. *Dkt. No. 46–8 at 25–26.*

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). To establish an equal protection cause of action, a plaintiff must prove that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995). The plaintiff must also show "that the disparity in treatment cannot survive the appropriate level of scrutiny which,

in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.' " *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (alteration omitted) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225 (2001)).

**\*12** In this instance, plaintiff has not identified, nor does the record disclose, any basis to conclude that he was treated differently than similarly situated individuals. Rather, plaintiff's two allegations giving rise to his equal protection claim, and the only record evidence surrounding that claim, are as follows:

> On several other occasions C.O. Jakob ... demonstrated racial, bias, prejudice, animosity while conspiring to deprive him of his Equal Protection of the laws under color of law.

> [Defendants Jakob and Silverman] acted with racial or other class-based animus in conspiring to deprive the plaintiff of his equal protection of the laws secured by the law.

*Dkt. No. 1 at 26,* 27. Even assuming, however, that the record gives rise to a dispute of fact regarding whether plaintiff was treated differently than other, similarly situated persons for purposes of an equal protection analysis, there is nothing in the record suggesting any disparity in the conditions experienced by the two (unidentified) groups as a result of purposeful discrimination directed at an identifiable suspect class. Accordingly, I recommend that plaintiff's equal protection claim be dismissed.

v. *Personal Involvement of Defendant Martuscello*

Among the defendants named in plaintiff's complaint is Daniel Martuscello, the Superintendent at Coxsackie. *See, e.g., Dkt. No. 1 at 8.* Plaintiff does not allege that defendant Martuscello was personally involved in the events giving rise to his claims. *Id.* Instead, he contends that Martuscello knew or should have known of the constitutional deprivations alleged based upon complaints and grievances lodged by the plaintiff, but failed to act to remedy the violations. *Id.*

It is well-established that, as a supervisor, defend-

ant Martuscello cannot be liable for damages under sec-tion 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior.*" *Richard-son v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) dir-ectly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitu-tional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

In this case, plaintiff supports his claims against de-fendant Martuscello with mere allegations that he sent Martuscello letters and complaints regarding the other defendants' unlawful conduct. Plaintiff has failed to provide any details with respect to those letters. In con-trast to plaintiff's threadbare allegations, defendant Martuscello has submitted an affidavit, in support of de-fendants' pending motion, averring that plaintiff's letters and complaints were investigated by him or his staff, and has included copies of the pertinent investigatory reports. *Dkt. No. 45–3 at 2;* Dkt. Nos. 45–4–45–10. Those reports reflect that defendant Martuscello respon-ded to plaintiff's concerns, and, in certain instances, ac-cepted plaintiff's grievances. *Id.* Moreover, it is clear from plaintiff's reply that he has included defendant Martuscello as a defendant in this case based solely upon the acts of Martuscello's subordinates. *Dkt. No. 49 at 6.* In that reply, plaintiff notes the following:

**\*13** [W]hatever staff was in charge of the investiga-tion an [sic] withheld data of cons [sic], violations were being violated to Supt. Martuscello should be responsible for not doing his job properly putting Supt. Martuscello in the hot seat making it look like

he wasn't doing his job when it was his subordinates, who I would make pay all lawyers fees and possible settlements or payments.

*Id.*

In light of the record now before the court, I con-clude that there is an absence of a genuine dispute of fact regarding the personal involvement of defendant Martuscello in any of the allegations giving rise to the claims in this case. Accordingly, I recommend that all of plaintiff's claims against defendant Martuscello be dismissed.

vi. *Plaintiff's Retaliation Claims*

Plaintiff's complaint contains several allegations re-garding retaliatory conduct by defendants Jakob, Salts-man, and Sliverman. *See generally Dkt. No. 1.* Many of the allegations are vague and conclusory, and others are more specific. *Id.* Defendants request that plaintiff's re-taliation claims be dismissed due to the absence of any record evidence to support the allegations. *Dkt. No. 46–8 at 20–23.*

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an in-mate that is motivated by the inmate's exercise of a con-stitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) ( "In general, a section 1983 claim will lie where the government takes negat-ive action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). The Second Circuit has cautioned, however, that, because of "the ease with which claims of retali-ation may be fabricated," courts should "examine pris-oners' claims of retaliation with skepticism and particu-lar care." *Colon,* 58 F.3d at 872; *accord, Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003).

To establish a claim under section 1983 for unlaw-ful retaliation, a plaintiff must prove that (1) the con-duct prompting the retaliatory acts was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the pro-tected activity and the adverse action—in other words,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Garrett v. Reynolds,* No. 99–CV–2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.). "[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.' " *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)).

**\*14** Liberally construed, plaintiff's retaliation claims are based on allegations that, in retaliation for exercising his First Amendment rights by writing and filing grievances and civil lawsuits, defendants Jakob, Saltsman, and Silverman issued misbehavior reports to him. *See generally Dkt. No. 1.* According to plaintiff, some of the misbehavior reports issued were false, while others were simply intended to harass plaintiff. *Id.* at 12–18.

As an initial matter, I recommend that the retaliation claim asserted against defendant Silverman be dismissed because there is no record evidence to support that claim aside from the following allegation contained in plaintiff's complaint:

Here Duberry asserts [First Amendment] violations of retaliation claims advancing non conclusory allegations where he was protected by certain rights and C.O. Jakob, Saltsman, Silverman and some un[n]amed other C.O.s took adverse action against Duberry where a causal connection between the protected conduct and the adverse action.

*Dkt. No. 1 at 16.* Although there are other allegations giving rise to the retaliation claims against defendants Jakob and Saltsman, the foregoing is the only one involving defendant Silverman. Because that allegation does nothing more than advance conclusory and vague factual assertions, and there is no other evidence in the record supporting it, I recommend that the retaliation cause of action asserted against defendant Silverman be

dismissed.

With respect to the record evidence that supports plaintiff's retaliation claim against defendants Jakob and Saltsman, defendants have produced evidence that Jakob issued four misbehavior reports against plaintiff during the times relevant to this action, and defendant Saltsman issued two. Dkt. Nos. 45–12–45–13, 45–15, 45–17–45–18, 45–25 at 4. Specifically, misbehavior reports were issued to Dolberry by defendant Jakob on July 3, August 23, September 1, and October 9, 2009, Dkt. Nos. 45–13, 45–15, 45–21 at 22, 45–25 at 4, and by defendant Saltsman on July 5, and August 20, 2009. *Dkt. No. 45–17,* 45–18. There is conflicting evidence in the record, however, regarding the motivation behind the defendants' issuance of each of the tickets. Plaintiff alleges that they were issued in retaliation for his filing of grievances or lawsuits against defendant Jakob and Saltsman. *Dkt. No. 1 at 12–18.* Indeed, the record reflects that plaintiff filed at least six grievances or letters with prison officials regarding harassment by defendants Jakob and Saltsman. Dkt. Nos. 45–4 at 3, 45–5 at 5, 45–6 at 4–5, 45–7 at 8, 45–9 at 8, 45–10 at 6. Those defendants, on the other hand, purport that they issued each of the misbehavior reports to plaintiff based on plaintiff's failure to obey prison facility rules and regulations. *See generally* Dkt. Nos. 45–11, 45–16.

It is well settled that the filing of grievances and lawsuits constitutes protected activity for purposes of a First Amendment retaliation analysis. *See Johnson v. Eggersdorf,* 8 F. App'x 140, 144 (2d Cir.2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right."); *Colon,* 58 F.3d at 872 ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances."). Moreover, the Second Circuit has determined that a prison official's filing of a false misbehavior report against an inmate out of retaliatory animus constitutes adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) ("[The plaintiff] has sufficiently alleged ... adverse action on the part of the defendants—the filing of false misbehavior reports against [him] and his

sentence of three weeks in keeplock—that would deter a prisoner of ordinary firmness from vindicating his ... constitutional rights through the grievance process and the courts[.]").

**\*15** The unanswered question in this case, then, is whether the grievances and lawsuits filed by plaintiff against defendants Jakob and Saltsman were the "motivating factor" behind their issuance of the misbehavior reports. In light of the conflicting evidence between the parties regarding the motivation behind the misbehavior reports, I cannot recommend dismissal of the retaliation claims against defendants Jakob and Saltsman at this juncture. To do otherwise would require the court to make credibility determinations between the conflicting evidence, which is the task of a factfinder at trial. The temporal proximity between the grievances and letters authored by plaintiff, which are in the record before the court, and the misbehavior reports issued by defendants Jakob and Saltsman, raise an inference that the misbehavior reports were motivated by plaintiff's filing of grievances. Plaintiff's letters and grievances are dated between June 27, 2009 and October 9, 2009. Dkt. Nos. 45–4 at 3, 45–5 at 5, 45–6 at 4–5, 45–7 at 8, 45–8 at 3, 45–9 at 8, 45–10 at 6. Defendants Jakob and Saltsman, on the other hand, issued misbehavior reports to plaintiff on July 3, 5, August 20, 23, September 1, and October 9, 2009. Dkt. Nos. 45–17, 45–20, 45–18, 46–2 at 18, 45–15, 45–25 at 4. Those circumstances, when considered in the light most favorable to the plaintiff, demonstrate triable issues of material fact that must be resolved before plaintiff's retaliation claims can be adjudicated. Accordingly, I recommend that defendants' motion for summary judgment be denied with respect to the retaliation claims asserted against defendants Jakob and Saltsman.

#### vii. *Plaintiff's Conspiracy Claims*

Sprinkled throughout plaintiff's complaint are allegations that defendant Jakob and others, including defendant Saltsman, conspired to violate his constitutional rights. *See, e.g., Dkt. No. 1 at 9,* 10, 26, 27. In their motion, defendants seek dismissal of this claim. *Dkt. No. 46–8 at 19–20.*

"To prove a [section] 1983 conspiracy, a plaintiff

must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights are not sufficient to support a cognizable claim under section 1983. *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983).

Plaintiff's conspiracy claims are ripe for dismissal in light of the vague and conclusory allegations supporting them, and the fact that some of them relate to claims that are not cognizable under the United States Constitution. Two examples are illustrative. First, plaintiff alleges that, after plaintiff was released from one of his keeplock confinements, a fellow inmate, who had previously complained to defendant Jakob alleging that plaintiff threatened him, "laughed and joked in Duberry's face ... [,] which exhibited conspiracy by C.O. Jakob to keeplock Duberry[.]" *Dkt. No. 1 at 9.* This conclusory allegation, which is not supported by any record evidence, is insufficient to give rise to a genuine dispute of material fact regarding whether defendant Jakob conspired with anyone to violate plaintiff's constitutional rights. *See, e.g., Hilson v. Maltese,* No. 09–CV–1373, 2012 WL 6965105, at \*6 n. 10 (N.D.N.Y. Dec. 14, 2012) (Baxter, M.J.), *report and recommendation adopted by* 2013 WL 375489 (N.D.N.Y. Jan. 30, 2013) (Mordue, J.) ("Plaintiff's conclusory assertion ... is not sufficient to establish a material issue of fact[.]" (listing cases)).[FN18] Second, plaintiff alleges that, on or about July 5, 2009, defendants Jakob and Saltsman conspired "to commence the on-going harassment." *Dkt. No. 1 at 13.* Because prisoners do not have a constitutional right to be free from general harassment, plaintiff's conspiracy claim in that regard must fail. *See O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 426 (S.D.N.Y.2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy [.]"); *Singer v. Fulton Cnty. Sheriff's Dep't,* No. 92–CV–1561, 1994 WL 549741, at \*5 (N.D.N.Y. Oct. 4, 1994) (Hurd, M.J .), *aff'd* 63 F.3d 110 (2d Cir.1995) ("Without a [constitutional] viola-

tion, there can be no actionable conspiracy.").[FN19]

> **FN18.** Plaintiff sets forth similarly vague allegations throughout his complaint. *See, e.g., Dkt. No. 1 at 10* ("Duberry engaged in protected conduct filing grievances and civil actions which clearly involves C.O. Jakob causal connections of his conspiracy, retaliation, threats, harassments, thus other const. violations."), 27 ("Inmate Duberry was on A/3 B/3 long enough to write a ticket on Duberry, instead he waited for C.O. Jakob to come in at 3:30PM then wrote a ticket, or conspired with C.O. Jakob on the ticket by keeplocking Duberry which shows a meeting of the minds.").

> **FN19.** Another example of a conspiracy claim that is based on a non-constitutionally cognizable cause of action is plaintiff's allegation that defendants Jakob and Saltsman conspired to have him relocated within the prison facility. *Dkt. No. 1 at 26. See Sheehan v. Beyer,* 51 F.3d 1170, 1174 (3d Cir.1995) ("An inmate does not have a right to be placed in the cell of his choice."); *see also Cagle v. Gravlin,* No. 09–CV–0648, 2010 WL 2088267, at *4 (N.D.N.Y. Apr. 29, 2010) (Lowe, M.J.), *report and recommendation adopted by* 2010 WL 2087437 (N.D.N.Y. May 25, 2010) (Scullin, J.) ("I can find no case holding that a prisoner has a constitutional right either to the cell of his choice or to disobey a direct order.").

**\*16** Finally, because plaintiff's remaining conspiracy claims stem from constitutional claims that I recommended be dismissed earlier in this report, I recommend the accompanying conspiracy causes of action be dismissed, as well. *See, e.g., Dkt. No. 1 at 9,* 26 (alleging conspiracy to deny plaintiff access to the courts and equal protection).

For all of these reasons, I recommend that all of plaintiff's conspiracy claims be dismissed.

viii. *Qualified Immunity*

In their motion, defendants claim entitlement to qualified immunity from suit even in the event that plaintiff's claims are not dismissed on their merits at this procedural juncture. *Dkt. No. 46–8 at 26–27.*

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir.2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler,* 689 F.3d at 174 (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson,* 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson,* 555 U.S. at 231 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir.2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a constitutional right, and if so, "whether that right was 'clearly established' at the time of the events at issue." *Nagle v. Marron,* 663 F.3d 100, 114 (2d Cir.2011) (citing *Saucier,* 533 U.S. at 194, 201, 202); *accord, Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he

is doing violates that right." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). However, '[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) (citations omitted). This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v.. Briggs,* 475 U.S. 335, 341 (1986).

**\*17** The legal principles applicable to First Amendment retaliation claims were well-developed at the relevant times, including when defendants Jakob and Saltsman issued the misbehavior reports that form the basis for plaintiff's retaliation claims. I am unable to conclude that reasonable persons in their positions would not have understood that the issuance of misbehavior reports, prompted by the filing of complaints and grievances against them, would not violate plaintiff's clearly established, First Amendment rights. Accordingly, I recommend that defendants Jakob and Saltsman not be granted qualified immunity from suit at this juncture with regard to plaintiff's retaliation claims.[FN20]

> [FN20.] Because I have recommended dismissal of plaintiff's other causes of action elsewhere in this report, I have opted not to analyze defendants' qualified immunity argument as it relates to them.

### IV. *SUMMARY AND RECOMMENDATION*

Now that discovery in this case is complete, both the plaintiff and defendants have moved for summary judgment in their favor. Plaintiff's motion is clearly deficient in that, by his own account, there are genuine issues of material fact that must be determined at trial before a finding in his favor can be made on any of his claims. Turning to defendants' motion, I first note that, based upon plaintiff's misuse of the litigation process, including his material misrepresentations in a sworn document filed with the court and his submission of an improper response to defendants' statement of undis-

puted material facts, pursuant to local rule 7.1(a)(3), dismissal of his complaint is warranted on that basis. Turning to the merits, I conclude that, with the exception of his retaliation claim against defendants Jakob and Saltsman, no reasonable factfinder could find in plaintiff's favor on his various causes of action. Accordingly, it is hereby respectfully

RECOMMENDED that the plaintiff's motion for summary judgment (*Dkt. No. 37* ) be DENIED; and it is further

RECOMMENDED that plaintiff's complaint be DISMISSED in its entirety based upon his material misrepresentations to the court and abuse of the litigation process; and it is further hereby respectfully

RECOMMENDED that, if the portion of the court's report recommending dismissal based on plaintiff's misrepresentation to the court is not adopted, then defendants' motion for summary judgment (*Dkt. No. 45* ) be GRANTED in part and DENIED in part, and that all of plaintiff's claims, with the exception of his cause of action for retaliation against defendants Jakob and Saltsman, be DISMISSED on the merits.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**\*18** Dated: Feb. 28, 2014.

N.D.N.Y.,2014.
Dolberry v. Jakob
Slip Copy, 2014 WL 1292225 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1032857 (W.D.N.Y.)
**(Cite as: 2009 WL 1032857 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Elijah BELL,
v.
LASACELI, et all, Defendants.

No. 08–CV–0278A.
April 15, 2009.

Elijah Bell, Napanoch, NY, pro se.

DECISION AND ORDER
DAVID G. LARIMERM, District Judge.
*INTRODUCTION*

**\*1** Plaintiff, Elijah Bell, currently an inmate at the Eastern Correctional Facility, who at the time of the events alleged in this action was an inmate at the Wende Correctional Facility, filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq* ., and was granted permission to proceed *in forma pauperis*. (Docket No.3).

Upon review of the original Complaint (Docket No. 1), pursuant to 28 U.S.C. § 1915e(2)(B) and 1915A, the Court found that, based on the manner in which the complaint was written, it was virtually impossible to read and understand and to determine whether the Plaintiff stated a claim upon which relief could be granted against any of the Defendants. The Court therefore directed Plaintiff to file an Amended Complaint that was legible and complied with Rules 8 and 10 of the Federal Rules of Civil Procedure, and logically and coherently set forth the factual bases of his claims. The Plaintiff was placed on notice that his failure to file an amended complaint as directed—*i.e.,* legibly and in compliance with Rules 8 and 10—, would result in the dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. (Docket No. 3, Order)

(citing *Simmons v. Abruzzo,* 49 F.3d 83, 88 (2d Cir.1995); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

Plaintiff filed a First Amended Complaint (Docket No. 4), which "completely ignored in all respects the instructions and directions provided in the Court's initial Order (Docket No. 3) and was twice as lengthy (at least two to three inches thick and un-paginated) and, again, mostly illegible and indiscernible." (Docket No. 8, Order at 2). The Court, rather than dismissing the Amended Complaint, pursuant to 28 U.S.C. § 1915e(2)(B) and 1915A, for again failing to comply with Rule 8 's "short and plain statement" rule, opted to provide the Plaintiff with an additional opportunity to amend his complaint to ameliorate its deficiencies and attempt to state a claim upon which relief could be granted. (Docket No. 8, Order at 3). *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185 (2d Cir.2008) (stating that *pro se* litigants' complaints should be viewed liberally and that said litigants should be given the chance to amend their complaints as needed). The Court again directed that the Plaintiff's next (Second) Amended Complaint must comply with Rules 8 and 10 and set forth a short and plain statement of the claims against the Defendants. (Docket No. 8, Order).

*SECOND AMENDED COMPLAINT*

Plaintiff has now filed a Second Amended Complaint (Docket No. 9), which, among other deficiencies, is prolix and mostly unintelligible. It is over 200 pages—100 plus pages longer than the First Amended Complaint—and purports to allege, as best the Court can discern, that the Defendants—employees and officials of the New York State Department of Correctional Services ("DOCS")—violated his constitutional rights stemming from a whole host of complaints or grievances by way of "harassment, retaliations, discriminations, assaults...." The Second Amended Complaint names forty-two Defendants, and is an inordinately lengthy, impenetrable wall of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

convoluted dates and grievances. To the extent the Court can even read and understand it, the Second Amended Complaint seems to allege that Plaintiff's mail, grievances, and grievance appeals are stolen and thrown away once he places them in the proper mailbox in retaliation for his recurring grievances against the staff at Wende.

**\*2** Moreover, despite heeding the Court's directions to paginate the complaint, and include separate paragraphs and relevant dates, the sheer volume and lack of any logical or coherent organization of the Second Amended Complaint makes it, in the Court's opinion, simply impossible for either the Defendants or the Court to discern what the claims are.[FN1] *See Salahuddin,* 861 F.2d at 42 (The purpose of Rule 8's "short and plain statement" rule is to provide defendant with fair notice of the claims against him and to enable him to answer the complaint and prepare for trial). A complaint fails to comply with Rule 8(a)(2) if it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42. The Second Amended Complaint (Docket No. 9) certainly fits this criteria, even more so than the first two complaints.

> FN1. For example, Plaintiff will often claim that his grievances concern the "same old discriminations and lies" made by Correctional Officers at the prison, yet, as far as the Court can determine, never signifies what the specific "lies" are.

While a court cannot dismiss a *pro se* complaint based solely on the plaintiff's failure to follow a court's specific instructions as to the complaint's "content and format," *Sealed Plaintiff,* 537 F.3d 185 at 191, it must be noted that the Second Amended Complaint (Docket No. 9), again, and emphatically fails to correct any of the fatal flaws of the original and First Amended Complaint. All it does is add page numbers and paragraphs, and provide a litany of dates for each of the over two hundred complaints and grievances made by

Plaintiff against the staff at Wende. The Second Amended Complaint, after two earlier failed attempts, remains a continuous and unending stream of mostly illegible and unitelligible writing that the Court is simply unable to decipher or to make any real sense of.[FN2]

> FN2. As addressed below, Plaintiff is no stranger to the litigation process, and just recently in an action filed in the Northern District of New York Plaintiff was, like here, directed to file an amended complaint on the basis that the original complaint was
>
> > nearly illegible ... and [did] not set forth a short and plain statement of the relief of the facts ... but, rather, [was] a listing of more than thirty grievances [plaintiff] filed at Eastern Correctional Facility since his arrival there on July 15, 2008 ... Notwithstanding the Court's careful review of these pleadings, which are exceedingly difficult to read, it is impossible for the Court to determine if plaintiff can state a claim against each of the named defendants for the violation of his constitutional or statutory rights.
>
> > *Bell v. Fischer, Commissioner, et al.,* 9:09–CV–0008 (LEK) (Docket No. 7, Order, at 4). The Court also notes in said Order that several of plaintiff's grievances relate to his "mail being picked up by staff "while light off." (*Id.* at 4, n. 2). Some of the grievances set forth in the instant matter relate to the staff taking Plaintiff's mail and the lights being turned off.

Because the Second Amended Complaint again, after two previous attempts, fails to even remotely comply with Rule 8's short and plain statement rule, his complaint must dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. *See Simmons,* 49 F.3d at 88; *Salahuddin,* 861 F.2d at 42.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1032857 (W.D.N.Y.)
**(Cite as: 2009 WL 1032857 (W.D.N.Y.))**

It is well within a district court's discretion to deny leave to amend a prolix complaint if it is so voluminous and incomprehensible that no claims can be gleaned from it. *See Jones v. National Communications and Surveillance Networks,* No. 06–CV–1220, 266 Fed.Appx.31, 2008 WL 482599 (2d Cir.2008) (Summary Order) (stating that dismissing, pursuant to Rule 8, a plaintiff's 58 page, single-spaced complaint with 87 pages of attachments, alleging over twenty separate causes of action against more than 40 defendants was not an abuse of discretion). Plaintiff's Second Amended Complaint is similarly lengthy and rambling. *See also In re Merrill Lynch & Co., Inc. .,* 218 F.R.D. 76, 77–78 (S.D.N.Y.2003) ("When a complaint is not short and plain, or its averments are not concise and direct, 'the district court has the power, on motion or *sua sponte,* to dismiss the complaint or to strike such parts as are redundant or immaterial.' ") (quoting *Simmons,* 49 F.3d at 86).

**\*3** Again, while the Court is fully cognizant that "the dismissal of a *pro se* claim as insufficiently pled is appropriate only in the most unsustainable of cases[,]" *Boykin v. KeyCorp.,* 521 F.3d 202, 216 (2d Cir.2008), Plaintiff has been afforded two opportunities to amend his complaint and his most recent effort falls even further short of meeting Rule 8's pleading requirements than his earlier ones. Accordingly, the Second Amended Complaint must be dismissed. *See Higgins v. Plumbers and Gas Fitters, Local Union No. 1,* 08–CV–2521 (RRM)(LB), 2008 U.S. Dist. LEXIS 76610, at \*3 (E.D.N.Y., Sept. 18, 2008).

## MATERIAL MISREPRESENTATIONS

In addition to the issues discussed above related to Plaintiff's repeated failures to present a coherent, logical and understandable pleading, Plaintiff made a fatal error in all three complaints, subjecting this action to dismissal pursuant to Fed.R.Civ.P. 11. All three complaints submitted by plaintiff (Docket Nos. 1, 4 and 9), make materially false representations regarding Plaintiff's litigation history. Section 4B of the form complaint Plaintiff had utilized for all three complaints in this action, asked Plaintiff: "Have you begun any other lawsuits in federal court which relate to your imprisonment?." Plaintiff answered "no" to this question each time. This answer is utterly and totally false.

While not mentioned by the Court in its first two Orders issued in this action, upon further review it has come to the Court's attention through its use of DOCS' Inmate Locator (http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130) and the PACER electronic database, U.S. Party/Case Index (https://pacer.uspi.uscourts.gov/cgi-bin/dquery.pl), that Plaintiff, Elijah Bell, has had three different DIN numbers (Department Identification Numbers) assigned to him during three different periods of incarceration and has filed *at least* eight other cases in the United States District Courts in New York from 1989 until the filing of this action.[FN3] It should also be noted also that two of these cases were dismissed pursuant to U.S.C. § 1915(d), the predecessor to 28 U.S.C. § 1915(e), for failure to state a claim, as well as two others for failure to prosecute under Fed.R.Civ.P. 41(b).

> FN3. The following cases were filed while plaintiffwas incarcerated by DOCS under DIN Number 94–A–5230: *Bell v. New York City Dept. of Corr.,* 94–CV–06562 (TPG); *Bell v. Officer, Female,* 94–CV–06478 (TPG); *Bell v. Rosario,* 94–CV–04593 (KMW)(NRB); *Bell v. New York City Dept. of Corr.,* 94–CV–05137 (RWS); *and Bell v. Warden, O.B.C.C. Corr. Fac.,* 94–CV–06125 (KMW). The following case was filed while plaintiffwas incarcerated by DOCS under DIN Number 05–A–1436: *Bell v. Coughlin,* 89–CV–01403 (RJA). The other two were filed presumably while Plaintiffwas detained in a Local Jail under identification number 4410101699: *Bell v. Captain William,* 01–CV–08712 (MBM);

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

and *Bell v. Captain William,* 01–CV–06656 (JG) (LB).

> The Docket Sheets in each of these cases note the DIN number of the plaintiff and the DIN numbers match the DIN numbers assigned to Elijah Bell by DOCS as noted on the New York State Department of Correctional Services Website.

Generally, information about a *pro se* litigant's previous cases is material since it allows the Court to review any one the following issues: (1) if any of the issues in the current case had been previously litigated and decided, (2) if the plaintiff had, prior to being granted in forma pauperis status, garnered "three strikes" for purposes of 28 U.S.C. § 1915(g), (3) if plaintiff has a record of frivolous litigation sufficient to warrant a "bar order" (an order preventing plaintiff from litigating further in that court without first meeting certain preconditions), and (4) if the plaintiff's litigation experience is so extraordinary that it dispenses of the need to afford him the full measure of special solicitude that is normally otherwise afforded to *pro se* litigants due to their inexperience in legal matters. *See Ifill v. Patterson, et al.,* 9:08–CV–1022 (GLS)(GHL) (Docket No. 4, Order and Report and Recommendation (N.D.N.Y., October 9, 2008).

**\*4** While answering question 4B on the Form Complaint is not necessary to state a claim, Plaintiff, on three separate occasions, answered the question falsely and "swore" to the answer's truthfulness in each complaint. *See* Fed.R.Civ.P. 11. Such a prevarication is an inexcusable misrepresentation to the Court and, in similar circumstances, other district courts have had no reservations about sanctioning *pro se* litigants for making such false statements.[FN4] Because Plaintiff has repeatedly misrepresented his litigation history to the Court—a significant one at that—, the Court finds that he has violated Fed.R.Civ.P. 11 and, therefore, this action will be dismissed, in the alternative, on that basis.

FN4. *See, e.g., Crum v. Dodrill,* 06–CV–0586, 2008 WL 2357074, at \*10 (N.D.N.Y. June 4, 2008) (Hurd, J., adopting, on *de novo* review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *McChud v. Tureglio,* 07–CV–0650, 2008 WL 1772305, at \*16 (N.D.N.Y. Apr.15, 2008) (Mordue, C.J., adopting, on plain-error review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Johnson v. Connolly,* 07–CV–0158, 2008 WL 724167, at \*12 (N.D.N.Y. March 17, 2008) (Kahn, J., adopting, on *de novo* review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Standley v. Dennison,* 05–CV–1033, 2007 WL 2406909, at \*13–14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting, on *de novo* review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04–CV–0479, 2007 WL 2027912, at \*6, n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) (collecting cases). *See also Greer v. Schriro,* No. 06–15537, 2007 WL 4163413, at \*1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith,* No.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

05–13124, 181 Fed. Appx 808, 809–10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hood v. Tompkins,* No. 05–16358, 197 Fed. Appx 818, 819 (11th Cir. Aug.7, 2006) (affirming district court dismissal on this ground); *Hudson v. Fuller,* No. 02–1396, 59 Fed. Appx 855, 856–57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,* 99 F.3d 1145 (9th Cir.1996) (affirming district court th dismissal that was based on this ground); *accord, Dinkins v. Smalley,* 07–CV–0043, 2008 WL 160699, at *3, n. 3 (S.D.Ga. Jan, 14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiffs complaint should be dismissed on this ground) (citing cases).

### CONCLUSION

For the reasons set forth above, Plaintiff's Second Amended Complaint (Docket No. 9) is dismissed pursuant 28 U.S.C. § 1915(e) (2)(B) and 1915A. In the alternative, the Second Amended Complaint is dismissed on the basis that Plaintiff made repeated misrepresentations to the Court related to his prior litigation history.

Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21(1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDER

IT HEREBY IS ORDERED that this action is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

IT IS SO ORDERED.

W.D.N.Y.,2009.
Bell v. Lasaceli
Not Reported in F.Supp.2d, 2009 WL 1032857 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Efrain J. MUNIZ, Plaintiff,
v.
Glenn S. GOORD, et al., Defendants.
No. 9:04-CV-0479.

July 11, 2007.
Efrain J. Muniz, Gouverneur, NY, pro se.

Steven H. Schwartz, Esq., Assistant Attorney General, of Counsel, Hon. Andrew M. Cuomo, Attorney General for the State of New York, Albany, NY, for Defendants.

### *DECISION and ORDER*

THOMAS J. McAVOY, United States District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the May 2, 2007 Report-Recommendation have been raised. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report-Recommendation for the reasons stated therein. It is, therefore, Ordered that:

(1) Defendants' motion for judgment on the pleadings is DENIED;

(2) Plaintiff's claims under the Ninth Amendment is DISMISSED;

(3) Plaintiff's claims under the Fourteenth Amendment are DISMISSED; and

(4) The claims against Defendant Taylor are DISMISSED.

IT IS SO ORDERED.

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. § 636(b). Efrain J. Muniz ("Plaintiff") commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against three employees of the New York State Department of Correctional Services ("DOCS")-DOCS Commissioner Glenn S. Goord, DOCS Chief Medical Officer Dr. Lester Wright, and Gouverneur Correctional Facility ("Gouverneur C.F.") Superintendent Justin Taylor. (Dkt. No. 1.) Generally, Plaintiff alleges that Defendants violated his rights under the Eighth, Ninth and Fourteenth Amendments by denying him medical treatment for, and routine testing with regard to the progress of, his Hepatitis C medical condition because he refused, in or around October and November of 2003, to participate in the Residential Substance Abuse Treatment ("RSAT") Program at Gouverneur C.F. (*See generally* Dkt. No. 1 and Exs. A-D; Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) Currently before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkt. No. 27.) For the reasons that follow, I recommend that Defendants' motion be denied, but that Plaintiff's Ninth Amendment claim and Fourteenth Amendment claim should be *sua sponte* dismissed pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### I. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." <sup>FN1</sup>

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

FN1. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief," [FN2] or the defendant must show that the plaintiff's claim "fails as a matter of law." [FN3] Thus, a defendant may base a Rule 12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); [FN4] or (2) a challenge to the legal cognizability of the claim.[FN5]

FN2. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

FN3. *Phelps v. Kapnolis,* 308 F.3d 180, 187 (2d Cir.2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 108, n. 16 [1976].)

FN4. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion

under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN5. *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig .,* 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

**\*2** Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case, FN6 it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." FN7 The purpose of this rule is to "facilitate a proper decision on the merits." FN8 A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." FN9

FN6. *See Swierkiewicz,* 534 U.S. at 511-512, 515.

FN7. *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U .S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

FN8. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) (quoting *Conley,* 355 U.S. at 48).

FN9. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential

authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." FN10

FN10. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003); *see, e.g., Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury,* 536 U.S. 403, 416-422 (2002), *Freedom Holdings v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] . Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001],

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." [FN11] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN12] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN13]

FN11. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN12. *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

FN13. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN14] However, "all normal rules of pleading are not absolutely suspended." [FN15] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN16]

FN14. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff

an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

FN15. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) (citations omitted), *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

FN16. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. [FN17] Having said that, it should be emphasized that, on a motion to dismiss, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss), [FN18] and (2) any documents provided by the plaintiff in opposition to defendants' motion to dismiss, to the extent those documents are consistent with the allegations in the complaint.[FN19]

FN17. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

FN18. *See Chambers v. Time Warner,* 282 F.3d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

147, 153 & n. 3 (2d Cir.2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.,* 263, F.3d 10, 13, n. 3 (2d Cir.2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc., 75 F.3d 801, 808 (2d Cir.1996)* (a document that is "intergral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui, 91 F.3d 337, 341, n. 1 (2d Cir.1996)* ("This letter, though cited to and described in the complaint, was not attached to the complaint. We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP, 949 F.2d 42, 48 (2d Cir.1991)* ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *I. Meyer Pincus & Assocs.. P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir.1991)* ("We ... decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

FN19. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."

*Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

## II. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

**\*3** Defendants argue that Plaintiff's action should be dismissed because his Complaint acknowledges that he failed to exhaust his available administrative remedies before filing suit in April of 2004. (Dkt. No. 27, Part 3.) Specifically, Defendants argue that Plaintiff's Complaint alleges that the "final result" of Plaintiff's Inmate Grievance Complaint regarding the matters in question (i.e., Grievance No. GOV-10351/03) was that the Gouverneur C.F. Inmate Grievance Resolution Committee's ("IGRC's") denial of that grievance was, on appeal, affirmed by Defendant Taylor. (*Id.*) Defendants argue that, through this allegation, Plaintiff implicitly concedes that he subsequently failed to appeal Defendant Taylor's decision to DOCS' Central Office Review Committee ("CORC"), as required by the Prison Litigation Reform Act of 1996. (*Id.*) Finally, Defendants argue that, because Plaintiff had been (at the time in question) an inmate within DOCS for 26 years, it is inconceivable that he was unaware of his right to appeal to CORC (which fact was, incidentally, stated on the written decision issued by Defendant Taylor). (*Id.*)

Liberally construed, Plaintiff's response asserts what is, in essence, a four-prong argument. First, he argues, it would have been "fruitless" (or futile) to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials'

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT (although Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT). (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) Second, Plaintiff argues, he was not able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C. (*Id.* at ¶ 3.) Third, he argues, he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to the health effects of his Hepatitis C condition (even if that belief was, ultimately, mistaken). (*Id.* at ¶¶ 4-5.) Fourth, he argues, any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff, who is "a layman in matters of law." (*Id.* at ¶¶ 1, 4-5.)

Defendants' reply asserts two arguments. First, argue Defendants, Plaintiff's response should be disregarded because it was filed and served between 15 and 17 days late, in violation of Local Rule 7.1(b)(1), (the "return date" of Defendants' motion being December 11, 2006, the date of filing of Plaintiff's response being December 8, 2006, and the date of service of Plaintiff's response being December 11, 2006). (Dkt. No. 28, Part 1.) Second, argue Defendants, Plaintiff's implication that his poor health precluded him from appealing Defendant Taylor's decision to CORC during the days following that decision (on November 26, 2003) is "disingenuous at best," given that Plaintiff's health was good enough for him to file a lengthy, coherent, and typed Complaint (complete with six exhibits) five months later, in April of 2004. (*Id.*)

**\*4** The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [FN20] DOCS has available a well-established three-step grievance program:

FN20. 42 U.S.C. § 1997e.

First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.

*White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at \*6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7). Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [FN21]

FN21. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Here, the parties' arguments raise several issues falling under Parts 1 and 3 of the above-described three-part test.[FN22] I note that no issue appears to exist under Part 2 of that test since (1) Defendants have preserved their affirmative defense of non-exhaustion by raising it in their Answer (Dkt. No. 16, Part 1, ¶ 16), and (2) no allegation (or evidence) exists that any Defendant engaged in conduct that hindered or prevented Plaintiff from being able to appeal to CORC sufficient to estop that Defendant from raising this defense (see Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3 [arguing that it would have been "fruitless" to appeal to CORC, not that any Defendant took actions preventing Plaintiff from appealing to CORC] ).

> FN22. I reject Defendants' argument that the Court should disregard Plaintiff's response papers as late, because of (1) Defendants' failure to show prejudice as a result of the lateness, and (2) Plaintiff's special status as a *pro se* civil rights litigant (who was, during the time in which he was supposed to file his response papers, allegedly sick).

**\*5** The issue that falls under Part 1 of the above-described test is created by Plaintiff's argument that it would have been futile to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials' failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT. I reject this argument for two reasons. First, Plaintiff confuses a prisoner's *ability* to appeal to CORC with a prisoner's *chances of success* during such an appeal. Simply because a prisoner might not stand a realistic chance of success during an appeal does not mean that the administrative appellate process is not "available" to the prisoner. (If so, then any prisoner with an unmeritorious or frivolous claim would not have the administrative appellate process "available" to him.) Second, Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT. As a result, Plaintiff has alleged facts indicating that, in fact, it might not have been futile for him to appeal to CORC.

The issues that fall under Part 3 of the above-described test are created by Plaintiff's remaining three arguments-(1) that he was not physically able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C, (2) that he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition (even if that belief was, ultimately, mistaken), and (3) that any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff.

Taking the arguments out of order, I reject the second argument for three reasons. First, the test in question is not whether Plaintiff "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition but whether he "reasonably" believed he was so excused (i.e., the test is an objective one, not a subjective one). Second, Plaintiff does not allege any facts whatsoever indicating why he "reasonably" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition. For example, Plaintiff does not allege any facts indicating that any New York State DOCS regulations were confusing.[FN23] Indeed, the regulation in question rather clearly provides that, if mitigating circumstances exist, a prisoner may request an exception to the time limit for filing an appeal to CORC (not that he be excused from having to file an appeal to CORC). *See* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006). Third, Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC? Simply stated, I can imagine no factual circumstances, consistent with the allegations of Plaintiff's Complaint (and his response papers), in which he reasonably believed that he was excused from having to appeal to CORC due to his Hepatitis C condition.

> FN23. *See Giano v. Goord,* 380 F.3d 670, 676, 678-679 & n. 9 (2d Cir.2004) (it was reasonable

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

for plaintiff to have raised his complaints through disciplinary appeals process rather than by filing a separate grievance because the relevant DOCS regulations permitted such conduct or were confusing, for example, being misinterpreted by "a learned federal district court judge not long ago"); *Hemphill v. New York Dep't of Corr. Servs.,* 380 F.3d 680, 690-691 (2d Cir.2004) (remanding to district court to determine, *inter alia,* whether the allegedly confusing nature of New York DOCS regulations justified plaintiff's failure to file a grievance in manner that DOCS officials now prescribe); *Johnson v. Testman,* 380 F.3d 691, 696-697 (2d Cir.2004) (remanding to district court to determine, *inter alia,* "whether ... the BOP grievance regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings.").

**\*6** Moreover, I reject the third argument for two reasons. First, while special leniency might be sufficient to overcome a certain lack of specificity in a pleading and/or to excuse certain minor procedural mistakes, I am aware of no authority suggesting that it is sufficient to excuse a failure to comply with a federal statute such as the PLRA.[FN24] Second, special leniency is normally afforded *pro se* litigants because of their *inexperience* (or lack of familiarity with legal procedures or terminology).[FN25] However, here, Plaintiff has some experience,[FN26] especially when it comes to court actions in which he is alleged to have not exhausted his available administrative remedies prior to filing suit .[FN27] Moreover, I note that Plaintiff's papers in this action have been fairly good-being organized and cogent, and often being typed, supported by exhibits, affidavits, and memorandum of law. (*See* Dkt. Nos. 1, 2, 19, 23.) Indeed, Plaintiff knew enough about court procedure to apply for and receive both an order dismissing the current proceeding without prejudice and an order reopening the proceeding. (*See* Dkt. Nos. 19, 22, 23, 26.) Clearly, Plaintiff is a litigant of at least some level of experience and sophistication.[FN28] While I do not believe that Plaintiff's experience is so extensive that it warrants altogether *revoking* the special status normally afforded pro se civil rights litigants,[FN29] I believe that his

experience warrants somewhat *diminishing* his special status.[FN30] Moreover, I believe that this special leniency should be diminished as a sanction due to his apparent lack of candor with the Court. Specifically, Plaintiff apparently made a material misrepresentation to the Court in his Verified Complaint, wherein he made a sworn assertion that he had never "filed any other lawsuits in any state [or] federal court relating to [his] imprisonment" (Dkt. No. 1, ¶ 5[a] ), when, in fact, as of the date of the signing of his Complaint (April 28, 2004), Plaintiff had apparently done so.[FN31] Numerous cases exist from within the Third Circuit for sanctioning *pro se* litigants for abusing the litigation process, as well as some cases from within the Second Circuit.[FN32]

> **FN24.** *See Houze v. Segarra,* 217 F.Supp.2d 394, 395-396 (S.D.N.Y.2002) (dismissing prisoner's complaint for failure to exhaust administrative remedies, as required by PLRA, after acknowledging that prisoner, as *pro se* litigant, is afforded special leniency); *see also Smith v. Keane,* 96-CV-1629, 1998 U.S. Dist. LEXIS 3702, at \*6, 9-18 (S.D.N.Y.1998) (dismissing prisoner's complaint for failure to comply with applicable statute of limitations, after acknowledging that prisoner, as pro se litigant, is afforded special leniency); *Turner v. Johnson,* 177 F.3d 390, 391-392 (5th Cir.1999) ("[N]either a party's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits [excusing the party's failure to comply with a statute of limitations].").

> **FN25.** *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (affording special leniency to "a *pro se* litigant unfamiliar with the requirements of the legal system"); *Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986) (liberally construing *pro se* complaints benefits persons "unfamiliar with the lawyerlike method of pleading claims"); *Edwards v. Selsky,* 04-CV-1054, 2007 WL 748442, at \*2-3 (N.D.N.Y. March 6, 2007) ( M o r d u e ,   C . J . ,   a d o p t i n g Report-Recommendation of Lowe, M.J.) (stating that pro se litigants' "lack of [experience] is the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

reason for conferring the special status upon *pro se* litigants"); *see also Korsunskiy v. Gonzales, 461 F.3d 847, 850 (7th Cir.2006); Int'l Bus. Prop. v. ITT Sheraton Corp.,* 65 F.3d 175, at *2 (9th Cir.1995); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979); *Zaczek v. Fauquier County,* 764 F.Supp. 1071, 1078 (E.D.Va.1991); *Life Science Church v. U.S.,* 607 F.Supp. 1037, 1039 (N.D.Ohio 1985); John C. Rothermich, *Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice,* 67 FORDHAM L.REV. 2687, 2697 (Apr.1999) [citing cases].

FN26. Specifically, it appears that Plaintiff has filed between two and eight state court actions or appeals. *See, infra,* note 31 of this Report-Recommendation.

FN27. *Muniz v. David,* No. 96428, Memorandum and Order at 2 (N.Y.App.Div., 3d Dept., March 24, 2005) (indicating that defendants in that action had argued before the trial court, at some point before the issuance of its judgment on June 4, 2004, that Plaintiff had "failed to exhaust the administrative remedies through the available grievance procedures or establish any exceptions thereto").

FN28. When assessing a *pro se* litigant's experience for purposes of deciding whether or not to revoke his special status, courts sometimes examine things such as (1) the quality of his pleadings (e .g., whether they are typed, crafted in accordance with the relevant rules of civil procedure, etc.), (2) the cogency of his motion papers (e.g., whether they are supported by applicable legal authorities, filed in accordance with court rules, etc.), and (3) the ultimate success of any motions, actions or appeals he has previously filed (or the failure of any motions he has previously opposed). *See, e. g., Edwards,* 2007 WL 748442, at *3; *Rolle v. Garcia,* 04-CV-0312, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.), adopting Report-Recommendation, 2007 WL 672679, at

*4 (N.D.N.Y. Feb. 28, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *2 & n. 11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *see also Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993); *Ab v. Sekendur,* 03-CV-4723, 2004 WL 2434220, at *5 (N.D.Ill. Oct. 28, 2004). Such a practice seems appropriate in that it is consistent with the standard often used by courts to decide whether or not to appoint counsel to a *pro se* litigant. *See, e.g., Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986); *see also Tabron v. Grace,* 6 F.3d 147, 155-156 (3d Cir.1993); *Farmer,* 990 F.2d at 322; *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir.1991); *Long v. Shillinger,* 927 F.2d 525, 527 (10th Cir.1991).

FN29. *See, e.g., Johnson v. Eggersdorf,* 8 Fed. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n. 1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, *2 (2d Cir.1999)* (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); *Gill v. Pidvlpchak,* 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY,* 03-CV-0959, 2004 WL 2202594, at *3

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

(W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean,* 204 F.R.D. 251, 257 & n. 5 (S.D.N.Y.2001); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000); *McGann v. U.S.,* 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta,* 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

FN30. My review of the applicable law suggests that courts need not treat special status as an "all or nothing" benefit but may confer special status to a semi-experienced *pro se* litigant on a "sliding scale," treating the litigant more leniently than represented litigants but not as leniently as wholly inexperienced *pro se* litigants. *See, e.g., Kilkenny v. Greenberg Traurig, LLP,* 05-CV-6578, 2006 23399, at *18 (S.D.N.Y. Apr. 26, 2006) ("While plaintiff's *pro se* status does not insulate him from the imposition of sanctions under Rule 11 ..., *pro se* litigants are held to a more lenient standard, and the application of Rule 11 may be determined on a sliding scale according to the litigant's level of sophistication.") [citations and internal quotation marks omitted]; *Holsey v. Bass,* 519 F.Supp. 395, 407 n. 27 (D.Md.1981) ("This Court is of the opinion that it is proper to apply a sliding scale of liberality in construing a *pro se* complaint.") [citation omitted]; *see also* Julie M. Bradlow, *Procedural Due Process Rights of Pro se Civil Litigants,* 55 U. CHI. L.REV.. 659, 660 (Spring 1988) (asserting that, in *pro se* civil litigation, a "sliding scale" of due process should be employed by judges to ensure that they give "such leniency and special attention as the particular case merits").

FN31. *See, e.g., Efraim Muniz v. David,* No. 96428, Memorandum and Order (N.Y.App.Div., 3d Dept., March 24, 2005) (stating, "This proceeding was commenced in October 2003"). I note that the plaintiff in the aforementioned prisoner action-"Efraim Muniz" of Governor C.F.-bears the same name of record as the prisoner of record bearing New York State

DOCS Inmate Number 80-A-0959, the inmate number claimed by Plaintiff in the current action. I note also that, according to the New York DOCS Inmate Locator System, no other prisoner in the New York State DOCS has ever been named "Efraim Muniz." In other words, either the DOCS Inmate Locator System contains a typographical error for Plaintiff's record entry or Plaintiff answers to both names.

Finally, I note that it is unclear whether several other prisoner actions and appeals were also brought by Plaintiff or the one other "Efrain Muniz" who has ever been incarcerated by the New York State DOCS. *See, e.g., Efrain J. Muniz v. N.Y.S. Div. of Parole,* 695 N.Y.S.2d 619 (N.Y.App.Div., 3d Dept., 1999); *Efrain Muniz v. Selsky,* No. 91967, Memorandum and Judgment (N.Y.App.Div., 3d Dept., Jan. 9, 2003); *Efrain J.* Muniz v. Goord, 820 N.Y.S.2d 368 (N.Y.App.Div., 3d Dept., 2006).

FN32. *See, e.g., Iwachiw v. N.Y.S. Dept. of Motor Veh.,* 396 F.3d at 528-529 & n. 1 (2d Cir.2005); *McDonald v. Head Crim. Ct. Supervis. Officer,* 850 F.2d 121, 124-125 (2d Cir.1988); *Mora v. Bockelmann,* 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Mitchell v. Harriman,* 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Tibbetts v. Robinson,* 97-CV-2682, 2005 WL 2146079, at *7 (D.Conn. Aug. 31, 2005).

Finally, I am skeptical of the first arguments for two reasons. First, Plaintiff does not allege specific facts indicating why he was not able (presumably, physically able) to file an appeal to CORC during the days or weeks following November 26, 2003. (For example, was it because he did not have the strength to think clearly or write, or was it because he did not have access to paper and legal materials for some reason? Was he housed in the prison's infirmary during this time period, and how long was he allegedly incapacitated?) I note that Plaintiff's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

allegation that he was unable to file an appeal to CORC during the days or weeks following November 26, 2003, appears undermined somewhat by Exhibit C to his Complaint, which indicates that, on January 12, 2004 (approximately six weeks after November 26, 2003), Plaintiff was in a good enough physical condition to write a letter to a DOCS official (apparently Brenda Tracy, a Nurse Administrator), regarding a doctor's decision to not prescribe vitamins for Plaintiff. (Dkt. No. 1, Ex. C.) FN33 Second, Plaintiff does not allege facts indicating why he did not, or was not able to, request an exception to the time limit for filing an appeal to CORC due to the "mitigating circumstances" created by his illness (and then, if necessary, file a separate grievance regarding any denial of that request for an exception). *See* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006).

> FN33. However, I am not persuaded by Defendants' argument that Plaintiff must have been physically able to file an appeal to CORC during the days or weeks following November 26, 2003, because Plaintiff was able to file his Complaint in this action approximately five months later, in April of 2004. Setting aside the issue of whether the Court's consideration of such a fact would arguably necessitate converting Defendants' motion into a motion for summary judgment, I note the lengthy time lag between the two dates.

*7 However, despite this skepticism about Plaintiff's first argument, I am reluctant to recommend dismissal of Plaintiff's Complaint based on a failure to exhaust his administrative remedies. Specifically, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal Rules of Civil Procedure and various Supreme Court precedents. *See, supra,* Part I of this Report-Recommendation. Morever, I am mindful that, within the Second Circuit, "it may often be premature to decide the issue of exhaustion in the context of a motion to dismiss the complaint under Rule 12(b)(6); rather it may be necessary for the Court to address the issue at the summary judgment stage." *Flynn v. Wright,* 05-CV-1488,

2007 WL 241332, at *12 (S.D.N.Y. Jan. 26, 2007) (citing *Ziemba v. Wezner,* 366 F.3d 161, 163-164 [2d Cir.2004] [vacating magistrate judge's granting of defendants' motion for judgment on pleadings for failing to exhaust administrative remedies] ).FN34 Finally, I am mindful that, recently, the Supreme Court expressed disapproval of dismissing prisoner actions for failure to exhaust administrative remedies under a Rule 12(b)(6) analysis. *See Jones v. Block,* 127 S.Ct. 910, 919-923 (2007).

> FN34. *Accord, Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *8 (S.D.N.Y. Dec. 6, 2006).

More specifically, I find that Plaintiff's assertions, in his response papers, FN35 that, in light of his Hepatitis C condition, he "did the very best [his] ability and health allowed [him] at the time" to grieve the matters at issue in this action "plausibly alleges" the existence of "special circumstances" justifying his failure to appeal to CORC (as permitted by *Hemphill v. State of New York,* 380 F.3d 680 [2d Cir.2004] and its companion cases), and meets-albeit *barely*-the "modest" pleading threshold set by Rules 8 and 12 of the Federal Rules of Civil Procedure and Supreme Court precedent such as *Jones v. Block,* 127 S.Ct. 910 (2007), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), and *Leatherman v. Tarrant County Narc. and Intell. Coord. Unit,* 507 U.S. 163 (1993). I note that at least one analogous case exists, from within the Second Circuit, in which a prisoner was found to have plausibly alleged special circumstances due to physical incapacitation. FN36

> FN35. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, inter alia, *Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

FN36. *See Barad v. Comstock,* 03-CV-0736, 2005 U.S. Dist. LEXIS 38418, at *10-11, 16-17, 21-23 (W.D.N.Y. June 30, 2005) (prisoner plausibly alleged special circumstances where he alleged, in part, that time to commence grievance had lapsed while he had been hospitalized due to kidney stones, although his complaint was ultimately dismissed under a summary judgment analysis); *cf. Bonilla v. Janovick,* 01-CV-3988, 2005 U.S. Dist. LEXIS 325, at *6-7 (E.D.N.Y. Jan. 7, 2005) ("[P]laintiff's hospitalization and physical injuries may have prevented the filing of an administrative complaint, [necessitating] further discovery and additional depositions ... to determine whether the admitted failure to exhaust should nevertheless be excused [due to the 'special circumstances' exception]."

As a result, I recommend that the Court deny Defendants' motion for judgment on the pleadings. However, I express no opinion about whether Plaintiff would or would not be able to survive a motion for *summary judgment* (premised on a failure to exhaust administrative remedies), should Defendants choose to file such a motion.FN37

FN37. *See Barad,* 2005 U.S. Dist. LEXIS 38418, at *21, 22, 25 (during summary judgment

analysis, accepting defendants' argument that plaintiff "was physically able to file a grievance" during his fourteen-day hospitalization due to kidney stones because "plaintiff testified that he was able to write [and attend a program] during his hospitalization," although ultimately finding that plaintiff had established other special circumstances, i.e., [1] that the correctional facility's medical staff had erroneously told plaintiff that his time to commence a grievance had lapsed, and [2] that plaintiff had relied on Second Circuit law at that time [in 1999] which did not require exhaustion of administrative remedies for such deliberate indifference claims); *cf. Goldenberg v. St. Barnabas Hosp.,* 01-CV-7435, 2005 U.S. Dist. LEXIS 2730, at *11-16 (S.D.N.Y. Feb. 22, 2005) (granting defendants' motion for summary judgment, in part because plaintiff adduced no evidence in support of his claim that administrative remedies were not "available" to him [i.e., during an analysis of Part 1 of the Second Circuit's three-part test] insofar as he was, during the relevant time period, in a physically and mentally debilitated state).

**B. Duty of Court to *Sua Sponte* Analyze Pleading Sufficiency of Claims**

An analysis of Defendants' failure-to-exhaust argument does not end the Court's review of Plaintiff's claims. This is because, under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Court has the authority (and duty) to *sua sponte* dismiss prisoner claims that fail to state a claim upon which relief may be granted or over which the Court lacks subject-matter jurisdiction. As a result, I will analyze Plaintiff's Eight, Ninth and Fourteenth Amendment claims for such defects.

**1. Failure to State a Claim Under the Eighth Amendment**

**\*8** Generally, to state a claim of inadequate medical care under the Eighth Amendment, Plaintiff must allege facts indicating two things: (1) that he had a sufficiently serious medical need; and (2) that Defendants were deliberately indifferent to that serious medical need.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

*Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). With regard to the second element, an official is "deliberately indifferent" (in other words, he has a sufficiently culpable state of mind) when he " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 [1994] ).

Here, I will assume for the sake of argument that Plaintiff's Hepatitis C condition constitutes a "serious medical need" for purposes of the Eighth Amendment.[FN38] The more problematic question is whether Plaintiff has alleged facts indicating the sort of culpable state of mind (which is akin to criminal recklessness) necessary for liability under the Eighth Amendment.[FN39] It is arguable that he has simply alleged facts indicating a disagreement with his prescribed medical care, or perhaps negligence, neither of which is enough to make a defendant liable to a plaintiff under the Eighth Amendment.[FN40] For example, the documents relied on and/or referenced in Plaintiff's Complaint (and thus deemed part of Plaintiff's Complaint) *appear* to suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, it was not deemed medically appropriate for Plaintiff to engage in such medical treatment without having first enrolled in the RSAT Program, due to the increased risk of liver damage.[FN41] If those documents more clearly indicated a medical rationale for the requirement that Plaintiff participate in the RSAT Program, I would be inclined to conclude that Plaintiff has not alleged facts indicating a violation of the Eighth Amendment.[FN42] However, they do not do so. Moreover, again, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal Rules of Civil Procedure. I am also mindful that, unlike many similar cases brought by prisoners, Plaintiff alleges not only a denial of treatment for Hepatitis C but of *testing* for the progress of that disease (which denial appears to be more difficult to justify under the rationale apparently proffered in Exhibits A2 and D to Plaintiff's Complaint).

FN38. Some district court decisions from within the Second Circuit have found Hepatitis C to not constitute a serious medical need. *See Vondette*

*v. McDonald,* 00-CV-6874, 2001 WL 1551152, at *4-5 (S.D.N.Y. Dec. 5, 2001). However, it appears that the bulk of district court decisions addressing the issue finds that Hepatitis C is a serious medical need. *See Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

FN39. " 'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.' " *Evering v. Rielly,* 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk,* 134 F.3d 104, 108 [2d Cir.1998] ).

FN40. *See Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

FN41. (*See* Dkt. No. 1, Ex. A2 ["[T]he facility is acting in accordance with direction provided by

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Central Office. The policy regarding Hepatitis C Treatment/Substance Abuse Treatment is addressed in a memorandum dated January 8, 2002, which states in part: 'Any inmate who is diagnosed with Hepatitis C and requires medical treatment must have completed or have enrolled in an Alcohol Substance Abuse Treatment, Comprehensive Alcohol Substance Abuse Treatment, Resident Substance Abuse Treatment, or Pre-Treatment Workbook Program ....'"; Dkt. No. 1, Ex. D ["While to the general public hepatitis is simply a disease, the medical community views it more accurately as an inflamed liver.... Most new [Hepatitis C] infections are caused by intravenous drug use. Disease progression can ... occur more often if the person drinks alcohol."].)

FN42. *See Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *13-15 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (finding that prisoner's Eighth Amendment claim regarding denial of hepatitis treatment based on his non-participation in ASAT program should be dismissed on alternative ground that he failed to state a claim, given that the documents attached to prisoner's complaint and response papers clearly indicated that, at the time, it was not deemed medically appropriate for the plaintiff to engage in medical treatment for Hepatitis C without having first enrolled in the ASAT Program).

As a result, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to state an Eighth Amendment claim under the circumstances.[FN43] However, again, I express no opinion about whether Plaintiff would or would not be able to survive a motion for summary judgment (with respect to his Eighth Amendment claim), should Defendants choose to file such a motion. *See Lewis v. Alves,* 01-CV-0640, 2004 WL 941532, at *5-7 (W.D.N.Y. March 22, 2004) (granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim alleging, *inter alia,* deliberate indifference to plaintiff's Hepatitis C condition due to his

non-participation in an ASAT Program), *accord, Rose v. Alves,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *cf. Graham v. Wright,* 01-CV-9613, 2003 U.S. Dist. LEXIS 16106, at *6 n. 5 (S.D.N.Y. Sept. 12, 2003) ("[W]e note that the portions of the [DOCS] Guidelines challenged by plaintiff, namely that the inmate must successfully complete an ASAT program ... [before he receives treatment for Hepatitis C] appear to be highly rational in light of the fact that severe side effects, including death, may result from treatment of the patient with interferon-apha-2b or 2a combined with ribavirin for 6-12 months, and that active substance abuse, including alcohol abuse, can cause life threatening consequences to a patient following the treatment regimen.").

FN43. *See McKenna v. Wright,* 386 F.3d 432, 434, 437 (2d. Cir.2004) (prisoner stated Eighth Amendment claim for deliberate indifference to his Hepatitis C based on his non-participation in ASAT program where he alleged that he had been deemed "ineligible for the [ASAT] program because of his medical condition"); *Hatzfield v. Goord,* 04-CV-0159, 2007 WL 700961, at *1-5 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.) (prisoner stated First, Eighth and Fourteenth Amendment claims with regard to defendants' failure to treat his Hepatitis C condition based on his non-participation in RSAT/ASAT program where he alleged that his participation in the RSAT/ASAT program would have violated his religious beliefs); *Hilton v. Wright,* 235 F.R.D. 40, 44-55 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) (assuming, without specifically deciding, that class of prisoners had stated a viable Section 1983 claim regarding DOCS' policy of requiring prisoners' participation in ASAT/RSAT program before prisoners could receive treatment for Hepatitis C).

**2. Failure to State a Claim Under the Ninth Amendment**

**\*9** In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia,* the Ninth Amendment. (Dkt. No. 1, ¶ 7.3.) The Ninth

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Amendment to the United States Constitution provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. I can find no factual allegations in Plaintiff's Complaint in support of his Ninth Amendment claim. (*See generally* Dkt. Nos. 1, 29.) Moreover, I can imagine no set of factual circumstances, consistent with the allegations of Plaintiff's Complaint, in which such a Ninth Amendment claim might exist. (*Id.*) As explained by the Tenth Circuit:

> Although the Ninth Amendment may restrict the activities of state actors ..., it has never been applied to prevent the denial of medical treatment to prisoners. Indeed, such an application would be inappropriate, since the Ninth Amendment only protects those rights not otherwise 'enumerat[ed] in the Constitution,' ... and the Eighth Amendment specifically addresses itself to the mistreatment of prisoners ....

*Parnisi v. Colo. State Hosp.,* No. 92-1368, 1993 U.S.App. LEXIS 9128, at *2, 4-5 (10th Cir. Apr. 15, 1993) (affirming district court's dismissal of prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment) [citations omitted].[FN44] Courts from within the Second Circuit have similarly recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims. *See, e.g., Diaz v. City of New York,* 00-CV-2944, 2006 U .S. Dist. LEXIS 93923, at *21-22 (E.D.N.Y. Dec. 29, 2006) ("[T]he Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.") [internal quotation marks and citations omitted], *accord, Bussey v. Phillips,* 419 F.Supp.2d 569, 586 (S.D.N.Y.2006) [citing case].

FN44. *See also Taylor v. Roper,* 83 F. App'x 142, 143 (8th Cir.2003) ("We also agree with the district court that [the prisoner's] allegations [regarding inadequate medical care] provided no basis for his claims ... under ... the Ninth Amendment ...."); *Gaberhart v. Chapleau,* No. 96-5050, 1997 U.S.App. LEXIS 6617, at *3 (6th Cir. Apr. 4, 1997) (dismissing the prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment, in part because he "never explained the theory or at least the basis" for that claim).

The closest that Plaintiff comes to stating such a Ninth Amendment claim is when he alleges that prisoners are being "denied mental health services for Hapatitis C[-]related mental *disturbances* and anxiety," and that their "confidentiality is being violated." (Dkt. No. 1, "Third Cause of Action." [emphasis in original].) Granted, the Ninth Amendment may, in some circumstances, protect the disclosure of some personal information about a prisoner (e.g., regarding the prisoner's mental health). *See Morgan v. Rowland,* 01-CV-1107, 2006 U.S. Dist. LEXIS 11081, at *28-30 (D.Conn. March 17, 2006) (granting defendants' motion for summary judgment with regard to such a claim); *see also Hunnictt v.. Armstrong,* 152 F. App'x 34 (2d Cir.2005) (unpublished decision), *vacating in part,* 305 F.Supp.2d 175, 187-188 (D.Conn.2004) (presuming that prisoner was not alleging Ninth Amendment right-to-privacy claim).[FN45] However, again, Plaintiff asserts no factual allegations in support of this claim. For example, Plaintiff does not allege any facts indicating that Defendants discussed Plaintiff's private or personal mental health issues in front of other prisoners and DOCS employees, violating either the psychiatrist-patient privilege or psychologist-patient privilege. (*See generally* Dkt. Nos. 1, 29.) Furthermore, Plaintiff's request to litigate this matter as a class action was denied; thus, it is not relevant, *for purposes of this action,* what wrongs *other* prisoners (especially unidentified prisoners) are allegedly experiencing.

FN45. *But see In re State Police Litig.,* 888 F.Supp. 1235, 1258 (D.Conn.1995) ("[T]he [Ninth] [A]mendment does not guarantee any constitutional right [e.g., to privacy] sufficient to support a claim under 42 U.S.C. § 1983.") [citations omitted], *appeal dismissed,* 88 F.3d 127 (2d Cir.1996); *accord, Salaman v. Bullock,* 05-CV-0876, 2007 U.S. Dist. LEXIS 24432, at *8 (D.Conn. March 15, 2007), *DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn.1997), *Doe v. Episcopal Soc. Servs.,* 94-CV-9171, 1996 U.S. Dist. LEXIS 1278, at *3-4 (S.D.N.Y. Feb. 7, 1996).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

**\*10** As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Ninth Amendment claim. However, because the defect in any right-to-privacy claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such right-to-privacy claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable Ninth Amendment claim within 30 days of the Court's final decision on Defendants' motion.

### 3. Failure to State a Claim Under the Fourteenth Amendment

In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia,* the Fourteenth Amendment. (Dkt. No. 1, ¶ 7.3.) Assuming that Plaintiff is not simply relying on the Fourteenth Amendment to the extent that it makes the Eighth Amendment applicable to the states, the only conceivable claims to which Plaintiff might be referring are his claims for a violation of his right to substantive due process, procedural due process, or equal protection. However, I can find no factual allegations in support of any such claims.

Specifically, to the extent that Plaintiff is attempting to assert some sort of due process claim, any such claim is in actuality an Eighth Amendment claim, which I have already analyzed above in Part II.B.1. of this Report-Recommendation. *See Hatzfield v. Goord,* 04-CV-0159, 2007 WL 700961, at \*1 n. 3 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.) (citing *Pabon v. Wright,* 459 F.3d 241, 253 [2d Cir.2006] ); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at \*9 (S.D.N.Y. March 4, 2002).

To the extent that Plaintiff is attempting to assert some sort of equal protection claim, he has not alleged facts indicating that either (1) he was treated differently than other people in similar circumstances or (2) the unequal treatment was the result of intentional and purposeful discrimination. *See, e.g., Verley,* 2004 WL 526740, at \*20-21; *McKenna,* 2002 WL 338375, at \*10-12. Furthermore, to the extent that Plaintiff is somehow implicitly alleging that he was treated differently than persons suffering from cancer or AIDS, I note that, as stated earlier, the exhibits to Plaintiff's own Complaint appear to suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, he was being denied such treatment because of the possible damage such treatment would do to his liver (which was already being affected by Hepatitis C) if he was currently abusing alcohol or drugs.[FN46]

> [FN46.] *See, supra,* note 41 of this Report-Recommendation.

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Fourteenth Amendment claim. However, because the defect in any equal protection claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such equal protection claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable equal protection claim within 30 days of the Court's final decision on Defendants' motion.

### 4. Lack of Personal Involvement

**\*11** " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[FN47] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN48] If the defendant is a supervisory official, such as a DOCS Commissioner or correctional facility superintendent, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN49] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN50] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN51]

> FN47. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087 (1978).

> FN48. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

> FN49. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

> FN50. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

> FN51. *Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) [citations omitted].

Here, liberally construed, Plaintiff's Complaint alleges that Defendant Goord (the DOCS Commissioner) and Defendant Wright (the DOCS Chief Medical Officer) approved and allowed the current policy of forced participation in RSAT prior to receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.) More specifically, Plaintiff has alleged that Defendants Goord and Wright created an unconstitutional policy, or at least knowingly allowed such a policy to continue. (*Id.*) For these reasons, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to allege facts indicating the personal involvement of Defendants Goord and Wright in the constitutional violation(s) alleged. *See, e.g., Hatzfield,* 2007 WL 700961, at *3.

However, the same cannot be said of Plaintiff's allegations against Defendant Taylor. Plaintiff alleges that Defendant Taylor (the Gouverneur C.F. Superintendent) violated his constitutional rights when he affirmed the

IGRC's denial of Plaintiff's grievance and upheld the policy of forced participation in RSAT before receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 4.b. & Exs. A, A1, A2.) Two problems exist with regard to Plaintiff's claim(s) against Defendant Taylor.

First, the documents attached to Plaintiff's Complaint (and thus incorporated into that Complaint, *see* Fed.R.Civ.P. 10[c] ) indicate that it was not Defendant Justin Taylor but someone else (either a deputy superintendent or an acting superintendent) who personally affirmed the IGRC's denial of Plaintiff's grievance. (Dkt. No. 1, Ex. A.2.) It is well-established that when a "supervisory official like [a] ... prison [s]uperintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable." *Walker v. Pataro,* 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002), *accord, Hatzfield,* 2007 WL 700961, at *3; *Ramos v. Artuz,* 00-CV-0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001). "Thus, receipt of the grievance alone, without more, cannot suffice to allege personal involvement." *Hatzfield,* 2007 WL 700961, at *3.

**\*12** Second, even if Defendant Taylor had personally affirmed the IGRC's decision, a fair reading of the Complaint reveals that Plaintiff is alleging that the policy of denying medical treatment for Hepatitis C was DOCS-wide rather than Gouverneur C.F.-specific. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.) "There can be, therefore, no claim that [the superintendent] either created the policy [denying medical treatment for Hepatitis C] or allowed it to continue as there is no allegation that he had the power to create or to terminate the policy." *Hatzfield,* 2007 WL 700961, at *3; *see also Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *15-16 (S.D.N.Y. Jan. 23, 2004) (dismissing similar claims against prison superintendent based on failure to allege facts indicating personal involvement).

The closest Plaintiff comes to involving Defendant Taylor in the constitutional violations alleged is when Plaintiff alleges not simply a denial of medical *treatment* for his Hepatitis C condition but a denial of routine *testing* with regard to the progression of his Hepatitis C condition.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Specifically, Plaintiff alleges that "routine testing" of Hepatitis C in "numerous inmates" is not being conducted by "medical staff" at Gouverneur C.F. (Dkt. No. 1, ¶ 6[c].) The problem is that this claim of a denial-of-testing was not raised in the grievance that Plaintiff appealed to Defendant Taylor. (Dkt. No. 1, Ex. A.) Thus, there are no factual allegations indicating that Defendant Taylor either knew of the practice in question or that he allowed it to continue. However, it is conceivable to me that Plaintiff *might* be able to assert such factual allegations. *See, e.g. Johnson v. Wright,* 234 F.Supp.2d 352, 364 (S.D.N.Y.2002).

As a result, I recommend that Plaintiff's claims against Defendant Taylor should be dismissed *sua sponte.* However, because the defect in Plaintiff's denial-of-testing claim against Defendant Taylor appears to be formal instead of substantive, I recommend that the dismissal of that claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable such claim within 30 days of the Court's final decision on Defendants' motion.

**5. Mootness**

Plaintiff alleges that, on February 10, 2006 (after Plaintiff filed his Complaint on April 28, 2004), DOCS and Defendant Wright rescinded its policy of requiring that a prisoner participate in an ASAT/RSAT Program before receiving treatment for Hepatitis C. (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) [FN52]

> FN52. I note that, apparently, this decision was made as early as October 13, 2005. *See Hilton v. Wright,* 235 F.R.D. 40, 46 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) ("On October 13, 2005, Dr. Wright rescinded the ASAT/RSAT requirement from the [DOCS' Hepatitis C Primary Care Practice] Guideline.").

This factual allegation is significant because, as the relief requested in this action, Plaintiff seeks (1) "[i]mmediate comprehensive multi-vitamin treatment for those inmates that find themselves lacking the strength or ability to function normally due to their illness," (2) "[i]mmediate laboratory testing, and liver biopsies, etc ... to determine [the] stage of their illness, in accordance with Federal and National Institute of Health [requirements],"

and (3) "[u]pon determination and diagnosis of the illness, immediate commencement of treatment without regard[ ] to any DOCS recommended program(s)." (Dkt. No. 1, ¶ 9.) In other words, Plaintiff does not seek any monetary relief. (*Id.*)

**\*13** However, given the Court's rather recent decision in *Wilton v. Wright,* 235 F.R.D. 40 (N.D.N.Y.2006) (Hurd, J.) (rejecting defendants' mootness argument under somewhat analogous circumstances), I am unable to conclude, without briefing by Defendants (and perhaps the occurrence of discovery), that Plaintiff's claims are mooted by DOCS' apparent decision to rescind the policy in question after Plaintiff filed suit. I note, however, that *Wilson* appears to be somewhat distinguishable from the instant case in that (1) the claims in *Wilson* were brought by a class of prisoners (including prisoners affected in the future), unlike the claims in this case, and (2) in any event, the plaintiffs in *Wilson* sought monetary relief in addition to injunctive relief, unlike Plaintiff in this case.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 27) be *DENIED;* and it is

**RECOMMENDED** that, pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure,

(1) Plaintiff's Ninth Amendment inadequate-medical-care claim and Fourteenth Amendment due process claim be *sua sponte DISMISSED* **with prejudice,**

(2) Plaintiff's Ninth Amendment right-to-privacy claim and his Fourteenth Amendment equal protection claim be *sua sponte DISMISSED* **conditionally,** i.e., if Plaintiff fails to file an Amended Complaint asserting a viable right-to-privacy claim and equal protection claim within 30 days of the Court's final decision on Defendants' motion, and

(3) Plaintiff's claims against Defendant Taylor be *sua*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

*sponte* **DISMISSED** **with prejudice** except his denial-of-testing claim, which should be *sua sponte* **DISMISSED** **conditionally,** i.e., on the same condition as mentioned above; and it is

**ORDERED** that the Clerk's Office shall serve a copy of this Report-Recommendation on Plaintiff at his address of record in this action (listed in the caption on the docket) and **also** at his apparent actual current address (listed on Dkt. No. 27, Part 4, Dkt. No. 28, and Dkt. No. 29, Part 2, as well as on the New York State DOCS Inmate Locator System), which is **Oneida Correctional Facility, 6100 School Road, Rome, N.Y. 13440.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2007.

Muniz v. Goord
Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


255 Fed.Appx. 285, 2007 WL 4163413 (C.A.9 (Ariz.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 255 Fed.Appx. 285, 2007 WL 4163413 (C.A.9 (Ariz.)))**

**C**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)

United States Court of Appeals,
Ninth Circuit.
Loretta GREER, Plaintiff—Appellant,
v.
Dora B. SCHRIRO, Director; et al.,
Defendants—Appellees.

No. 06–15537.
Submitted Nov. 13, 2007 FN*.

FN* Because the panel unanimously finds this case suitable for decision without oral argument, Greer's request for oral argument is denied. *See* Fed. R.App. P. 34(a)(2).

Filed Nov. 26, 2007.

Loretta Greer, Goodyear, AZ, pro se.

Appeal from the United States District Court for the District of Arizona, James A. Teilborg, District Judge, Presiding. D.C. No. CV–05–04245–JAT.

Before: TROTT, W. FLETCHER, and CALLAHAN, Circuit Judges.

MEMORANDUM FN**

FN** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

**\*1** Arizona state prisoner Loretta Greer appeals

pro se from the district court's judgment dismissing her 42 U.S.C. § 1983 as a sanction for misrepresentations in her complaint and her application to proceed in forma pauperis. We have jurisdiction under 28 U.S.C. § 1291. We review for abuse of discretion a dismissal pursuant to the district court's inherent power, *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir.2006), and we affirm.

The district court did not abuse its discretion in dismissing Greer's action, because she failed to adequately explain misrepresentations, made under penalty of perjury, about her previous litigation history. *See* id. at 961 ("We do not disturb the district court's choice of sanction unless we have a definite and firm conviction that the district court committed a clear error of judgment ...") (internal citations and quotations omitted); *see also* Anheuser–Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir.1995) (district court's credibility determinations are entitled to special deference).

**AFFIRMED.**

C.A.9 (Ariz.),2007.
Greer v. Schriro
255 Fed.Appx. 285, 2007 WL 4163413 (C.A.9 (Ariz.))

END OF DOCUMENT